P&P File # P155967

# In The
# United States Court Of Appeals
# for the Third Circuit
## No. 15-1056

---

**DANIEL BOCK, JR.,**
**Plaintiff-Appellee,**

**v.**

**PRESSLER & PRESSLER, LLP,**
**Defendant-Appellant**

---

# BRIEF OF DEFENDANT/APPELLANT
# PRESSLER & PRESSLER, LLP

---

**On Appeal from the Opinion and Order of the District Court dated June 30, 2014, granting Appellee's Motion for Summary Judgment and the Final Judgment entered on December 4, 2014.**

| PRESSLER & PRESSLER, LLP | BARRON & NEWBURGER, P.C. |
|---|---|
| Mitchell L. Williamson, Esq. | Manuel H. Newburger |
| 7 Entin Road | 1212 Guadalupe, Suite 104 |
| Parsippany, NJ 07054 | Austin, Texas 78701-1837 |
| (973) 753-5100 (telephone) | (512) 476-9103 |
| (973) 753-5353 (facsimile) | Fax: (512) 279-0310 |
| mwilliamson@pressler-pressler.com | mnewburger@bn-lawyers.com |
| | |
| **Attorneys for Defendant/Appellant,** | **Attorneys for Defendant/Appellant,** |
| **Pressler & Pressler, LLP** | **Pressler & Pressler, LLP** |

## United States Court of Appeals for the Third Circuit

### <u>Corporate Disclosure Statement and</u>
### <u>Statement of Financial Interest</u>

No. _____

v.

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, _____

makes the following disclosure:                                    (Name of Party)

       1) For non-governmental corporate parties please list all parent corporations:

       2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

       3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

       4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

_____          Dated: _____
(Signature of Counsel or Party)

**rev: 09/2014**                                    (Page 2 of 2)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ iii

STATEMENT OF JURISDICTION............................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................ 1

STATEMENT OF THE CASE..................................................... 4

STATEMENT OF RELATED CASES ........................................ 7

STANDARD OF REVIEW ......................................................... 7

SUMMARY OF ARGUMENT .................................................... 8

ARGUMENT ........................................................................... 11

I.    The FDCPA regulates traditional collection activities in which attorneys and law firms compete with collection agencies but not those activities that constitute the practice of law and that are exclusively the province of attorneys .................................... 11

II.   Regulation of the practice of law is a matter exclusively for the states.................................... 18

III.  The FDCPA does not regulate communications with Courts........................................................ 26

IV.   The doctrine of meaningful attorney involvement, as created by the courts under the FDCPA, does not apply to the filing and service of a collection lawsuit............................................................... 27

V.    Compliance with the judicially-created duty of meaningful attorney review under the FDCPA encompasses ethical delegation of tasks........................................... 31

VI.     The *Noerr-Pennington* doctrine and U.S. Const.
        amend. I bar the imposition of liability under the
        FDCPA based on the "meaningful attorney
        involvement" theory .......................................................................... 35

VII.    A Violation of N.J.R.Ct. 1:4-8 is not a violation of
        the FDCPA ......................................................................................... 39

CONCLUSION ............................................................................................. 49

CERTIFICATION OF BAR MEMBERSHIP ............................................... 52

CERTIFICATION OF COMPLIANCE WITH RULE 32(a) ....................... 53

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS ................ 53

CERTIFICATION OF VIRUS CHECK ........................................................ 54

CERTIFICATE OF SERVICE ...................................................................... 55

**APPENDIX VOLUME I is bound with the brief**

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine*. 527 U.S. 706, 119 S. Ct. 2240 ........................................... 20
    144 L. Ed. 2d 636 (1999)

*Ali v. Portfolio Recovery Associates, LLC*, 2014 WL
    1767564 (D.N.J. 2014)........................................................................ 44

*Allen v. LaSalle Bank*, 629 F.3d 364 (3d Cir. 2011).................................... 27

*Amond v. Brincefield, Hartnett & Assocs., PC*,........................................... 48
    175 F.3d 1013 (Table, Text at 1999 US App.
    LEXIS 4815, 1999 WL 152555) (4th Cir. 1999)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ......................................... 8
    106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) ................................................ 28,31

*Bandy v. Midland Funding, LLC*, 2013 U.S. Dist. .................................... 26
    LEXIS 7983 (S.D. Ala. Jan. 18, 2013)

*Baxt v. Liloia*, 155 N.J. 190, 714 A.2d 271 (N.J. 1998) ............................ 23,24

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, ................................ 45
    480 F.3d 470 (7th Cir. 2007)

*Bird v. Pressler & Pressler, L.L.P.*, 2013 U.S. Dist. .................................. 26
    LEXIS 74682 (E.D.N.Y. May 29, 2013)

*Caminetti v. United States*, 242 U.S. 470, .................................................. 30
    61 L. Ed. 442, 37 S. Ct. 192 (1917)

*Carbis Sales, Inv. v. Eisenberg*, 397 N.J. Super. 64,
    935 A.2d 1236 (N.J. Super. Ct. App. Div. 2007) ............................ 25

*Clark v. Capital Credit & Collection Servs., Inc.*, ..................................... 49
    460 F.3d 1162 (9th Cir. 2006)

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ..................................... 27,28,30

*Cohen v. Wolpoff & Abramson, LLP*, 2008 U.S. ........................................ 22-24
    Dist. LEXIS 77052 (D.N.J. 2008)

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate*................................... 36
    *Investors, Inc.*, 944 F.2d 1525 (9th Cir. 1991),
    *aff'd* 508 U.S. 49 (1993)

*Eastern Railroad Presidents Conference v. Noerr* ..................................... 35
    *Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct.
    523, 5 L. Ed. 2d 464 (1961)

*Eddis v. Midland Funding, LLC*, 2012 U.S. Dist. ....................................... 23,24
    LEXIS 22193 (D.N.J. 2012)

*Edwards v. GMC*, 153 F.3d 242 (5th Cir. 1998) ........................................ 44

*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180.................................... 37
    (9th Cir. 2005)

*FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007) ........................ 15

*Gabriele v. Am. Home Mortg. Servicing*, 2012 U.S. App. ......................... 20
    LEXIS 24478, 503 Fed. Appx. 89 (2d Cir. 2012)

*Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342 ...................................... 38
    (S.D.N.Y. 2010)

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) .......................................... 19

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d ............................. 19,29,31
    360 (2d Cir. 2005)

*Hartford Underwriters Ins. Co. v. Union Planters Bank,* .......................... 30
    *N.A.*, 530 U.S. 1, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000)

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 ..................................... 45
    (6th Cir. 2006)

*Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, ...................................... 13,14,27
    131 L. Ed. 2d 395 (1995),             46

*Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 ........................... 37,45,50
    (8th Cir. 2012)

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. ......................................... 21
    1933, 76 L. Ed. 2d 40 (1983)

*Hickman v. Alpine Asset Mgmt., Grp., LLC*, No. 11-1236, ....................... 45
    2012 WL 4062694 (W.D. Mo. Sept. 14, 2012)

*Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155 ...................................... 8
    (3d Cir. 1990)

*Hrivnak v. NCO Portfolio Mgmt.*, 994 F. Supp. 2d 889 ............................. 26
    (N.D. Ohio 2014)

*Hurd v. Ralphs Grocery Co.*, 824 F.2d 806................................................. 44
    (9th Cir. 1987)

*In re Estate of Ehrlich*, 427 N.J. Super. 64, 47 A.3d 12 ............................ 40
    (N.J. Super. Ct. App. Div. 2012)

*In re Simon*, 206 N.J. 306, 20 A.3d 421 (N.J. 2011) .................................. 20

*Iselin v. United States*, 270 U.S. 245, 70 L. Ed. 566, ................................ 47
    46 S. Ct. 248, 62 Ct. Cl. 755 (1926)

*Jenkins v. Heintz*, 124 F.3d 824, *cert. denied*, 523 U.S. ........................... 47,48
    1022, 118 S. Ct. 1304, 140 L. Ed. 3d 469 (1998)

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich* ............................... 14,50
    *LPA*, 559 U.S. 573, 130 S. Ct. 1605,
    176 L. Ed. 2d 519 (2010)

*Juster Assoc. v. Rutland*, 901 F.2d 266 (2d Cir. 1990) .............................. 36

*Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 ..................................... 44
    (4th Cir. 1987)

*Leis v. Flynt*, 439 U.S. 438, 99 S. Ct. 698, .................................................. 19,25
    58 L. Ed. 2d 717 (1979)

*Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d............................ 19,29,31
    993 (3d Cir. 2011)

*Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841 ................................. 45
    (E.D. Mich. 2008)

*Mansfield v. Midland Funding, LLC*, 2011 U.S. Dist. ............................... 45
    LEXIS 34102, 2011 WL 1212939 (S.D.
    Cal. March 30, 2011)

*Middleton v. Plus Four, Inc.*, 2014 U.S. Dist. LEXIS ................................ 26
    30619 (D. Nev. Mar. 7, 2014)

*Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, ....................................... 47
    56 L. Ed. 2d 581, 98 S. Ct. 2010 (1978)

*Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, ................................ 38
    701 F. Supp. 2d 568 (S.D.N.Y. 2010)

*Nat'l Amusements, Inv. V. Town of Dedham*, 43 F.3d 731,......................... 8
    (1st Cir. 1995)

*New Century Financial Services, Inc. v. Oughla*, ....................................... 43
    98 A.3d 583, 437 N.J. Super. 299
    (N.J. Super. Ct. App. Div. 2014), *cert.*
    *denied by MSW Capital, LLC v. Zaidi*, 95 A.3d 258,
    218 N.J. 531 (N.J. 2014)

*Newman v. Checkrite Cal.*, 912 F. Supp. 1354........................................... 33
    (E.D. Cal. 1995)

*Norfolk Southern Railway Co. v. Basell USA Inc.,*...................................... 8
    512 F.3d 86 (3d Cir. 2008)

*O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, ....................................... 18
    206 N.J. 109, 19 A.3d 966 (N.J. 2011)

*O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d ........................... 26
    938 (7th Cir. 2011), *cert. denied*, 132 S. Ct.
    1141, 181 L.Ed.2d 1017 (2012)

*Palmer v. Stassinos*, 2009 U.S. Dist. LEXIS 4265 ..................................... 31
    (N.D. Cal. Jan. 9, 2009)

*Professional Real Estate Investors, Inc. v. Columbia* ............................... 38
    *Pictures Indus., Inc.*, 508 U.S. 49, 113 S. Ct.
    1920, 123 L. Ed. 2d 611 (1993)

*Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985) .......................... 15

*Richardson v. Midland Funding, LLC*, 583 Fed. ....................................... 45
    Appx. 124, 2014 U.S. App. LEXIS 17329 (4th Cir. 2014)

*Slanina v. United Recovery Systems, LP*, 2011 .......................................... 48
    U.S. Dist. LEXIS 121356 (M.D. Pa. 2011)

*Smith v. Harrison*, 2008 U.S. Dist. LEXIS 51685 ..................................... 23
    (D.N.J. 2008)

*Smith v. Transworld Sys., Inc.*, 953 F.2d 1025 .......................................... 48
    (6th Cir. 1992)

*Sosa v. DirecTV*, 437 F.3d 92 (9th Cir. 2006) ........................................ 35-37

*State Auto Prop. & Cas. Ins. Co. v. ProDesign, P.C.*, .............................. 7
    566 F.3d 86 (3d Cir. 2009)

*Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805 .............................. 44
    (2d Cir. 1987)

*Stoeckel v. Twp. of Knowlton*, 387 N.J. Super. 1, 902 A.2d 930
    (N.J. Super. Ct. App. Div. 1990), *cert. denied*, 188 N.J.
    489, 909 A.2d 724 (N.J. 2006)......................................................... 25

*Sykes v. Mel Harris & Assocs.*, 757 F.Supp. 2d 413 ................................. 36
    (S.D.N.Y. 2010)

*Tarpley v. Keistler*, 188 F.3d 788 (7th Cir. 1999) ...................................... 36

*Tinsley v. Integrity Financial Partners, Inc.,* 634 F.3d ............................ 26
    416 (7th Cir. 2011)

*Toll Brothers, Inc. v. Township of West Windsor*, ..................................... 18
    190 N.J. 61, 918 A.2d 595 (N.J. 2007)

*United Mine Workers v. Pennington*, 381 U.S. 657, ................................. 35
    85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965)

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, ........................ 30
    103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989)

*Video Intern. Prod., Inc. v. Warner-Amex Cable Commc'ns,* ................... 38
    *Inc.*, 858 F.2d 1075 (5th Cir. 1988)

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ............................................. 37

*Winberry v. Salisbury*, 5 N.J. 240, 74 A.2d 406 (N.J. 1950), .................... 18
    *cert. denied* 340 U.S. 877 (1950)

*Worthington v. Wilson*, 8 F.3d 1253 (7th Cir. 1993) ................................. 44

*Yentin v. Michaels, Louis & Assocs.*, *Inc.*, 2011 U.S. Dist. ....................... 49
    LEXIS 104711 (E.D. Pa. 2011)

## Constitutions and Statutes

U.S. Const. amend. I .................................................................. 10,35,38

Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875........................................... 12

Pub. L. 99-361, 100 Stat. 768 .................................................................... 12

15 U.S.C. § 1692, *et seq*........................................................... *passim*

15 U.S.C. § 1692(e) .................................................................................... 12

15 U.S.C. § 1692e .................................................................... 18,23,27
40,42,45

15 U.S.C. § 1692e(3) ............................................................... 16,22,30,
31

15 U.S.C. § 1692f.................................................................... 22,23

15 U.S.C. § 1692g(a)(3)........................................................... 4,46

15 U.S.C. § 1692i.................................................................... 15

15 U.S.C. § 1692k(d) ............................................................... 1

28 U.S.C. § 1291 .................................................................... 1

28 U.S.C. § 1331 .................................................................... 1

## **Rules**

Fed. R. Civ. P. 1 .................................................................... 44

Fed. R. Civ. P. 11 .................................................................. 10,38,44,
47,48

Fed. R. Civ. P. 56(c).............................................................. 8

N.J.R.Ct. 1:1-1 ..................................................................... 44

N.J.R.Ct. 1:4-8 ..................................................................... 3,10,24,
25,38-47,
49

N.J.R.Ct. 1:4-8(a)(3) .............................................................. 42

N.J.R.Ct. 1:21-1 .................................................................... 16,29

N.J. Court Rules, RPC 1.1 ....................................................... 6,32

N.J. Court Rules, RPC 1.3 ....................................................... 6,20

N.J. Court Rules, RPC 1.5 ........................................................... 20,21,32

N.J. Court Rules, RPC 5.3 ........................................................... 6,34

ABA Model Rule of Professional Conduct 1.1,  ......................................... 32
Official Comment 8

ABA Model Rule of Professional Conduct 5.3 ........................................... 34

## **Other Authorities**

53 Fed. Reg. 50097-02 (1988) ....................................................... 28

American Bar Association, Formal Opinion 68 (1932)............................... 31

H.R. 99-405 (99th Cong., 1st Sess.) ............................................ 12,14

N.D. Admin. Code 13-04-02-04(3)............................................. 15

Pressler & Verniero, *Current N.J. Court Rules*,
comment 2.1 on <u>R</u>. 1:1-1 (2014)................................................ 18

## STATEMENT OF JURISDICTION

The District Court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as Appellee's claims were based solely upon alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

This appeal arises out of a June 30, 2014 Opinion and accompanying Order of the United States District Court for the District of New Jersey granting Appellee's Motion for Summary Judgment. Appendix ("Appx.") Vol. I at 3 and 6-30. The Final Judgment entered on December 4, 2014 is a final order or judgment that disposes of all parties' claims. Appx. Vol. I at 4.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Does the FDCPA regulate activities that constitute the practice of law and in which attorneys and law firms do not compete with collection agencies? *See* Appx. Vol. II at 45-46 (¶¶ 43-45 of the Bock Complaint) asserting liability based solely upon the filing and service of a state court complaint and Appx. Vol. I at 15 and 19-22, the summary judgment ruling finding Pressler liable for conduct that is the practice of law.

Suggested answer: No.

2.    Is the regulation of the practice of law a matter exclusively for the states? *See* Appx. Vol. II at 45-46, (¶¶ 43-45 of the Bock Complaint) asserting

1

liability based solely upon the filing and service of a state court complaint and Appx. Vol. I at 20-22, the summary judgment ruling finding Pressler liable for conduct that is exclusively the province of the State of New Jersey.

Suggested answer: Yes.

3.    Does the FDCPA regulate communications with Courts? *See* Appx. Vol. II at 45-46 (¶¶ 43-45 of the Bock Complaint) asserting liability based solely upon the filing and service of a state court complaint and Appx. Vol. I at 19-22, the summary judgment ruling finding Pressler liable based upon suing and serving Bock.

Suggested answer: No.

4.    Does the judicially-created doctrine of meaningful attorney involvement under the FDCPA, apply to the filing and service of a collection lawsuit in which the representation of the creditor must be by an attorney? *See* Appx. Vol. II at 45-46 (¶¶ 43-45 of the Bock Complaint) asserting liability based solely upon the filing and service of a state court complaint and Appx. Vol. I at 19-22 and 26, the summary judgment ruling finding Pressler liable based upon the suit that it filed.

Suggested answer: No.

5.    Is the duty of meaningful attorney review under the FDCPA satisfied by a lawyer's compliance with the Rules of Professional Conduct governing

competence, diligence, and supervision? *See* Appx. Vol. II at 45-46 (¶¶ 43-45 of the Bock Complaint) asserting liability based solely upon the filing and service of a state court complaint) and Appx. Vol. I at 28-30, the summary judgment ruling finding Pressler liable based upon conduct that allegedly violated the RPC.

Suggested answer: Yes.

6.    Do the First Amendment to the Constitution of the United States and the *Noerr-Pennington* doctrine bar the imposition of liability under the FDCPA based on the theory that an attorney did not adequately review the file before filing suit?  *See* Appx. Vol. II at 45-46 (¶¶43-45 of the Bock Complaint) asserting liability based solely upon the filing and service of a state court complaint and Appx. Vol. I. at 19-22 and 26, the summary judgment ruling finding Pressler liable for petitioning conduct.

Suggested answer: Yes.

7.    Is a violation of N.J.R.Ct. 1:4-8 a violation of the FDCPA?  *See* Appx. Vol. II at 45-46 (¶¶ 43-45 of the Bock Complaint) asserting liability based solely upon the filing and service of a state court complaint and Appx. Vol. I at 22-23 and 27-30, the summary judgment ruling finding Pressler liable for alleged violations of N.J.R.Ct. 1:4-8.

Suggested answer: No.

## STATEMENT OF THE CASE

Appellee Daniel Bock, Jr. ("Bock") defaulted on his HSBC Bank Nevada, N.A. credit card account. Appx. Vol. II at 65, ¶ 1.  The charged-off debt of $8,021.57 was sold to Midland Funding LLC ("Midland"), which in turn retained Appellant Pressler & Pressler, LLP ("Pressler"), a New Jersey law firm, to collect the debt.  *Id.* On September 15, 2011, Pressler sent Bock a notice of his right to dispute the debt as required by the FDCPA.  *Id.* at 65, ¶ 2. Bock failed to respond to that letter and, in accordance with both the text of the letter and 15 U.S.C. § 1692g(a)(3), Pressler therefore assumed that the debt was valid.[1]   *Id.* at 65, ¶ 3. After Bock failed to dispute or pay the debt Pressler filed a suit against him in the Superior Court of New Jersey seeking a judgment in favor of Midland.  *Id.* at 66, ¶ 4.

While the state court collection action was pending, Bock brought this action against Pressler in federal court, asserting that Pressler made a false or misleading representation in violation of the FDCPA by filing the state complaint without "meaningful attorney involvement" in his file.  *Compare* Appx. Vol. II at 40-51 *with* Appx. Vol. II at 67, ¶¶ 13. Bock thereafter settled the state court action.

---

[1] Section 1692g(a)(3) creates no presumption in a legal proceeding, nor does it operate as a bar to a subsequent dispute.  What it does do is provide a statutory right on the part of Pressler to assume that Bock's debt was valid.  Of course, Bock has not asserted at any point that this assumption was incorrect.

Appx. Vol. II at 67, ¶¶ 13-14; Appx. Vol. II at 98.

This case presents a rather remarkable claim. Bock does not assert that Pressler sued the wrong person; he does not deny that he owed the debt on which he was sued; he does not assert that Pressler misrepresented the character or amount of the debt; and he does not assert that the collection suit was groundless in fact or law. Appx. Vol. II at 40-51. He does not even assert that Pressler or its client lacked sufficient evidence to prove the debt, nor does he allege that the collection suit lacked merit. *Id*. Instead, he alleges solely that Ralph Gulko, the Pressler attorney who signed the state court Complaint, did not conduct a sufficient review of the file before filing the suit. Appx. Vol. II at 46, ¶¶ 44-45. Essentially, Bock claims that the FDCPA allows him to sue Midland's attorneys for not working hard enough - or for working too efficiently - for their client. He makes this claim even though: (a) Pressler's client has no complaint with the work Pressler performed; (b) Pressler was successful in representing its client; and (c) Bock makes absolutely no assertion that the collection suit was groundless in fact or law.

The parties each moved for summary judgment in the court below, and on June 30, 2014, the District Court issued an Opinion, Appx. Vol. I at 6-30, and an Order, Appx. Vol. I at 3, denying Pressler's motion and granting Bock's motion. On December 4, 2014, the District Court entered a final judgment in this case

Appx. Vol. I at 4-5.  Pressler timely appeals those orders.

In ruling for Bock the District Court focused on two facts: (1) that the Pressler attorney who signed the state court pleading spent only four seconds reviewing the complaint; and (2) that the attorney reviewed 673 complaints on the day the Bock collection suit was filed (of which ten were rejected).  The District Court failed to recognize that the review at issue constituted only the *final* four seconds of a lengthy review process that began when Pressler accepted its client's collection claim, occurred continuously throughout Pressler's pre-litigation collection efforts, and culminated in Ralph Gulko's final review of the complaint. Appx. Vol. II at 124-139. The District Court also failed to recognize the Pressler attorneys' ethical duties under RPCs 1.1, 1.3 and 5.3 to make use of technologies (under lawyer supervision) that provide greater reliability and accuracy (as well as efficiency) to their clients.

The record contains substantial evidence that the suit against Bock was well-grounded in fact.  The account statements that are a part of the record show that Bock had the account on which Pressler sued.  Appx. Vol. II at 166-189.  The record reveals that Ralph Gulko, an attorney licensed in New Jersey since 1978 and employed by Pressler since 2005, had years of expertise in reviewing collection complaints and, specifically, complaints filed for Midland Funding, LLC.  Appx. Vol. II at 69-71. The record further reveals that Pressler has a

complex process for receiving and accepting claims and for preparing and approving a complaint. Appx. Vol. II at 124-139. Thus, Ralph Gulko's review of the Complaint took place at the end of a complex process that was proprietary to Pressler, a system of which Gulko was aware and with which he had substantial familiarity.

On appeal Pressler asks that the Court of Appeals reverse the District Court ruling and hold that as a matter of law Pressler's summary judgment motion should have been granted and Bock's summary judgment should have been denied. In the alternative, even if the Court concludes that Pressler was not entitled to summary judgment Pressler asks the Court to find that Bock's motion should have been denied and remand the case for trial.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court. Defendant/Appellant is unaware of any other case or proceeding that is related, whether completed, pending or about to be presented before this Court or any other court or agency, state or federal.

## STANDARD OF REVIEW

This Court reviews an order granting summary judgment "under a plenary standard of review" and applies "the same standard as the District Court to determine whether summary judgment was appropriate." *State Auto Prop. & Cas.*

*Ins. Co. v. ProDesign, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009); *Norfolk Southern Railway Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).   Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A "genuine" issue of fact exists when the evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). An alleged factual dispute is "genuine" only if the evidence bearing on the disputed fact would permit a reasonable jury to find for the nonmoving party, and the fact is "material" only insofar as its adjudication "could affect the outcome of the case under the applicable substantive law." *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1158 (3d Cir. 1990). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986).

## SUMMARY OF THE ARGUMENT

Pressler asserts that the District Court erred in granting summary judgment to Bock.  First, the legislative history of the FDCPA shows that in deleting the attorney exemption to the FDCPA it was the intent of Congress to regulate the

conduct of attorneys when they were competing with lay debt collectors. It was not the intent of Congress to regulate those activities that are exclusively limited to lawyers and that constitute the practice of law, and the District Court erred in applying the FDCPA to activities that are exclusively the practice of law.

Second, the Supreme Court has stated that the regulation of the practice of law is a matter exclusively for the States. Even if Congress was trying to regulate the practice of law through the FDCPA such an effort is improper and should not be countenanced.

Third, the FDCPA does not regulate attorneys' communications with courts. Judges are not part of the class of persons that the FDCPA was intended to protect. To the extent that an attorney's communication with a court is false, misleading, or otherwise improper there are mechanisms to address such behavior, but the FDCPA is not one of them.

Fourth, the doctrine of meaningful attorney involvement is a creation of the courts in interpreting the FDCPA. That doctrine applies to pre-suit communications that have the propensity to create a false sense of urgency in the mind of a consumer. It does not apply to the filing and service of a lawsuit as there is nothing false about the urgency of the matter or the status of the attorney who signs the complaint. The District Court erred in applying the meaningful attorney involvement doctrine to the filing and service of a lawsuit.

9

Fifth, case law permits the delegation of tasks to non-lawyer assistants. Each of the scrubs described in the Felt affidavit is nothing more than a task that can legitimately be delegated by an attorney to a non-attorney assistant. By using a computer system that is operated under attorney direction and control Pressler has merely delegated tasks to a non-lawyer assistant that is highly reliable and less susceptible to human error. The process clearly worked, as Pressler sued Bock on the correct debt, in the correct amount, for the correct creditor, resulting in a settlement favorable to its client. Pressler attorneys were "meaningfully involved" and did not violate the FDCPA as the delegation was consistent with the ethical standards imposed upon attorneys who delegate tasks.

Sixth, the Petition Clause of the First Amendment to the Constitution protects the right to petition the government for redress of grievances. This right extends to the filing and prosecution of state court lawsuits. To the extent that the FDCPA purports to impose liability against an attorney for filing a suit that made no false or groundless claims such liability is prohibited by the First Amendment and the *Noerr-Pennington* Doctrine.

Finally, the decision of the District Court in favor of Bock erroneously converts an alleged violation of the duty of inquiry under N.J.R.Ct. 1:4-8 (the state law equivalent of Fed. R. Civ. P. 11) into an FDCPA claim. Even though: (a) there is no claim that the collection suit was groundless in fact or law; (b) the state court

found no such violation; and (c) no such violation was asserted in the state court proceeding, the District Court construed the state court rule in a manner that disregarded essential portions of its text in order to find liability. In doing so it committed reversible error.

Pressler asserts that it was entitled to judgment in its favor in the court below and respectfully submits that the Court of Appeals should reverse the District Court's judgment and grant judgment in its favor. Alternatively, Pressler asserts that Bock failed to meet his burden of proof by failing to offer expert testimony to support his claims and it respectfully requests that the Court reverse and remand the case for further proceedings.

## **ARGUMENT**

**I.    The FDCPA regulates traditional collection activities in which attorneys and law firms compete with collection agencies but not those activities that constitute the practice of law and that are exclusively the province of attorneys.**

Pressler asserts that the District Court erred by applying the FDCPA to litigation conduct that lies exclusively within the realm of the practice of law. Congress never intended that the FDCPA regulate how a collection lawyer practices law in the context of litigation activities that can be undertaken solely by attorneys. Rather, the 1986 Amendment to the FDCPA was intended to regulate how collection lawyers interact with consumers when those lawyers are engaged in activities in which they compete with non-lawyer debt collectors.

11

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e).  When enacted in 1977, the FDCPA expressly exempted from the definition of "debt collector" "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875. When Congress repealed that exemption in 1986, Pub. L. 99-361, 100 Stat. 768, it did so to eliminate unfair competition between attorneys and collection agencies.

> In the eight years since the passage of the Fair Debt Collection Practices Act, attorneys have entered the debt collection industry in ever increasing numbers. There are now 5,000 attorneys engaged in debt collection activities. As a result of the attorney exemption, consumers are harmed and debt collectors who must comply with the Act are at a competitive disadvantage.

H.R. 99-405 (99th Cong., 1st Sess.). The activities and conduct that were of concern to Congress and the public policies at issue in repealing the attorney exemption all revolved around non-litigation activities, *i.e.*, those in which attorneys and lay debt collectors competed with one another such as the sending of dunning letters and the placement of collection calls.  Although the repeal of the exemption brought attorney debt collectors within the scope of the Act as "debt collectors" there was no Congressional intent to bring all litigation activities within

the scope of the Act as "debt collection".  The goal of the 1986 amendment was merely to level  the competitive playing field among debt collection attorneys and lay debt collectors that exists in non-litigation activities.

The application of the Act to litigation activities by various courts is due, in part, to a too-hasty reading of the Supreme Court's decision in *Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995).  In reality, the "litigation activities" issue was not before the Court in *Heintz*. The *Heintz* Court held that the FDCPA applies to attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation. Although courts may occasionally treat *Heintz* as holding that the Act regulates litigation conduct, the sole issue in *Heintz* was whether the term "debt collector" in the FDCPA applies to a lawyer who "regularly," through litigation, tries to collect consumer debts. *Id*. at 514 U.S. 292, 115 S. Ct. 1490, 131 L. Ed. 2d 398.  Thus, the Supreme Court considered whether lawyers who litigate are debt collectors and not whether litigation by a lawyer in a court of record is FDCPA-regulated debt collection. In fact, the alleged FDCPA violation at issue in *Heintz* was not a pleading; instead, it was a settlement letter that was sent to the debtor's attorney.[2] The Supreme Court

---

[2] "Jenkins then brought this Fair Debt Collection Practices Act suit against Heintz and his firm. She claimed that Heintz's **letter** violated the Act's prohibitions against trying to collect an amount not 'authorized by the agreement creating the debt.'" *Heintz*, 514 U.S. at 293, 115 S. Ct. 1490, 131 L. Ed. 2d at 398 (emphasis added).

actually reserved judgment on the degree to which litigation activities may be subject to the Act, focusing its holding solely on the "debt collector" status of attorneys:

> We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.

*Id*., 514 U.S. at 296-7, 115 S. Ct. 1492, 131 L. Ed. 2d 400.

In the intervening years since *Heintz* various courts have applied the Act to conduct that was part of litigation, but those courts either erroneously assumed that *Heintz* addressed the activities covered by the Act rather than the persons whom it regulates or else they made assumptions that are not supported by the Act's legislative history. Pressler asserts that it was never Congress' intention to make the FDCPA a mechanism for regulation of litigation activities that are exclusively the practice of law and in which attorneys do not compete with lay debt collectors.[3] *See* H.R. 99-405 (99th Cong., 1st Sess.). Such application has absolutely nothing

---

[3] Furthermore, as is discussed below, application of the FDCPA in the manner proposed by Bock results in improper regulation of the practice of law at the federal level, it creates conflicts that are contrary to public policy, and it generates the "absurd results" against which the Supreme Court has cautioned. "As in *Heintz*, we need not authoritatively interpret the Act's conduct-regulating provisions to observe that those provisions should not be assumed to compel absurd results when applied to debt collecting attorneys." *Jerman v. Carlisle,*

to do with the "competitive disadvantage" that Congress sought to address by repealing the attorney exemption.

While 15 U.S.C. § 1692i governs venue in lawsuits, an examination of the history of the Act reveals that Section 1692i provides no evidence of Congressional intent to regulate the litigation activities of attorneys. Section 1692i restricts the venue for suits that are filed by "debt collectors." However, Section 1692i predated the 1986 elimination of the attorney exemption; therefore, it applied to the limited circumstances in which non-attorney collectors could file suits.[4] Such situations include states where a collection agency can take an assignment of a debt and sue upon it as well as those where a mortgage servicer that is also a "debt collector" sues to foreclose the mortgage lien.[5] In those situations the debt collectors are not acting as attorneys, and to the extent the FDCPA regulates their litigation conduct it is not regulating activity that is exclusively the practice of law.

In this case, Pressler, acting as the law firm for its client, sued Bock in a

---

*McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600, 130 S. Ct. 1605, 1622, 176 L. Ed. 2d 519, 539 (2010).

[4] There are jurisdictions in which a collection agency can file suit on an assigned claim. *See, e.g.*, N.D. Admin. Code 13-04-02-04(3) which recognizes that a debt collector may institute judicial proceedings on behalf of other persons on an assigned claim.

[5] A servicer or lender that obtains a loan after it is in default is a "debt collector" and not a "creditor" under the FDCPA. *FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 208 (5th Cir. 1985).

New Jersey court of record. In doing so it was not competing with collection agencies or other non-attorney debt collectors as such persons could not have filed suit on behalf of a client. N.J.R.Ct. 1:21-1. The litigation conduct at issue in this case is fundamentally not the type of activity that Congress intended to regulate in repealing the FDCPA's attorney exemption in 1986. The FDCPA applies to attorneys to the extent that they compete as "debt collectors" with non-attorney collectors. It does not apply to attorneys engaged in those activities that are exclusively the practice of law and unavailable to lay debt collectors as the competitive issues that Congress sought to address have no relevance in the conduct of those activities.

Application of the Act to litigation in the manner used by the lower court creates the absurd result against which the Supreme Court cautioned in *Heintz* and *Jerman*. Pressler sued Bock on behalf of the correct creditor, for the correct balance, on an account that he owed, and he settled that claim. Bock does not assert that the collection suit was groundless in fact or law. He also does not dispute that Ralph Gulko approved and signed the state court Complaint and that Gulko is a licensed attorney. Nevertheless, Bock makes the untenable assertion in Paragraph 44.02 of his Complaint, Appx. Vol. II at 46, that in filing the state court suit Pressler violated 15 U.S.C. § 1692e(3), which prohibits the false representation that a communication "is from an attorney." In granting Bock's summary judgment

motion the District Court ruled that a pleading that was approved and signed by an attorney was not actually from an attorney.

This is the "absurd" result against which the Supreme Court warned in *Jerman*. The District Court's decision permits Bock to complain that Pressler, acting as lawyers for his creditor, owed ***Bock*** a duty to do more work for Midland, and that by allegedly breaching that duty Pressler is liable not to its own client but to the opposing party.

Such an alleged duty to a non-client has no basis in the law. Pressler represented its client successfully and in a manner satisfactory to Midland, but if the District Court decision is permitted to stand it would allow Bock, rather than Pressler's client, to decide whether Pressler performed adequately in representing that client. The FDCPA does not and should not permit a non-client debtor to dictate the degree of care and level of service that a creditor's lawyers must provide to their clients.

The inclusion of attorneys within the scope of the FDCPA as a means of ensuring fair competition makes sense; the inclusion of attorney-conducted litigation within the scope of the FDCPA's regulated activities does not. Such an application is inconsistent with the stated purpose of the 1986 amendment, it does nothing to further that stated legislative purpose, and it is "absurd" to the extent that it allows an opposing party to dictate the amount of work that must be done by

17

an attorney in representing his or her client.  The District Court erred in applying Section 1692e to Pressler's litigation conduct and, more specifically, to its process of approving and signing pleadings. The lower court's decision should be reversed, and judgment should be entered in favor of Pressler.

## II.     Regulation of the practice of law is a matter exclusively for the states.

The Rules Governing the Courts of the State of New Jersey are "promulgated by the State Supreme Court pursuant to N.J. Const. Article VI, § 2, ¶ 3, which confers upon the Court the exclusive rule-making authority with respect to practice and procedure."  Pressler & Verniero, *Current N.J. Court Rules*, comment 2.1 on R. 1:1-1 (2014), *citing Winberry v. Salisbur*y, 5 N.J. 240, 255, 74 A.2d 406 (1950), *cert. denied* 340 U.S. 877 (1950).  In *Winberry*, New Jersey's Supreme Court concluded that "the rule-making power of the Supreme Court is not subject to overriding legislation, but that it is confined to practice, procedure and administration as such."  *Id.*, 5 N.J. at 255, 74 A.2d at 414.  In fact, "[t]hrough enactment of the revised [Rule 1:4-8], the Court exercised its authority over the practice of law and procedures in the courts . . ."  *Toll Brothers, Inc. v. Township of West Windsor*, 190 N.J. 61, 71, 918 A.2d 595, 601 (2007).

Similarly, the Rules of Professional Conduct regulate attorneys in the State of New Jersey.  It is the State Supreme Court that governs the practice of law for New Jersey attorneys.  *O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, 206 N.J.

109, 120-21, 19 A.3d 966, 972 (N.J. 2011) ("This Court's authority to regulate the legal profession is of constitutional dimension.").

This court has recognized that lawyers may act either as debt collectors or as attorneys.  *See Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1003 (3d Cir. 2011).  Other appellate courts have made similar observations. *See, e.g., Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) and *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005).  Notably, these cases all involved the sending of collection letters – conduct which lawyers and lay collectors alike may undertake, and in which attorneys and lay collectors are in direct competition.

In this case the conduct at issue is: (a) the filing of a suit; (b) in a court of record; (c) by a law firm, acting on behalf of its client.  Fundamentally, this conduct is the practice of law, and it is regulated exclusively by the New Jersey Supreme Court. Application of the FDCPA to regulate the practice of law would exceed the scope of Congressional authority.

> Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. The States prescribe the qualifications for admission to practice and the standards of professional conduct. They also are responsible for the discipline of lawyers.

*Leis v. Flynt*, 439 U.S. 438, 442, 99 S.Ct. 698, 700-701, 58 L.Ed.2d 717, 722 (1979).  The Constitution and the federalism cases interpreting it stand for the proposition that the federal government is barred from regulating the practice of

law in state court proceedings.  *See Alden v. Maine*. 527 U.S. 706, 119 S. Ct. 2240,

144 L. Ed. 2d 636 (1999). *See also Gabriele v. Am. Home Mortg. Servicing*, 2012

U.S. App. LEXIS 24478, 503 Fed. Appx. 89, 96 n.1 (2d Cir. 2012):

> As we have recognized in past decisions, the protective purposes of
> the FDCPA typically are not implicated "when a debtor is instead
> protected by the court system and its officers." *Simmons v. Roundup
> Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (holding that inflated
> proof of claim in bankruptcy court cannot form basis of FDCPA
> action). In Connecticut, "the state foreclosure process is highly
> regulated and court controlled." *Derisme v. Hunt Leibert Jacobson
> P.C.*, No. 10 Civ. 23, 880 F. Supp. 2d 311, 2012 U.S. Dist. LEXIS
> 101922, 2012 WL 3000386, at *16 (D. Conn. July 23, 2012). When
> that is the case, the state court's authority to discipline will usually be
> sufficient to protect putative-debtors like Gabriele from legitimately
> abusive or harassing litigation conduct.

The New Jersey Rules of Professional Conduct reflect the importance of this

concept. "A lawyer shall act with reasonable diligence and promptness in

representing a client." N.J. RPC 1.3.  Pressler's duty was to its client and not to

Bock.[6]   Furthermore, New Jersey imposes upon attorneys a duty to act with

"reasonable diligence."  However, N.J. RPC 1.5(1) and (4) (governing reasonable

attorney's fees) make it clear that the factors that determine what is "reasonable"

---

[6] To hold otherwise is to create a conflict of interest for every creditors' rights law
firm.  "[S]ection 121 of the Restatement (Third) of the Law Governing Lawyers
(2000) (Restatement) defines a conflict of interest as arising 'if there is a
substantial risk that the lawyer's representation of the client would be materially
and adversely affected by the lawyer's own interests or by the lawyer's duties to
another current client, a former client, or a third person.'" *In re Simon*, 206 N.J.
306, 316 n.5, 20 A.3d 421, 428 n.5  (N.J. 2011).

work to be performed in a case include both the "novelty and difficulty of the questions involved" and the "amount involved". Thus, it is part of the public policy of the State of New Jersey that under the Rules of Professional Conduct lawyers should spend far less time on matters that are routine, commonplace, or simple, or that involve small amounts in controversy.[7] In this case the District Court found a lack of meaningful involvement because Pressler's associate, Ralph Gulko, reviewed 673 complaints on the day that he reviewed the Bock complaint, rejecting only ten. The District Court wholly failed to acknowledge that one might just as easily say that Pressler filed the same lawsuit 663 times (or perhaps one type of suit 400 times and another type of suit 263 times), as most of the suits varied little except for the names of the parties, the address for service, and the balance due. Suits on credit card debts (the mainstay of Pressler's practice) involve virtually the same pleadings, the same types of evidence, and the same burden of proof in every case. Under N.J. RPC 1.5 Pressler would violate its ethical obligations to its client if it spent excessive time on cases of virtually identical content, pleadings, and proof. The complex set of processes described in the Felt Affidavit are not an abrogation of Pressler's professional duties; to the

---

[7] It should be noted that in federal proceedings the Supreme Court has similarly recognized that the amount of work by an attorney that is reasonable is directly related to the novelty and difficulty of the questions and the amount involved. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 441, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

contrary, they are an attempt to do that which is ethically required of them—to employ reasonable use of current technology to represent clients competently and diligently while not over-lawyering small cases with identical pleading and proof requirements and common facts.  It cannot be said that Pressler was not diligent: it sued promptly, within a relatively short time after its initial letter to Bock.  It cannot be said that Pressler acted inaccurately: nothing in the record indicates that it sued the wrong person or for the wrong creditor or in the wrong amount.  It cannot be said that Pressler acted incompetently: it achieved a prompt resolution of the matter against Bock on which it was retained.  By any measure Pressler did its job for its client, and it did that job well.

Bock is not the first to make his erroneous argument.  In *Cohen v. Wolpoff & Abramson, LLP*, 2008 U.S. Dist. LEXIS 77052, at *15-23 (D.N.J. 2008), Cohen alleged that the defendant-law firm's alleged violations of the Rules of Professional Conduct constituted violations of Sections 1692e(3) and 1692f of the FDCPA.[8]  The *Cohen* court dismissed the Section 1692e(3) claim because although the defendant-attorneys were not licensed in New Jersey (the state to which they sent the communication at issue), they were nonetheless attorneys who were licensed in Maryland; thus, there was no misrepresentation that the communication was from an attorney. In analyzing the § 1692f claim, the *Cohen* court held:

---

[8] Notably, Cohen was represented by the same counsel as Bock.

22

The regulation of the practice of law is a matter of concern to the states which regulate it. Plaintiff here seeks to import this matter of concern to the states – state-specific rules of attorney discipline – into federal legislation. Plaintiff has pointed to no evidence that Congress intended the FDCPA to rely on state rules of attorney discipline or to enforce them.

*Id.* at *19-20.

Although *Cohen* discussed the alleged ethical violations in context of a claim under §1692f, the concept has also been addressed in the context of alleged misrepresentations under § 1692e. In *Eddis v. Midland Funding, LLC*, 2012 U.S. Dist. LEXIS 22193, at *27-28 (D.N.J. 2012), the court concluded that "Plaintiff's claims for violations of the Rules of Professional Conduct do not state a cause of action for use of unfair and unconscionable means to collect debt *or misrepresentations* in violation of the FDCPA." (Emphasis added). The *Eddis* court relied upon *Cohen* and the New Jersey Supreme Court's decision in *Baxt v. Liloia*, 155 N.J. 190, 198-99, 714 A.2d 271 (N.J. 1998) to reach its determination. In *Baxt* the Court found that "[n]either the Appellate Division nor this Court has held, however, that the RPCs in themselves create a duty or that a violation of the RPCs, standing alone, can form the basis for a cause of action." *Id.*, 155 N.J. at 201. *See also Smith v. Harrison*, 2008 U.S. Dist. LEXIS 51685, at *9-10 (D.N.J. 2008) (the plaintiff's arguments under general ethical obligations were not addressed in the opinion because the court noted that the "argument is not supported by case law").

It is clear that the FDCPA and the RPCs are distinct bodies of law. Bock did not assert that there were any misrepresentations in the text of the collection complaint. His allegation that an attorney failed to exercise adequate diligence in his duties as an attorney amounts to an allegation of an ethical violation. Thus, Bock's attempt to convert what is essentially an alleged RPC violation into an FDCPA violation runs contrary to the case law in this circuit and the State of New Jersey. *See Cohen, Eddis* and *Baxt, supra*. Potential ethical violations in state court proceedings are concerns for the State of New Jersey, not the FDCPA or the federal court system. *See Cohen* and *Eddis*, *supra*.

When one looks at the structure of Rule 1:4-8 it becomes clear that the state scheme is inconsistent with the FDCPA. Not only did Bock fail to seek sanctions in the state court proceeding, but he also failed to send the safe harbor notice that is a prerequisite to seeking sanctions under Rule 1:4-8. The FDCPA is normally a strict liability statute, but strict liability is inconsistent with Rule 1:4-8, since the rule allows one to avoid any liability by withdrawing a pleading within twenty-eight days of receiving a safe harbor notice. N.J.R.Ct. 1:4-8. Pressler asserts that it is "absurd" to impose liability under the FDCPA for an alleged violation of Rule 1:4-8 when the rule itself would not permit the imposition of any such liability.

Bock similarly failed to file a grievance against Pressler. Even though mechanisms existed for him to secure a determination of his reasonable

investigation theory in front of the State officials charged with regulating Pressler's conduct, he chose not to do so. Instead, he engaged in forum shopping, asking a federal district court to second-guess and punish Pressler's conduct in the state court proceeding. Given the Supreme Court's admonishment in *Leis* that the regulation of the practice of law is a matter exclusively for the states, the District Court erred in allowing Bock to use it as a forum to regulate Pressler's litigation conduct in a state court. Whether a lawyer has exercised the diligence, care, and investigation necessary to file a state court suit is a matter that should be decided by the state court in which that attorney files that suit or in a suit between lawyer and client. It should not be decided by a federal court in a suit brought by the party whom the attorney has sued.

Finally, "[a]s 'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach." *Carbis Sales, Inc. v. Eisenberg*, 397 N.J. Super. 64, 78, 935 A.2d 1236 (N.J. Super. Ct. App. Div. 2007) (*quoting Stoeckel v. Twp. of Knowlton*, 387 N.J. Super. 1, 14, 902 A.2d 930 (N.J. Super. Ct. App. Div. 1990), *cert. denied*, 188 N.J. 489, 909 A.2d 724 (N.J 2006). Bock offered no expert testimony in support of his Rule 1:4-8 theory. Expert testimony may not be necessary in the case of a misrepresentation of material fact; however, this is a case involving an attorney's alleged lack of reasonable investigation (of a case that was factually meritorious

and in which the attorney generated a successful outcome). Bock also offered no evidence that Gulko's rejection of only ten cases was proof of anything other than the effectiveness of Pressler's system. If this Court rejects Pressler's contention that only a state court may regulate the practice of law then this Court should reverse and remand this case due to the lack of expert testimony supporting Bock's summary judgment motion.

**III.    The FDCPA does not regulate communications with Courts.**

An alleged misrepresentation in a state court pleading cannot give rise to liability under the FDCPA. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1141, 181 L. Ed. 2d 1017 (2012). The Act was not intended to protect courts and other third parties who are not connected to the consumer. *Id.; Hrivnak v. NCO Portfolio Mgmt.*, 994 F. Supp. 2d 889, 898 (N.D. Ohio 2014); *Bandy v. Midland Funding, LLC*, 2013 U.S. Dist. LEXIS 7983 (S.D. Ala. Jan. 18, 2013). "The FDCPA regulates communications directed at the consumer and attempts to stretch the Act beyond its text and purpose have been rejected." *Middleton v. Plus Four, Inc.*, 2014 U.S. Dist. LEXIS 30619 (D. Nev. Mar. 7, 2014), *citing Tinsley v. Integrity Financial Partners, Inc.*, 634 F.3d 416 (7th Cir. 2011). *See also Bird v. Pressler & Pressler, L.L.P.*, 2013 U.S. Dist. LEXIS 74682 (E.D.N.Y. May 29, 2013)(holding that a statement made in a prayer for relief in a complaint is a statement to the court, not a representation

to the debtor).[9]

In this case the representations at issue were representations to the state court in which the collection suit was filed.  That court made no complaint, found no wrongdoing, and issued no sanctions.  Bock sought no such relief.  The District Court erred in finding that the implied representations to a state trial court that are inherent in a lawyer's signature on a pleading are actionable under 15 U.S.C. § 1692e.

## IV. The doctrine of meaningful attorney involvement, as created by the courts under the FDCPA, does not apply to the filing and service of a collection lawsuit.

The words "meaningful involvement" and "attorney involvement" do not appear in the FDCPA. In *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993), the Defendant sent an escalating series of letters (on a debt of less than $10), conveying to the recipient the false impression that a suit on the debt was likely. The Court of Appeals held that a letter from a law firm implies that an attorney has actually reviewed the claim and is actually handling the file, and that mass-produced letters from a collection agency bearing a facsimile signature of an

---

[9] Pressler anticipates that Bock will point to this Court's decision in *Allen v. LaSalle Bank*, 629 F.3d 364 (3d Cir. 2011) and try to argue that the litigation privilege is not a defense to a claim under the FDCPA.  Respectfully, *Allen* is inapplicable to the facts of this case.  In *Allen* (as in *Heintz*) the communications at issue were those that took place between the attorneys for the parties.  *See Allen*, 629 F.3d at 365-66.  *Allen* did not create FDCPA liability for a communication to a court.

attorney violated the FDCPA. Following *Clomon*, in *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), the court found FDCPA violations where the files were primarily worked by non-lawyer legal assistants and the law firm virtually never filed suit against any debtors. In an often-quoted observation the Seventh Circuit stated:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.

*Id.* at 229. Like the *Clomon* court the *Avila* court held that an attorney could not send letters that created what is essentially a false sense of urgency. Both courts fell short in articulating precisely what standard is to be used in assessing whether an attorney's involvement is "meaningful."[10]

The conduct at issue in cases such as *Clomon*, *Avila* and dozens of other "meaningful involvement" decisions that are a part of the FDCPA case law was the sending of a letter on lawyer letterhead under circumstances in which the attorney played no meaningful role in the sending of the letter and made no decisions regarding the consumer's case. In those cases, the collection letter on lawyer letterhead was intended merely to create the false impression on the part of the

---

[10] The false sense of urgency analysis has long been reflected in the Federal Trade Commission's interpretation of the FDCPA. The FTC Staff Commentary on the FDCPA stated that "[i]t is a violation to send any communication that conveys to the consumer a false sense of urgency." 53 Fed. Reg. 50097-02 (1988).

consumer that the case had reached a more serious stage, that litigation was imminent, or that bad things were about to happen when in fact, all such implications were false.

No such facts exist here. Ralph Gulko approved and signed the state court complaint. Bock was served with a real summons and a real complaint in a suit that had actually been filed. If he had not answered, he would have been subject to entry of a default judgment. Indisputably, "the price of poker" had gone up. Any sense of urgency created by the state court suit was real and legitimate.

In *Greco*, *supra*, the Second Circuit Court of Appeals made it clear that the FDCPA does not impose an independent duty of meaningful involvement, but instead prohibits a debt collector from trying to scare a consumer with false suggestions that the collection matter has reached a more serious stage. *See Greco*, 412 F.3d 363-65. In *Lesher*, *supra*, this Court went no further than *Greco*, holding that a *Greco*-type disclaimer on the back of a letter was problematic under the FDCPA, but declining to hold that the FDCPA imposes an independent duty of meaningful involvement. The record shows that Gulko, acting as an attorney, approved and signed a pleading as only an attorney could have done in light of N.J.R.Ct. 1:21-1.

When a statute's language is plain, "the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according

to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989); *Caminetti v. United States*, 242 U.S. 470, 485, 61 L. Ed. 442, 37 S. Ct. 192 (1917). The language of § 1692e(3) is clear – a debt collector may not represent that a communication is from an attorney when in fact it is not. The application of this prohibition to traditional "meaningful involvement" cases such as *Clomon*, where the attorney whose name was affixed to the letter never saw the letter, makes a measure of sense. Applying the same prohibition to this case, where a licensed attorney approved and signed a pleading, is inconsistent with the plain meaning of the statute. The state court suit was most certainly "from" Pressler and Gulko. Even if this Court believes that Gulko should have reviewed the complaint more thoroughly, that does not change the fact that: (a) Gulko was an attorney; (b) he signed the pleading; and (c) the pleading was accurate.

Nor can any of the traditional concerns inherent in meaningful involvement cases be said to exist, as there was no "false sense of urgency." To the extent that the suit created any sense of urgency, that urgency was quite real. If the state court collection suit got "the debtor's knees knocking," it did so because it was a real suit, filed in a real court by real attorneys who had the ability and authority to take the case to trial. This is not "misrepresentation;" rather, it is the natural

consequence of litigation, and the District Court erred in granting Bock's summary

judgment motion, as Bock can show no actionable misrepresentation.

## V. Compliance with the judicially-created duty of meaningful attorney review under the FDCPA encompasses ethical delegation of tasks.

As is clear from *Greco* and *Lesher*, there is no duty of meaningful attorney

involvement under the FDCPA.   At most, there is merely a duty not to

misrepresent attorney involvement.  The words "meaningful attorney involvement"

have not been defined by the courts. All that is clear is that the meaningful attorney

involvement concept is a judicial creation, predicated upon the express prohibition

against misrepresenting that a communication is from an attorney as set forth in 15

U.S.C. § 1692e(3), and upon the notion that a debt collector may not create a false

sense of urgency to coerce payment of a debt.

Nevertheless, the *Avila* court examined the issue in light of the attorney's

ethical obligations under what are now the Rules of Professional conduct. *See*

*Avila v. Rubin*, 84 F.3d at 229, *quoting* American Bar Association, Formal Opinion

68 (1932). *See also, Palmer v. Stassinos*, 2009 U.S. Dist. LEXIS 4265 (N.D. Cal.

Jan. 9, 2009) (citing to a formal opinion of the Los Angeles County Bar

Association dealing with the delegation of tasks to non-lawyer assistants). Looking

to the RPC makes sense, especially in the context of the alleged violation of

Section 1692e(3). In many respects the attorney and lay debt collector can engage

in identical tasks.  Each can send a letter, make a collection call, or suggest that a

client sue a debtor. What separates attorney collectors from non-attorney collectors is two things: (a) the attorney's law license; and (b) the professional rules that govern the attorney's conduct.

N.J. RPC 1.1 requires an attorney to act with competence when representing a client. Under the Model Rules, the notion of "competence" includes the use of relevant technology:

> To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, including the benefits and risks associated with relevant technology, engage in continuing study and education and comply with all continuing legal education requirements to which the lawyer is subject.

ABA Model Rule of Professional Conduct 1.1, Official Comment 8. The duty to use technology is reasonably clear. If Pressler's client asks it to research a legal issue Pressler could not bill for ten hours of time for an associate to go through books in the law library when the same research could be performed in only an hour (and with greater accuracy) using Lexis or Westlaw. The duty under RPC 1.5 not to perform unreasonable and unnecessary work would mandate the use of relevant and available technology to the client's benefit. Similarly, if Pressler, by using the lawyer-designed and implemented technology described in the Felt Affidavit can provide delegable tasks that are performed more reliably than when delegated to a paralegal, then Pressler is obligated to use that available technology for the benefit of its client.

The FDCPA does not prohibit the delegation of tasks to non-lawyer assistants. "The court does not rule out satisfaction of the statute by legal assistant review under the active supervision of an attorney." *Newman v. Checkrite Cal.*, 912 F. Supp. 1354, 1383, n. 43 (E.D. Cal. 1995). Pressler submits that there is nothing improper about a lawyer saying to a paralegal:

- Please review this file.

- Check to be certain that the following information is contained in the file.

- If it is not, report back to me.

- If it is, check further to be certain that the debtor is not in bankruptcy.

- If he is, report back to me.

- If not, check to be certain that the last payment date occurred within the date range that I have given you to be certain that the claim is not time barred.

- If the last payment is older than that range, report back to me.

- If not, prepare the complaint using the template that I have provided to you, specifying the suit to be filed in the county of the debtor's residence.

- Finally, give me the draft complaint together with your report confirming that you have performed each of the tasks assigned to you on the file and confirming the results of those tasks.

Such delegation would be permitted under *Newman*, and it is permitted by N.J. RPC 5.3.

The Pressler system described in the Felt affidavit creates the identical process as described above, except that the legal assistant uses a computer program developed under the direction and supervision of attorneys, to perform each task with far greater accuracy than a paralegal or junior associate could accomplish alone. Attorney-designed tasks are performed by a computerized assistant that is far less likely to commit human errors. The results of those tasks are presented to an attorney (in this case Gulko) together with the results of the assigned analyses, and then Gulko makes the final decision whether or not to file suit. His review may indeed have been four seconds, but it was the *final* four seconds of a proprietary, complex review process that was created and implemented by attorneys. His review was meaningful, just as it would have been if a paralegal had performed each of the scrubs and checks, prepared the complaint, and brought it to him saying, "I did all of the tasks that you assigned to me. None of the issues you told me to check for were present, so I prepared the complaint for you, as you instructed and in accordance with your directions." The ABA Model Rule 5.3

even recognizes that attorneys will not always be using human paralegals, and it has been reworded to refer to nonlawyer "assistance" rather than "assistants" in order to recognize that attorneys receive assistance from many sources, including technology.

Pressler asserts that the District Court erred by failing to recognize that meaningful (and ethical) involvement can, and indeed does include delegation of tasks, including to an attorney-designed and implemented, computerized process. Therefore, the District Court's orders should be reversed.

## VI.   The *Noerr-Pennington* doctrine and U.S. Const. amend. I bar the imposition of liability under the FDCPA based on the "meaningful attorney involvement" theory

The First Amendment's Petition Clause and the *Noerr-Pennington* doctrine prohibit penalizing or creating liability for petitioning conduct, including pleadings in suits. The *Noerr-Pennington* doctrine is derived from the Petition Clause of the First Amendment, U.S. Const. amend. I, which protects the right to petition the government for redress of grievances. *Sosa v. DirecTV*, 437 F.3d 923, 929 (9th Cir. 2006). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.; see also Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d

35

626 (1965); *Juster Assoc. v. Rutland*, 901 F.2d 266, 270-271 (2d Cir. 1990). This

encompasses not only pleadings and other litigation papers, but also "conduct

incidental to the prosecution of the suit." *Columbia Pictures Indus., Inc. v. Prof'l*

*Real Estate Investors, Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991), *aff'd* 508 U.S.

49 (1993). The *Noerr-Pennington* doctrine has been applied to FDCPA claims.

*See e.g., Sykes v. Mel Harris & Assocs.*, 757 F. Supp. 2d 413, 429 (S.D.N.Y.

2010).

> In the words of Judge Cudahy of the Seventh Circuit Court of Appeals:
>
> The First Amendment provides that the government cannot abridge
> the right of the people to "petition the Government for a redress of
> grievances." U.S. Const. amend. 1. This right has deep common law
> roots and is the foundation of our republican (although not necessarily
> Republican) form of government. *See McDonald v. Smith*, 472 U.S.
> 479, 482, 86 L. Ed. 2d 384, 105 S. Ct. 2787 (1985); *United States v.
> Cruikshank*, 92 U.S. 542, 552, 23 L. Ed. 588 (1875); *see also Stern v.
> United States Gypsum, Inc.*, 547 F.2d 1329, 1342 (7th Cir. 1977).
> Thus, parties may petition the government for official action favorable
> to their interests without fear of suit, even if the result of the petition,
> if granted, might harm the interests of others. *See United Mine
> Workers of America v. Pennington*, 381 U.S. 657, 670, 14 L. Ed. 2d
> 626, 85 S. Ct. 1585 (1965); *Eastern R.R. Presidents Conference v.
> Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-44, 5 L. Ed. 2d 464, 81
> S. Ct. 523 (1961).

*Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999). *Noerr-Pennington* sets

forth a rule of construction "applicable to any statutory interpretation that could

implicate the rights protected by the Petition Clause." *Sosa*, 437 F.3d at 931.

Pursuant to this rule, courts must construe statutes so as to avoid burdening

conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise. *Id.* In the litigation context, petitioning conduct includes "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).

Pressler asserts that the Petition Clause of the First Amendment bars the imposition of liability under the FDCPA based upon the alleged failure to conduct a meaningful attorney review before signing and filing the state court suit. In *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 817-820 (8th Cir. 2012), the plaintiff alleged that Messerli had violated the FDCPA by making false statements in a state court collection pleading. The Eighth Circuit affirmed dismissal of the FDCPA claims, finding that it is not false or misleading to simply argue a legal position that is ultimately rejected for lack of support in the record. The court further reasoned that to hold otherwise would be contrary to the First Amendment right to petition the government for redress of grievances.

There is an exception to the *Noerr-Pennington* doctrine: "With respect to petitions brought in the courts, . . . a lawsuit is unprotected only if it is a 'sham' -- *i.e.*, 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'" *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)

(quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)). Notably, the sham exception applies only when a party's intent is to cause harm *through the litigation process itself* as opposed to the outcome of the litigation. *See gen. Professional Real Estate Investors*, 508 U.S. at 60–61. Even litigation that is improperly motivated does not fall within the sham litigation exception as long as the litigation has at least *some* viability. *See e.g., Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 363 (S.D.N.Y. 2010), as corrected (Aug. 19, 2010); *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F.Supp.2d 568, 597 (S.D.N.Y. 2010); *Video Intern. Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988).

Apart from the sham exception to the *Noerr-Pennington* doctrine, the law also permits the liability imposed by rules such as Federal Rule 11 and N.J.R.Ct. 1:4-8. Those rules, however, impose liability for filing groundless and bad faith pleadings that a lawyer refuses to withdraw after receiving a safe harbor notice and an opportunity to back down. The FDCPA is generally a strict liability statute that provides no safe harbor opportunity to back down. Pressler asserts that it cannot be used to impose liability for the signing and filing of a truthful and accurate pleading because the First Amendment protects that conduct.

38

As stated above, Bock was sued on the correct debt, in the correct amount, by the correct creditor. While represented by counsel, he settled that claim. The underlying state court suit does not remotely satisfy the sham exception to the *Noerr-Pennington* doctrine, and the District Court erred in finding liability based upon the signing and filing of the state court complaint.

## VII. A Violation of N.J.R.Ct. 1:4-8 is not a violation of the FDCPA.

N.J.R.Ct. 1:4-8 provides, in pertinent part:

### Rule 1:4-8.  Frivolous Litigation

(a) Effect of Signing, Filing or Advocating a Paper. The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, written motion or other paper. By signing, filing or advocating a pleading, written motion, or other paper, an attorney or pro se party certifies that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support; and

\* \* \*

The District Court read N.J.R.Ct. 1:4-8 to "give force and content" to the "meaningful involvement" doctrine and "codify basic, justifiable expectations underlying the litigation process" upon which the least sophisticated consumer

belief might be founded.  Appx. Vol. I at 26. The District Court further concluded that "[i]f, in fact, the attorney who signed the complaint is not involved and familiar with the case ... , then the debtor has been unfairly misled and deceived within the meaning of the FDCPA, 15 U.S.C. § 1692e." *Id.*

In its footnote 16, the District Court made clear that the "substantive accuracy of the complaint" was not in issue; but rather, "the truthfulness of the attorney's implied representation of meaningful involvement". Appx. Vol. I at 26-27. The District Court erred by imposing a Rule 1:4-8 standard based upon its own unsupported interpretation. The only interpretation of Rule 1:4-8 which could "give force and content" to 15 U.S.C. § 1692e is that as applied by the appellate courts of the State of New Jersey.

> An assertion is deemed frivolous when "'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" *First Atl. Fed. Credit Union v. Perez*, 391 N.J. Super. 419, 432, 918 A.2d 666 (App.Div.2007) (*quoting Fagas v. Scott*, 251 N.J. Super. 169, 190, 597 A.2d 571 (Law Div. 1991)).

*In re Estate of Ehrlich*, 427 N.J. Super. 64, 77, 47 A.3d 12, 20 (N.J. Super. Ct. App. Div. 2012).

Gulko's review before signing the state court complaint was "an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law." Appx. Vol. I at 27. The information before Mr. Gulko came directly from

the stream of data that had been purchased by Pressler's client. This information, derived from the original records of the original creditor provided Mr. Gulko with the "rational argument" and "good faith belief" to satisfy the rule. Could there have been defenses to the claim raised? Possibly, but had such defenses existed they would not have rendered either the pleading frivolous or Mr. Gulko's inquiry unreasonable.

The district court essentially held that because of N.J.R.Ct. 1:4-8 an attorney in New Jersey must review evidentiary proofs before signing a complaint. Appx. Vol. I at 27-28. By further interpretation of Rule 1:4-8, the district court said that Pressler could not rely on that part of the rule by which a signing attorney certifies that "as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn ...." Appx. Vol. I at 27-28. In so holding, the district court defined "specifically identified allegations" to mean allegations made "'on information and belief,' facts that a plaintiff could not reasonably be expected to know - for example, facts within the exclusive control of defendant." *Id.* at 27-28. Such magic language, however, is neither expressed nor adopted by the rule itself nor in any decision known to Pressler or its counsel. It is therefore arbitrary, capricious and unfounded and constitutes an abuse of discretion, making reversal appropriate.

The District Court held that that "a signed complaint is inherently false and misleading, in violation of 15 U.S.C. 1692e, where, at the time of signing, the attorney signing it has not

> 1) drafted, or carefully reviewed, the complaint; and
>
> 2) conducted an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law."

Appx. Vol. I. at 27.

The District Court concluded that Pressler did not conduct such an inquiry and that it thereby violated 15 U.S.C. §1692e.  Respectfully, this was error both because: (a) Pressler did not violate Rule 1:4-8 and (b) a violation of a state court rule of procedure is not actionable under the FDCPA.

Looking to the facts of this case and the explicit text of Rule 1:4-8, the District Court applied an erroneous standard by choosing to ignore part of Rule 1:4-8(a)(3).  That rule requires neither "drafting" nor "careful review." It requires that attorneys "read" the complaint and have reason to believe that the allegations "are either ***likely to have evidentiary support or they will be withdrawn or corrected*** if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support." N.J.R.Ct.  1:4-8(a)(3)(emphasis added). The accounts at issue are book accounts that are regularly proven by documentary

evidence. "Plaintiffs suing on assigned, charged-off credit card debts must prove two things: ownership of the defendant's charged-off debt and the amount due the card issuer when it charged off the account." *New Century Financial Services, Inc. v. Oughla*, 98 A.3d 583, 586, 437 N.J. Super. 299, 304 (N.J. Super. Ct. App. Div. 2014), *cert. denied by MSW Capital, LLC v. Zaidi*, 95 A.3d 258, 218 N.J. 531 (N.J. 2014). In this case the record shows that such evidence existed and that Pressler had the ability to obtain it for use at trial. Appx. Vol. II at 166-189. That is all that Rule 1:4-8 required.

Bock presented no evidence that the state court complaint was presented for any improper purpose, such as to harass him, to cause unnecessary delay or to needlessly increase the cost of litigation. He presented no evidence that the claims in the state court complaint were not warranted by existing law; and he presented no evidence that the allegations in the complaint lacked evidentiary support. Indeed, it is undisputed that Bock was the correct debtor, sued by the correct creditor, on a debt that he owed and settled. Furthermore, the record showed that Ralph Gulko had many years of experience in reviewing the same types of complaints, that he was familiar with the client's processes, and that Pressler managing attorneys had created substantial processes to review the adequacy of client documentation on a constant basis. Appx. Vol. II at 69-71; App. Vol. II at 124-139. There was no violation of Rule 1:4-8.

43

However, even if there were such a violation Rule 1:4-8 has no applicability in a federal court proceeding, as Fed. R. Civ. P. 1 provides that proceedings in the District Court are governed by the *Federal* Rules of Civil Procedure.[11]   Therefore, the court below had no ability to grant sanctions under Rule 1:4-8.   The District Court also could not impose sanctions under Fed. R. Civ. P. 11.  Multiple appellate courts have held that a federal court may not impose sanctions under Fed. R. Civ. P. 11 based upon the contents of a pleading that was filed in state court. *See e.g., Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir. 1987); *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 (4th Cir. 1987); *Edwards v. GMC*, 153 F.3d 242, 245 (5th Cir. 1998); *Worthington v. Wilson*, 8 F.3d 1253, 1257-58 (7th Cir. 1993); *Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 808 (9th Cir. 1987). Furthermore, there was no basis for the application of either rule, as the pleading at issue was a complaint in a different proceeding, in which Bock never sought sanctions and in which the trial court never imposed sanctions.

Plaintiff persuaded the District Court to do an end-run around the unavailability of sanctions by securing a ruling that the alleged violation of Rule

---

[11] Compare Fed. R. Civ. P. 1 with the New Jersey State Court counterpart, Rule 1:1-1 which states "[u]nless otherwise stated, the rules in Part I are *applicable to* the Supreme Court, the Superior Court, the Tax Court, the surrogate's courts, and the municipal courts." (Emphasis added).  *See Ali v. Portfolio Recovery Associates, LLC* 2014 WL 1767564, at *1 n. 2 (D.N.J. 2014)(rejecting a claim for N.J.R.Ct. 1:4-8 sanctions in a federal lawsuit based upon the limitation contained in N.J.R.Ct. 1:1-1).

1:4-8 violated the FDCPA.  This was error for three reasons.

First, the filing of a collection suit in the absence of immediate means to prove the validity and ownership of the debt does not constitute a false or deceptive practice in violation of 15 U.S.C. § 1692e. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006); *Richardson v. Midland Funding, LLC*, 583 Fed. Appx. 124, 125, 2014 U.S. App. LEXIS 17329 (4th Cir. 2014); *Hickman v. Alpine Asset Mgmt., Grp., LLC*, No. 11-1236, 2012 WL 4062694, at *5 (W.D. Mo. Sept. 14, 2012); *Mansfield v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 34102, 2011 WL 1212939 at *5 (S.D. Cal. March 30, 2011); *Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 850 (E.D. Mich. 2008).   It would not be an FDCPA violation if Pressler did not have in its possession every piece of evidence necessary to prove its client's case.  Bock does not assert that the state court suit was groundless in fact or law or that it was filed for an improper purpose.  He simply says that Pressler did not do enough work to satisfy Rule 1:4-8, and that it therefore violated the FDCPA.  As noted above, the law does not support such an assertion.

Second, the violation of a state court rule regulating pleadings is not a violation of the FDCPA.  *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007).  Litigation activities fall outside the scope of regulated debt collection under the FDCPA.  *Hemmingsen v. Messerli & Kramer, P.A.*, 674

F.3d 814, 817-20 (8th Cir. 2012). As is discussed above, *Heintz*, *supra*, dealt with whether the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." The question of whether the Act regulates litigation conduct was not before the *Heintz* Court.

Finally, to the extent that Rule 1:4-8 imposes a duty of inquiry upon a collection attorney who files suit, any such duty was not owed to Bock and is not a part of the FDCPA's statutory scheme. 15 U.S.C. §1692g(a)(3) required Pressler to provide to Bock in its initial collection letter "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." Pressler provided that notice and Bock failed to raise a dispute. Appx. Vol. II at 65, ¶¶ 2-3. Under the FDCPA's statutory scheme Pressler was entitled to assume that the claim against Bock was valid. To hold otherwise would be to negate the effect of Section 1692g(a)(3), rendering it superfluous and concluding that Congress provided a right without a remedy.

Even if the Court finds a four-second review unsettling, that is not a sufficient basis upon which to read into the FDCPA obligations that it does not contain. Given a choice between effecting an undesirable outcome or disregarding the express wording of an unambiguous statute, a court should neither enlarge nor

restrict the effect of the Congressional act. *See Iselin v. United States*, 270 U.S. 245, 251, 70 L. Ed. 566, 46 S. Ct. 248, 62 Ct. Cl. 755 (1926); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 56 L. Ed. 2d 581, 98 S. Ct. 2010 (1978). Congress did not include in the FDCPA the investigative obligations imposed by N.J.R.Ct. 1:4-8 and Fed. R. Civ. P. 11. To the contrary multiple federal appellate courts have held that a debt collector (including an attorney) may rely on the file provided by his client.

In *Jenkins v. Heintz*, 124 F.3d 824, *cert. denied*, 523 U.S. 1022, 118 S.Ct. 1304, 140 L.Ed.3d 469 (1998) following remand from the Supreme Court the plaintiff argued "that an attorney debt collector has an independent duty to assess the legality of the debt sought to be collected" and that the attorney defendants "should have more deeply investigated the charges for the force placed insurance because the defendants are lawyers who sued her approximately one month before sending to her attorney the settlement letter complained of in her FDCPA complaint." See *Jenkins*, 124 F.3d at 832. The Court of Appeals rejected that theory: "Filing a lawsuit does not insulate a lawyer from the restrictions of the Act, nor does it expose him to standards under the Act not applied to non-lawyer collectors. Rule 11 violations and other such claims must be pursued outside the Act." *Id.* at 833. The *Jenkins* court held that the FDCPA did not require the defendants in that case to conduct an independent review of their client's claim and

the legitimacy of the charges sought.   Similar decisions exist in the Fourth and Sixth Circuits. In *Amond v. Brincefield, Hartnett & Assocs., PC*, 175 F.3d 1013 (Table, Text at 1999 US App.  LEXIS 4815, 1999 WL 152555) (4th Cir. 1999), the plaintiff argued that the Rule 11 duty of reasonable inquiry should extend to any activity by a lawyer that constitutes debt collection under the FDCPA.   The Court of Appeals rejected that argument, stating "we will not combine Rule 11 with the FDCPA to create a heightened duty of investigation for lawyer-debt collectors engaging in ordinary debt collection activity."   *Id.* As in *Jenkins*, the *Amond* court upheld the right of lawyer-debt collectors to rely on the representations of their clients.  Similarly, in *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025 (6th Cir. 1992) the Court of Appeals held that "[t]he district court correctly determined, however, that 'the statute does not require an independent investigation of the debt referred for collection.'" *Id.,* 953 F.2d at 1032.

Other courts have also held that the FDCPA does not impose upon a debt collector any duty to investigate independently the validity of the debt.  *See e.g., Slanina v. United Recovery Systems, LP*, 2011 U.S. Dist. LEXIS 121356, at *7-8 (M.D. Pa. 2011) ("The FDPCA did not require [the debt collector] to validate the debt prior to its initial contact with [the plaintiff]. … Requiring debt collectors to investigate and verify a debt *before* collection would create an additional duty not found in the statute's plain language.  It would render 1692g(a)(4) superfluous.").

*See also Yentin v. Michaels, Louis & Assocs., Inc.*, 2011 U.S. Dist. LEXIS 104711 (E.D. Pa. 2011); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006). Thus, the District Court erred in granting Bock's summary judgment motion and in denying Pressler's motion, as the alleged violation of N.J.R.Ct. 1:4-8 is not actionable under the FDCPA.

## CONCLUSION

The body of FDCPA case law dealing with attorney involvement has, for the most part, involved some or all of the following:

- facsimile attorney signatures on letters that the attorneys never saw;

- letters that were sent on files that no attorney had ever seen;

- letters sent to consumers of whom the attorney whose signature was on the letter was unaware; and

- false implications of suit where no suit was contemplated.

In stark contrast, in this case there was no facsimile signature; Ralph Gulko actually approved the Complaint; he knew of the file; he was aware that the firm was suing Mr. Bock; and the signature of the complaint was that of a lawyer. There was no false implication of suit; instead, there was a very real suit that Pressler had the demonstrated intent to pursue.

The Supreme Court has cautioned that the FDCPA's "conduct-regulating provisions . . . should not be assumed to compel absurd results when applied to

49

debt collecting attorneys." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 559 U.S. 573, 600, 130 S. Ct. 1605, 1622, 176 L. Ed. 2d 519, 539 (2010).  The decision of the District Court most assuredly creates such results.  As is clear from the record Pressler did its job for its client in a manner satisfactory to Midland, but the District Court decision would allow Bock, rather than Pressler's client, to decide whether Pressler performed adequately in representing Midland.

Under the holding herein appealed, Pressler could have tried the state court action and won on the merits (as opposed to merely having settled it), and Bock would still be able to sue it for an alleged lack of meaningful review. The decision below essentially makes a mockery of the state court system by allowing every disgruntled state court loser in a collection suit to sue the prevailing creditor's attorney with the accusation that the attorneys should have worked harder before filing their client's meritorious suit.  The Eighth Circuit Court of Appeals has held that a debt collector's fact allegations in a state court pleading are not false and misleading for FDCPA purposes simply because they were "rejected as not adequately supported in the collection suit." *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012).  The decision of the District Court creates the result that an unsuccessful collection attorney is not liable for suing, but a successful attorney is.  Respectfully, this is precisely the type of absurdity against which the Supreme Court warned.

For the foregoing reasons, the decision of the District Court should be reversed and this case should be remanded with instructions to enter summary judgment in favor of Appellant or, in the alternative, to try the case on the merits.

Respectfully submitted,
PRESSLER & PRESSLER, LLP

Dated: June 5, 2015          By:    /s/ Mitchell L. Williamson, Esq.
                                    Mitchell L. Williamson, Esq.
                                    7 Entin Road
                                    Parsippany, NJ 07054
                                    (973) 753-5100 (telephone)
                                    (973) 753-5353 (facsimile)
                                    mwilliamson@pressler-pressler.com
                                    Attorney for Defendant/Appellant,
**On the brief:**                   Pressler & Pressler, LLP
    Manuel H. Newburger, Esq.
    Mitchell L. Williamson, Esq.

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I hereby certify that both Mitchell L. Williamson and Manuel H. Newburger, the attorneys whose names appear on the brief, are members of the bar of this court in good standing.

Dated:  June 5, 2015

<u>/s/ Mitchell L. Williamson, Esq.</u>
Mitchell L. Williamson, Esq.
PRESSLER & PRESSLER, LLP
7 Entin Road
Parsippany, NJ 07054
(973) 753-5100 (telephone)
(973) 753-5353 (facsimile)
mwilliamson@pressler-pressler.com
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

The instant brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,211 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  The instant brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Date: June 5, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP

## <u>CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS</u>

I hereby certify that the text of the E-Brief and Hard Copies of the foregoing Brief of Appellant are identical.

Date: June 5, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed on the PDF file of the foregoing Brief of Appellant prior to electronic filing using Norton Security Suite anti-virus and that no viruses were detected in the files.

Date: June 5, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing Brief of Appellant was served upon all counsel via the Court's CM/ECF system and via federal express on this 5th day of June, 2015:

> Philip D. Stern, Esq.
> Philip D. Stern, Attorney at Law, LLC
> 2816 Morris Avenue, Suite 30
> Union, NJ 07083-4870
>
> Cary L. Flitter, Esq.
> Flitter Lorenz, P.C.
> 450 N. Narbeth Avenue, Suite 101
> Narbeth, PA 19072
>
> Manuel H. Newburger, Esq.
> Barron & Newburger, P.C.
> 1212 Guadalupe, Suite 104
> Austin, TX 78701-1837

I further certify that seven copies of the foregoing Brief of Appellant was filed with the Court's CM/ECF system and served via Federal Express to the Clerk of the of the United States Court of Appeals for the Third Circuit on this 5th day of June, 2015, at the following address:

> Office of the Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, PA 19106-1790

Dated:  June 5, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
PRESSLER & PRESSLER, LLP
7 Entin Road
Parsippany, NJ 07054
(973) 753-5100 (telephone)
(973) 753-5353 (facsimile)
mwilliamson@pressler-pressler.com

Attorneys for Defendant/Appellant,
Pressler & Pressler, LLP