No. 15-1056

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**DANIEL BOCK, JR.;**

Plaintiff/Respondent,

**vs.**

**PRESSLER & PRESSLER;**

Defendant/Petitioner.

*Appeal from the United States District Court for the District of New Jersey*
*Case no. 11-7593(KM)(MCA); Honorable Kevin McNulty*

## BRIEF OF
## AMICI CURIAE IN SUPPORT OF
## PRESSLER & PRESSLER
## PETITION FOR REVERSAL

Jeanne L. Zimmer (CA SBN: 123321)
Tamar Gabriel (CA SBN: 266860)
CARLSON & MESSER LLP
5959 West Century Blvd., Suite 1214
Los Angeles, California 90045
Tel: (310) 242-2200
Fax: (310) 242-2222

*Attorneys for Amici Curiae,*
*National Association of Retail Collection Attorneys; Alaska Creditor Bar; Arizona*
*Creditor Bar Association, Inc.; Arkansas Creditor's Bar Association, Inc.;*
*California Creditors Bar Association; Colorado Creditor Bar Association, Inc.;*
*Commercial Lawyers Conference of New York; Creditor Attorney Association of*
*Alabama; Illinois Creditors Bar Association; Iowa Creditors Bar Association;*
*Kentucky Creditors' Rights Bar Association, Inc.; Maryland-DC Creditors Bar*
*Association; Michigan Creditors Bar Association; Minnesota Creditors Rights*
*Association; New Jersey Creditors Bar Association; Wisconsin Creditors' Rights*
*Association, Inc.*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………….…..…ii-iii

CORPORATE DISCLOSURE STATEMENT…………………………………iv

INTEREST OF AMICI CURIAE……………………………………..…v-vi

SUMMARY OF ARGUMENT………………………………………..………1

ARGUMENT …………………………………………………………..…2-11

CONCLUSION..…………………………………………………………..11

CERTIFICATE OF BAR MEMBERSHIP………………………………12

CERTIFICATE OF COMPLIANCE F.R.A.P. 32(a) and L.A.R. 31.1...…………12

STATEMENT PURSUANT TO F.R.A.P. 29(c)(5)………………………13

CERTIFICATE OF SERVICE……………………………………………...14-15

i

# TABLE OF AUTHORITIES

## CASES

*Addison v. Braud,* 105 F.3d 223, 224 n. 1 (5th Cir.1997)…………..……………..6

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC* (7th Cir. 2007) 480 F.3d
    470………………………………………………………………………....2-4

*BellSouth Telecomms., Inc. v. Town of Palm Beach,* 252 F.3d 1169, 1188 n. 11
    (11th Cir.2001)……………………………………………..……………..4

*Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir.1993)…………………..…….…7

*Eades v. Kennedy, PC Law Offices* (2d Cir., June 4, 2015, 14-104-CV) 2015 WL
    3498784………………………………………………………..…………..5

*Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 364 (2d Cir.2005)…...7

*Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 772, 113 S.Ct. 2891, 125
    L.Ed.2d 612 (1993)……………………………………………………...8

*Johnson v. Riddle,* 305 F.3d 1107 (10th Cir.2002)………………………..……….6

*Lesher v. Law Offices Of Mitchell N. Kay, PC* (3d Cir. 2011) 650 F.3d 993…...….7

*McKnight v. Benitez,* 176 F.Supp.2d 1301 (M.D. Fla 2001)………………………4

*Miller v. Upton, Cohen & Slamowitz,* 687 F. Supp. 2d 86 (E.D.N.Y. 2009)….....…7

*Piper v. Portnoff Law Associates, Ltd.* (3d Cir. 2005) 396 F.3d 227, 234…………6

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.* (Fla. 2007) 979 So.2d 871, 880…..…..………..8

*Vega v. McKay* (11th Cir. 2003) 351 F.3d 1334…..……………………..………..4-5

## STATUTES

15 U.S.C. § 1692e………………………………………………………..3-5, 7

Fed. R. App. P. 26.1…………………………………...…………...…..……..iv

Fed. R. App. P. 29(a)………………………………………….….……...vi

New Jersey Court Rules, Rules 1:4-8 ..…………………………………………..2

## OTHER AUTHORITIES

*The Evolving Role of the Corporate Counsel: How Information Technology Is Reinventing Legal Practice* (2013) 36 Campbell L. Rev. 383, 389

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Amici Curiae, which includes the National Association of Retail Collection Attorneys; Alaska Creditor Bar; Arizona Creditor Bar Association, Inc.; Arkansas Creditor's Bar Association, Inc.; California Creditors Bar Association; Colorado Creditor Bar Association, Inc.; Commercial Lawyers Conference of New York; Creditor Attorney Association of Alabama; Illinois Creditors Bar Association; Iowa Creditors Bar Association; Kentucky Creditors' Rights Bar Association, Inc.; Maryland-DC Creditors Bar Association; Michigan Creditors Bar Association; Minnesota Creditors Rights Association; New Jersey Creditors Bar Association; and Wisconsin Creditors' Rights Association, Inc. are all organizations that have no corporate parent and no publicly-held company owns ten percent or more of its stock.

Dated: June 12, 2015          Respectfully submitted,


CARLSON & MESSER LLP



By:    s/ Jeanne L. Zimmer
       Jeanne L. Zimmer (CA State Bar No.: 123321)
       Tamar Gabriel (CA State Bar No.: 266860)
       Carlson & Messer LLP
       5959 W Century Blvd., #1214
       Los Angeles, CA  90045
       *Attorneys for Amici Curiae*

## I.   STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE OF AMICI CURIAE

The National Association of Retail Collection Attorneys ("NARCA") is a nationwide, not-for-profit trade association comprised of attorneys and law firms engaged in the practice of debt collection law.  NARCA members include over 700 law firms located in all fifty states, all of whom must meet association standards designed to ensure experience and professionalism.  Members are also guided by NARCA's code of ethics, which imposes an obligation of self-discipline beyond the requirements of state laws and regulations that govern attorneys.

Alaska Creditor Bar; Arizona Creditor Bar Association, Inc.; Arkansas Creditor's Bar Association, Inc.; California Creditors Bar Association; Colorado Creditor Bar Association, Inc.; Commercial Lawyers Conference of New York; Creditor Attorney Association of Alabama; Illinois Creditors Bar Association; Iowa Creditors Bar Association; Kentucky Creditors' Rights Bar Association, Inc.; Maryland-DC Creditors Bar Association; Michigan Creditors Bar Association; Minnesota Creditors Rights Association; New Jersey Creditors Bar Association; and Wisconsin Creditors' Rights Association, Inc. are state, not-for-profit trade associations of attorneys and law firms also engaged in the practice of debt collection law.  The members of these organizations must also meet their association standards designed to ensure professionalism and ethics.  All are also governed by the ethical obligations of their respective state bars and attorney disciplinary programs.

NARCA members and the members of the state associations are regularly engaged by creditors to lawfully collect delinquent consumer debts, and thus must interpret and comply with federal and state laws governing debt collection, including the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA" or the "Act").  As the only national trade association dedicated solely to

the needs of consumer collection attorneys, NARCA has a significant interest in ensuring that the FDCPA is interpreted in a manner that allows collection attorneys to discharge their ethical duty to zealously and lawfully advance their clients' legitimate interests. Similarly, the state associations, as the respective leading state trade associations for consumer collection attorneys, have a significant interest in ensuring that the FDCPA is interpreted in a manner that allows collection attorneys to discharge their ethical duty to zealously and lawfully advance their clients' legitimate interests. The ruling underlying this appeal erroneously (and unfairly) exposes NARCA's members, the members of the above referenced state associations, and some of their clients to FDCPA-liability. NARCA and the above referenced state associations have a direct interest in this litigation.

Amici Curiae are authorized to state that Pressler has consented to the filing of this brief, and states that they have concurrently filed a motion for leave to file this brief. *See* Fed. R. Appl. P. 29(a).

## II.    SUMMARY OF ARGUMENT

The dearth of authority on whether the FDCPA governs the contents of a Complaint has left substantial uncertainty as to whether the congressional intent and the purpose of the FDCPA can be broadly construed to regulate activities that constitute the practice of law and whether the doctrine of "meaningful involvement" is being interpreted properly to account for the growing reliance on technological advancements in litigation generally and debt collection specifically. Amici Curiae submit that the Court should consider these issues, which are of fundamental importance to Amici Curiae's members, as the FDCPA does not explicitly address these issues. The potential for a decision of this Court to clarify the applicability of the FDCPA to the practice of law strongly favors consideration of Amici Curiae's brief.

It is true that under certain limited circumstances, an attorney or law firm regularly engaged in debt collection may be subject to the FDCPA. However, no Court has specifically addressed, in isolation, whether the FDCPA governs the level of attorney involvement and an attorney's duty of inquiry prior to filing a Complaint against a consumer. Amici Curiae submit that the FDCPA was _**not**_ intended to regulate or restrict evolving ways in which lawyers analyze and evaluate claims and cases that involve the use of technology. Technology and software programs that govern payment for goods and services are frequently used by banks, hospitals, insurance companies, physicians, and utility companies. Lawyers who work for banks, hospitals, insurers and utilities, and Amici members in particular, work for months or years to become familiar with their clients' procedures, background, experience, and training. Experienced lawyers who know their clients' background and procedures, with the aid of technology, can often make rapid decisions about claims. In a law-practice that is dominated by technology and software programs, focusing only on the day a Complaint is filed,

as the court below did here, erroneously ignores the work and experience that Amici Curiae members invest to understand their clients' procedures, background, and other data.

In this case, there was nothing technically or substantively defective with the lawsuit that was filed by *Pressler*.  But the court below erroneously focused on the time that *Pressler* spent on the individual Complaint before filing the suit.  The district court erred by  improperly applying the FDCPA to  the duty of inquiry under state law (in this case the New Jersey Court Rules, Rules 1:4-8), which is essentially the state law equivalent of the Federal Rules of Civil Procedure Rule 11, into an FDCPA violation.

## III.    ARGUMENT

### 1.    The FDCPA Was Not Created to Regulate Activities that Constitute the Practice of Law

The FDCPA was ***not*** intended to be applied to regulate the traditional practice of law, which consists of an attorney's internal thought process, analysis, and evaluation of a case in anticipation of filing a Complaint.  The Seventh Circuit Court of Appeals has already spoken on this issue of whether the FDCPA is applicable to the contents of a Complaint in *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC* (7th Cir. 2007) 480 F.3d 470.  In *Beler*, a consumer, Ela Beler ("Beler") bought products from JCPenney using a house-label credit card. *Id.* Credit was extended by General Electric Capital Corporation through the auspices of Monogram Credit Card Bank of Georgia.  *Id.*  When Beler fell behind in repayment, GE Capital filed a collection suit in Illinois.  *Id.* It was represented by Blatt, Hasenmiller, Liebsker & Moore, LLC ("the Law Firm").  Beler alleged that the complaint filed in the state court, and an attached affidavit, violated the FDCPA because the Law Firm's description of the contracts among JCPenney, Monogram Bank, and GE Capital was not clear enough to enable an

unsophisticated consumer to understand the relation among merchant, transaction processor, and creditor and that this confusing description violated 15 U.S.C. § 1692e. *Id.* The Seventh Circuit ruled that this theory *assumes* that the FDCPA regulates the contents of complaints, affidavits, and other papers filed in state court. *Id.* at 472-73. However, the Seventh Circuit was not convinced that the FDCPA applies to the contents of a Complaint, and stated:

> The Law Firm is a debt collector, to be sure, and we held in *Thomas v. Simpson & Cybak,* 392 F.3d 914 (7th Cir.2004) (en banc), that the statutory "verification notice" must precede or accompany a complaint when the creditor's law firm satisfies the definition of a debt collector. **But *Thomas* did not imply that the FDCPA dictates the complaint's contents; to the contrary, we suggested (though we did not have an occasion to hold) that the state's rules of procedure, not federal law, determine which facts, and how much detail, must be included in documents filed with a clerk of court for presentation to a judge.** A recent amendment nullified the holding of *Thomas:* legal pleadings no longer need be preceded or accompanied by verification notices. Pub.L. 109-351, 120 Stat.2006 (Oct. 13, 2006), adding 15 U.S.C. § 1692g(d). **Given this amendment and the limited rationale of *Thomas* itself, it is far from clear that the FDCPA controls the contents of pleadings filed in state court.** *Id.* at 472-73 (emphasis added)…Let us suppose, for the sake of argument, that § 1692e applies to complaints, briefs, and other papers filed in state court. (We postpone to some future case, where the answer matters, the decision whether § 1692e covers the process of litigation.) **Beler thinks that the Act requires everything from a debt collector's pen to be in plain language, *but that's not so.*** Several parts of the FDCPA require notice about particular topics, and we have held that the required notices must be clear rather than muddy. That's some distance from saying that everything a lawyer writes during the course of litigation must be stated in plain English understandable by unsophisticated consumers. However

desirable that might be, it is not a command to be found in the
FDCPA. *Id.* at 472-73 (emphasis added).

This Court should follow the sound reasoning of the Seventh Circuit Court
of Appeals and reverse the Trial Court's improper application of the FDCPA to the
contents of the underlying collection suit.

Similarly, the Eleventh Circuit has also decided the issue of whether the
FDCPA should apply to a Complaint and held that the term "communication" as
used in the FDCPA ***does not*** include legal action or pleadings. *Vega v. McKay*
(11th Cir. 2003) 351 F.3d 1334. In *Vega*, the Eleventh Circuit agreed with the
conclusion set forth in the Middle District of Florida's holding in *McKnight v.
Benitez*, 176 F.Supp.2d 1301, 1308 (M.D. Fla 2001) that "it seems far more
consistent with the purpose of the Act that the term 'communication' as used does
not include a 'legal action or pleading.'" *Id.* at 1336; *See McKnight*, 176 F.supp.2d
at 1306, 1308 (noting that the purpose of the FDCPA is to "curb abusive debt
collection practices, not legal actions").

In reaching its decision in *Vega*, the Eleventh Circuit gave "serious
consideration to the interpretation put forth by the Federal Trade Commission
which is the agency charged with enforcing the provisions of the FDCPA and has
developed the expertise in this area." *Vega* at 1336. As the Eleventh Circuit in
*Vega* stated, "it is enough to observe that the well-reasoned views of the agencies
implementing a statute constitute a body of experience and informed judgment to
which courts and litigants may properly resort for guidance." *Id.* at 1337; *See
BellSouth Telecomms., Inc. v. Town of Palm Beach,* 252 F.3d 1169, 1188 n. 11
(11th Cir.2001) (quoting *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 589, 119
S.Ct. 2176, 144 L.Ed.2d 540 (1999)) (following the FCC's guideline interpretation
of a particular statutory provision). The Eleventh Circuit recognized that the
Federal Trade Comission ("FTC") does not consider a legal action to be a

"communication" in connection with the collection of a debt. *See McKnight* at 1305-06 (noting that the FTC has stated in non-binding commentary that "[a] debt collector's institution of formal legal action against a consumer…is not a 'communication in connection with collection of any debt,' and thus does not confer section 809 notice-and-validation rights on the consumer") (citing 53 FR 50097, 50108).

Likewise, a very recent case found that there could be no FDCPA liability imposed on a law firm for filing a lawsuit. *Eades v. Kennedy, PC Law Offices* (2d Cir., June 4, 2015, 14-104-CV) 2015 WL 3498784. Plaintiff Eades claimed that the law firm (Kennedy) filed its collection lawsuit, without supporting evidence, in violation of the FDCPA. The Second District found that plaintiffs failed to state a claim for a violation of the FDCPA, stating "[w]e are also not persuaded by plaintiffs' third argument that Kennedy violated the FDCPA by filing its Pennsylvania lawsuit without sufficient evidence to support is claims against them. The plaintiffs failed to allege that Kennedy's claims were frivolous or baseless…And standing alone, the allegation that Kennedy filed and pursued the lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt pursuant to §1692e, e(2), e(5), or e(10) of the FDCPA, *see Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 331-33 (6th Cir. 2006), or that it constituted the collection of any amount not permitted by law pursuant to §§1692e(5) and 1692f(1). "

Although there are circuits that have generally held that the FDCPA may apply to the activities of an attorney leading up to the actual filing of a complaint, upon a closer look, it is clear that ***none of these cases*** specifically decided the sufficiency of the contents of a Complaint, the amount of time required to prepare and file a Complaint, and the extent of sufficient attorney involvement in filing a Complaint. *See, e.g. Paulemon v. Tobin* (2d Cir. 1994) 30 F.3d 307, 310 ("A

'litigation' exemption cannot apply to the sending of letters to a debtor or the debtor's counsel prior to the actual filing of a complaint."); *Todd v. Weltman, Weinberg & Reis Co., L.P.A.* (6th Cir. 2006) 434 F.3d 432 (Law firm that represented judgment creditors violated the FDCPA by executing and filing affidavits in support of non-wage garnishment proceedings with no factual basis for belief that judgment debtor's bank accounts contained non-exempt assets.); *Piper v. Portnoff Law Associates, Ltd.* (3d Cir. 2005) 396 F.3d 227, 234 (FDCPA applied to a law firm that sent pre-litigation letters to a consumer which failed to include statutory disclosures required for communications sent to consumers, by falsely representing or implying that the letters were from an attorney, and by collecting and attempting to collect fees that were not permitted by the agreement creating the debt nor permitted by law); *Johnson v. Riddle,* 305 F.3d 1107 (10th Cir.2002) (Law firm's attempt to collect a shoplifting penalty was not permitted by law.); *Addison v. Braud,* 105 F.3d 223, 224 n. 1 (5th Cir.1997) (Attorney who brought action to recover on promissory note in wrong venue was liable for civil damages under FDCPA.)

### 2.    The "Meaningful Attorney Review" Doctrine Was Misapplied By the Trial Court.

Several cases discuss the circumstances under which letters that are sent on an attorney's letterhead can be deemed to be misleading under the "meaningful attorney review" doctrine.   However, no Court has ever applied the "meaningful attorney review" doctrine directly to the level of attorney involvement in filing a civil complaint.   The Trial Court minimizes the answer to this question by concluding that it "does not matter." *Trial Court Order* pg. 16.   However, it does matter; and in a significant way.

It is well established that "[o]ne cannot, consistent with the FDCPA, mislead the debtor regarding meaningful 'attorney' involvement in the debt collection

process." *Lesher v. Law Offices Of Mitchell N. Kay, PC* (3d Cir. 2011) 650 F.3d

993 at 1001 (quoting *Greco,* 412 F.3d at 364). It is a violation of Section 1692e for

a debt collector to make what purports to be, but actually is not, a statement of an

attorney in connection with the debt collection process. *See id.* at 1001–1003;

*Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 364 (2d Cir.2005);

*Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir.1993).

The trial court relied on *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp.

2d 86 (E.D.N.Y. 2009) to draw a parallel to the case at hand in finding that Pressler

had not "meaningfully reviewed" the Complaint before filing. However, *Miller* is

factually dissimilar to the case at hand. In *Miller*, the attorneys of Upton, Choen &

Slamowitz ("UCS") who were retained by the Lord & Taylor department store

"did not have direct access to Lord & Taylor's file," *id.* at 93. The attorneys at

UCS essentially *never* reviewed any information about the debt at all either before

sending the initial collection letter or prior to filing the Complaint. *Id.* at 94.

Here, there is no dispute that the Pressler attorney actually did review the

file in anticipation of filing the lawsuit. Instead, the issue is whether there was

sufficient attorney involvement in the process leading up to filing the Complaint.

The Trial Court only focused on the day the lawsuit was filed to conclude that the

Pressler attorney was not meaningfully involved in the review process leading up

to the filing of the Complaint. However, this line of reasoning is flawed, as it is not

supported by *Miller* (or any other case). The district court also ignored the

lawyers' pre-complaint preparation work to become familiar with their clients'

accounts, and new ways that attorneys use technology to sort and evaluate whether

a case should be filed.

A.    **The Role of Technology in the "Meaningful Attorney Involvement"**

There is no doubt that technology plays a key role in every facet of the 21st century.  As stated by Dr. Michael Rappa, Executive Director of the Institute for Advanced Analytics and a faculty member in the Department of Computer Science at North Carolina State University, quoted in a Campbell Law Review article entitled *The Evolving Role of the Corporate Counsel: How Information Technology Is Reinventing Legal Practice* (2013) 36 Campbell L. Rev. 383, 389, "Many things today we measure in ways that lead to massive amounts of data…In order to understand how analytics is playing a role, perhaps in fields like law and other fields as well, you really have to understand something about how data is changing the reality that we exist in today."

To put this statement into context, and due to the lack of case law on the interplay of technological advancement used by attorneys in the area of consumer law and debt collection, it is helpful to understand the role of technology in the context of the insurance industry.  For example, it is a widespread practice in the insurance industry for insurers to rely on external support services for the type of insurance coverage they wish to sell.   Specifically, the Insurance Services Office, Inc., also known as ISO, is an industry organization that promulgates various standard insurance forms that are utilized by insurers throughout the country. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.* (Fla. 2007) 979 So.2d 871, 880.   In *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 772, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993), Supreme Court Justice Souter explained the importance of ISO in the insurance industry as follows:

> Insurance Services Office, Inc. (ISO), an association of approximately 1,400 domestic property and casualty insurers (including Hartford Fire Insurance Company, Allstate Insurance Company, CIGNA Corporation, and Aetna

Casualty and Surety Company), is the almost exclusive source of support services in this country for Commercial General Liability (CGL) insurance. ISO develops standard policy forms and files or lodges them with each State's insurance regulators; most CGL insurance written in the United States is written on these forms…For each of its standard policy forms, **ISO also supplies actuarial and rating information: it collects, aggregates, interprets, and distributes data on the premiums charged, claims filed and paid, and defense costs expended with respect to each form, and on the basis of this data it predicts future loss trends and calculates advisory premium rates.** Most ISO members cannot afford to continue to use a form if ISO withdraws these support services. (Emphasis added) (Internal citations omitted).

Experienced insurance lawyers work for months or years to become familiar with their clients' standard ISO coverage. Based on such knowledge and experience, such lawyers can frequently make rapid decisions about whether insurance policies provide coverage for particular claims. But whether that lawyer was meaningfully involved in such coverage decisions should consider the lawyer's experience with procedures, background, training, and technology, not just focus on the limited time during which the specific coverage decision was made.

Some of the Amici Curiae members use technology to review collection accounts and to make decisions about filing collection Complaints. Those lawyers have "meaningful involvement" when they personally write, review, and revise the criteria that are technologically applied to accounts. Those criteria can include the type of standard form, the date of the agreement or obligation, the date that triggers the applicable statute of limitations (in some states, the date of the most recent payment), identity of the creditor, identity of the debtor, and venue-selection criteria. Technological review of those factors better protect consumers because computers do not make errors that result from human fatigue or distraction.

If this court holds that the FDCPA requires Amici Curiae's members to have meaningful involvement with each collection Complaint, the court should instruct district courts to also consider as part of such involvement, the lawyer's analysis process, and the lawyer's work and experience in writing, reviewing, and revising criteria that are technologically applied to accounts before filing lawsuits. It must be remembered that the practice of law, much like the practice of medicine, is a profession, developed over years and years of experience and exposure to various matters. Just as physicians may use technological advancements to better and more quickly diagnose and treat conditions of their patients, so too do attorneys utilize technological advancements to better and more efficiently service their clients. Focusing only on the day a particular Complaint is filed unfairly ignores a lawyer's work and experience on similar claims based on the same template, and the expertise the lawyer has developed over time and frequent exposure to analyzing similar fact situations.

Certainly, attorneys engaged in debt collection litigation are now able to rely on software programs that help ensure accuracy in the review process leading up to filing a Complaint. For example, when filing a collection lawsuit in state court, the attorney must be mindful of state specific laws regarding choice of venue, statute of limitations, and forum selection clauses specific to the underlying contracts forming the debt. Utilizing software programs based on carefully preselected criteria ensures greater accuracy, efficiency, and reduces the likelihood of human error. The Trial Court seems to have ignored this point and solely focused on the day the lawsuit was filed to conclude that the Pressler attorney was not meaningfully involved in the review process leading up to the filing of the Complaint. However, the Trial Court overlooked the fact that this review was only the <u>final</u> part of a review process that had taken place continuously since the

collection claim was accepted and discounts the role of the computer software utilized by the Pressler law firm to aid in the review process.

## IV.    **CONCLUSION**

For the foregoing reasons, the Trial Court judgment should be reversed and judgment should be entered in favor of appellant.

Dated: June 12, 2015                    Respectfully submitted,


                                        CARLSON & MESSER LLP


                              By:    s/ Jeanne L. Zimmer
                                     Jeanne L. Zimmer (CA State Bar No.: 123321)
                                     Tamar Gabriel (CA State Bar No.: 266860)
                                     Carlson & Messer LLP
                                     5959 W Century Blvd., #1214
                                     Los Angeles, CA  90045
                                     *Attorneys for Amici Curiae*

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to Third Circuit Local Appellate Rule 46.1(e) that the attorney whose name appears on the foregoing brief, Jeanne L. Zimmer, is a member of the bar of this Court.

Dated: June 12, 2015                                    s/ Jeanne L. Zimmer

                                                        Jeanne L. Zimmer


## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a) AND L.A.R. 31.1

This brief complies with the word limit requirements of F.R.A.P. 32(a) because:

a.      The brief contains no more than 7,000 words, and is prepared in Times New Roman, 14 Point Font.

This brief complies with the electronic filing requirements of L.A.R. 31.1(c) because:

a.      The text of this electronic brief is identical to the text of the paper copies;

b.      Microsoft Security Essentials Anti-Virus and Malwarebytes Anti-Malware version 4.8 have been run on the file containing the electronic version of this brief and no viruses have been detected.


Dated: June 12, 2015                                    s/ Jeanne L. Zimmer

                                                        Jeanne L. Zimmer

{00033405;1}

## STATEMENT PURSUANT TO F.R.A.P. 29(C)(5)

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), the undersigned counsel for Amici Curiae, provides as follows:

(A)    A party's counsel did not author the brief in whole or in part;

(B)    A party or party's counsel did not contribute money that was intended to fund preparing or submitting the brief; and

(C)    A person-other than the amici curiae, its members, or its counsel, did not contribute money that was intended to fund preparing or submitting the brief.


Dated: June 12, 2015                                    s/ Jeanne L. Zimmer

                                                        Jeanne L. Zimmer

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Brief of Amici Curiae was served upon all counsel via the Court's CM/ECF system and via federal express on this 12th day of June, 2015:

> Philip D. Stern, Esq.
> Philip D. Stern, Attorney at Law, LLC
> 2816 Morris Avenue, Suite 30
> Union, NJ 07083-4870
>
> Cary L. Flitter, Esq.
> Flitter Lorenz, P.C.
> 450 N. Narbeth Avenue, Suite 101
> Narbeth, PA 19072
>
> Manuel H. Newburger, Esq.
> Barron & Newburger, P.C.
> 1212 Guadalupe, Suite 104
> Austin, TX 78701-1837
>
> Mitchell L. Williamson, Esq.
> Pressler & Pressler, LLP
> 7 Entin Road
> Parsippany, NJ 07054

I further certify that seven copies of the foregoing Brief of Amici Curiae was filed with the Court's CM/ECF system and served via Federal Express to the Clerk of the United States Court of Appeals for the Third Circuit on this 12th day of June, 2015, at the following address:

> Office of the Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, PA 19106-1790

Dated: <u>June 12, 2015</u>          CARLSON & MESSER LLP


By:    <u>s/ Jeanne L. Zimmer</u>
       Jeanne L. Zimmer (CA State Bar No.: 123321)
       Tamar Gabriel (CA State Bar No.: 266860)
       Carlson & Messer LLP
       5959 W Century Blvd., #1214
       Los Angeles, CA  90045
       *Attorneys for Amici Curiae*