## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### NO. 15-1056

---

### DANIEL BOCK, JR.,
**Plaintiff-Appellee,**

v.

### PRESSLER & PRESSLER, LLP,
**Defendant-Appellant.**

---

### On Appeal from the United States District Court
### for the District of New Jersey
### in Civil Action No. 11-CV-7593

---

### BRIEF OF APPELLEE

---

Cary L. Flitter
Andrew M. Milz
FLITTER LORENZ, P.C.
525 Route 73 South, Suite 200
Marlton, NJ 08053-9644
(856) 396-0600

Philip D. Stern
STERN THOMASSON LLP
2816 Morris Avenue, Suite 30
Union, NJ 07083-4870
(973) 379-7500

**Attorneys for Appellee**

# **TABLE OF CONTENTS**

Page

I.    COUNTER-STATEMENT OF ISSUE(S) PRESENTED .............................1

II.   COUNTER-STATEMENT OF THE CASE ...................................................2

III.  SUMMARY OF ARGUMENT ......................................................................8

IV.   LEGAL ARGUMENT...................................................................................10

    A.    Background and Purpose of the FDCPA ...........................................10

1.    The FDCPA is Remedial Legislation That Congress Enacted
to Redress Systemic Problems ..........................................................10

2.    The District Court Correctly Found That Collection Law Firms That
File Mass Complaints With Little or No Attorney Involvement Violate the
FDCPA's Ban on Deception ..............................................................13

3.    Pressler Had No Meaningful Attorney Involvement Whatsoever in the
Filing of the Collection Lawsuit Against Bock ................................16

    B.    Pressler's Seven Points of Error are Readily Dispatched ..................20

1.    The FDCPA Applies to Debt Collection Attorneys Involved in
Litigation ...........................................................................................20

2.    The FDCPA Applies Concurrently with State Law to Ban "False,
Deceptive or Misleading" Representations by Debt Collector Lawyers .......23

3.    Pressler's Collection Complaint is Unquestionably a Communication
Directed to a Consumer......................................................................27

4.    The Logic of the Meaningful Involvement Cases Applies With Equal
or Greater Force to the Context of Filing a Collection Complaint ...................28

5.    Pressler Confuses its Duties and Obligations to its Clients, with its
Statutory Duty Not to Make Deceptive or Misleading Representations .........33

6.      Pressler has Waived Any Argument on *Noerr-Pennington*; But, the Argument is Without Merit in any Event .........................................................36

7.      Bock Does Not Base His FDCPA Claim Upon a Violation of State Rules, Yet State Rules Provide Context for What is Meaningful Involvement ...................................................................................37

V.      CONCLUSION...............................................................................................40

CERTIFICATIONS OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CERTIFICATE OF BRIEF TEXT

CERTIFICATION OF VIRUS CHECK

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen ex rel Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) ......... 18, 27

*Amond v. Brincefield, Hartnett & Associates, P.C.*, 175 F.3d 1013 (Table), 1999 WL 152555 (4th Cir. 1999) ............................................................................. 40

*Apodaca v. Discover Fin. Serv., Inc.*, 417 F.Supp.2d 1220 (D.N.M. 2006) ............ 26

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) .......................................... 12, 28, 29, 34

*Basile v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 632 F.Supp.2d 842 (N.D.Ill. 2009) .................................................................................................................. 37

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007) .................................................................................................................. 37

*Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001) .......................................................... 34

*Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006) ........................................... 11

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294 (3d Cir. 2008) ...................................................................................................... 11, 17, 29

*Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006) .................................................................................................................. 40

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ........................................... passim

*Cohen v. Wolpoff & Abramson, LLP*, 2008 WL 4513569 (D.N.J. Oct. 2, 2008) ................................................................................................................. 25, 26

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Associates, P.C.*, No. 1:14-CV-2211-AT, 2015 WL 4282252 (N.D. Ga. July 14, 2015) ....................... passim

*Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1989) ....................................... 24, 29

*Douglass v. Convergent Outsourcing,* 765 F.3d 299 (3d Cir. 2014)......................10

*Eddis v. Midland Funding, LLC*, 2012 WL 664812 (D.N.J. Feb. 28, 2012)...........26

*Evankavitch v. Green Tree Servicing, LLC,* No. 14-1114, --- F.3d ----, 2015 WL
    4174441 (3d Cir. July 13, 2015)........................................................................10

*Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89
(2d Cir. 2012) ................................................................................................25

*Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994)....................................18

*Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000)........................21

*Gonzales v. Arrow Fin. Serv., LLC*, 660 F.3d 1055 (9th Cir. 2011) ........................3

*Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991)................................................14

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014)......................................................36

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006) ........................37

*Heintz v. Jenkins*, 514 U.S. 291 (1995) ..................................................... 20, 23, 25

*Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012) ..............38

*James v. Wadas*, 724 F.3d 1312 (10th Cir. 2013)...................................................21

*Jenkins v. Heintz*, 124 F.3d 824 (7th Cir. 1997) .............................................. 39, 40

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S.
573 (2010) ..................................................................................... 20, 24, 33, 39

*Kaymark v. Bank of America*, 783 F.3d 168 (3d Cir. 2015)........................... passim

*Lesher v. Law Offices of Mitchell N. Kay,* 650 F.3d 993 (3d Cir. 2011)......... passim

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939
(9th Cir. 2011)................................................................................................21

*Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ohio 2009) ..............32

*Miljkovic v. Shafritz & Dinkin, P.A.*, No. 14-13715, --- F.3d ----, 2015 WL 3956570 (11th Cir. June 30, 2015)......................................................21

*Miller v. Upton, Cohen & Slamowitz,* 687 F.Supp.2d 86 (E.D.N.Y. 2009) ............................................................. 13, 14, 17, 35

*Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) ............................ 12, 18, 28, 40

*O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938 (7th Cir.2011)...........27

*Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3d Cir. 2005) ..........................21

*Rosenau v. Unifund*, 539 F.3d 218 (3d Cir. 2008)...................................................11

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007)...............................21

*Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013) ............. 24, 27, 37, 40

*Slanina v. United Recovery Sys., LP*, 2011 WL 5008367 (M.D. Pa. Oct. 20, 2011)...........................................................................40

*Smith v. Transworld Sys, Inc.*, 953 F.2d 1025 (6th Cir. 1992) ................................40

*Stratton v. Portfolio Recovery Assocs.*, LLC, 770 F.3d 443 (6th Cir. 2014)...........21

*Sykes v. Mel Harris & Assocs., LLC*, 757 F.Supp.2d 413 (S.D.N.Y. 2010)..... 25, 33

*Sykes v. Mel Harris & Assocs., LLC*, 780 F.3d 70 (2d Cir. 2015).............. 21, 32, 33

*Tourgeman v. Collins Fin. Servs., Inc.,* 755 F.3d 1109 (9th Cir. 2014)........... 30, 31

*Wise v. Zwicker & Assoc., P.C.*, 780 F.3d 710 (6th Cir. 2015) ................................36

*Yentin v. Michaels, Louis & Associates, Inc.*, 2011 WL 4104675 (E.D. Pa. Sept. 15, 2011) ........................................................................40

## Statutes

15 U.S.C. § 1692....................................................................................................2

15 U.S.C. § 1692(a) .............................................................................................10

15 U.S.C. § 1692(b) ..................................................................................23

15 U.S.C. § 1692(e) ........................................................................ 10, 23, 26

15 U.S.C. § 1692e ................................................................................ passim

15 U.S.C. § 1692e(3) ........................................................................... passim

15 U.S.C. § 1692e(10) ................................................................... 11, 12

15 U.S.C. § 1692g .....................................................................................40

15 U.S.C. § 1692k(a) ..................................................................................2

15 U.S.C. § 1692k(c) ................................................................................39

15 U.S.C. § 1692l(a) ................................................................................14

15 U.S.C. § 16921(b) ................................................................................14

15 U.S.C. § 1692(n) ..................................................................................23

## Other Authorities

131 Cong. Rec. H10534-02, 1985 WL 721191 .......................................22

Federal Trade Commission, *The Structure and Practices of the Debt Buying
    Industry* (January 2013), available at
    http://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-
    debt-buyingindustry/debtbuyingreport.pdf..............................................3

H.R. REP. 99-405, 3-4, 1986 U.S.C.C.A.N. 1752, 1754........................23

N.J. Supreme Court, Notice to the Bar dated June 28, 2000,
    http://www.judiciary.state.nj.us/notices/n000707a.htm. ........................5

*Committee on Unauthorized Practice of Law Joint Opinion* 48......................39

## Rules

Fed. R. Civ. P. 11 ....................................................................... 18, 27, 37

N.J. Ct. R. 1:21-5 ...................................................................................4

N.J. Ct. R. 1:4-8 ...................................................................................37

N.J. Ct. R. 1:4-8(a)(3) ..........................................................................39

Third Cir. Loc. R. 28.1(a)(1)........................................................... 26, 36

# I.   COUNTER-STATEMENT OF ISSUE(S) PRESENTED

Appellant sets forth seven separate points of error. (Blue br. at p. 8-11). Appellee posits the Counter-Statement of the issue as follows:

The Fair Debt Collection Practices Act ("FDCPA") generally prohibits false, deceptive, or misleading representations by debt collectors, 15 U.S.C. § 1692e, and specifically requires attorney debt collectors to be meaningfully involved in their collection communications.   15 U.S.C. § 1692e(3).   Was it error for the district court to conclude, based on undisputed facts, that no attorney was meaningfully involved in preparing and filing the underlying state court collection complaint when no attorney reviewed the contract sued upon, the assignment alleged, or any aspect of the consumer's account file before filing because Pressler's automated process eliminated any effective or meaningful attorney involvement and resulted instead in a lawyer's perfunctory, four second (:04) pre-filing review?

Suggested answer: There is no error.   The judgment of the district court should be affirmed.

## II.    <u>COUNTER-STATEMENT OF THE CASE</u>

Daniel Bock, Jr. commenced this action against a debt collector, Pressler & Pressler, LLP.  (Complaint, Appx. 40).  The district court concluded that Pressler violated the FDCPA, 15 U.S.C. § 1692 *et seq*. In a meticulous 25 page opinion, the district court granted summary judgment to Bock on liability while denying summary judgment to Pressler.  Final judgment was then entered after the parties stipulated to the maximum statutory damages of $1,000.00. (Appx. 4).  15 U.S.C. § 1692k(a).  Pressler has appealed.

Bock accepts the facts as recited in detail by the district court.  These material facts were undisputed below and are not challenged by Pressler in its brief on appeal.  Bock notes several additional record facts to supply added context:

Pressler is a New Jersey law firm employing 19 lawyers and over 300 support staff.  (Pressler Website, Appx. 160).  Pressler sought to collect on a defaulted HSBC Bank Nevada, N.A. credit card account which Pressler claimed to have been sold to a debt buyer, Midland Funding, LLC, Pressler's client. (Collection Complaint, Appx. 80).[1]

---

[1]     "Debt buyers" purchase defaulted credit card debt and then try to collect it in-house or place with other collection agencies.  Debt buyers may also repackage purchased debt portfolios and sell them to other buyers. Federal Trade Commission, *The Structure and Practices of the Debt Buying Industry* (January 2013),                          available                          at http://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-

According to Pressler, its collection process began by downloading electronic information which Midland had stored on a website, YouveGotClaims.com. (Affidavit of Gerald J. Felt, Esq. ("Felt"), Appx. 126). The information provided by Midland was only "the basics." (Transcript 25:17). That information included the consumer's name, address, Social Security number and information about the debt such as the balance, interest rates and finance charges, and dates when the account was opened, last paid and charged off. (Felt at ¶ 13, Appx. 127).

Pressler then used software and non-attorneys to run various "scrubs" to determine if an initial demand letter should go out. If no flags (deceased, bankrupt, etc.) appear, an initial letter is generated automatically. (Felt at ¶¶ 14-19, Appx. 127-131).

Around September 15, 2011, Pressler mailed a collection letter to Bock. (Letter, Appx. 77). The letter had no closing and was not signed but was on Pressler's letterhead. The letterhead described the firm as "counsellors at law"

---

debt-buyingindustry/debtbuyingreport.pdf.    According to the FTC, "[f]or most portfolios, buyers did not receive any documents at the time of purchase. Only a small percentage of portfolios included documents, such as account statements or the terms and conditions of credit."    Midland Funding, LLC (a subsidiary of Encore Capital Group, Inc.) is one of the nation's largest debt buyers. *Id.* Also *see Gonzales v. Arrow Fin. Serv., LLC*, 660 F.3d 1055, 1059 and n.1 (9th Cir. 2011) (citing government studies on debt buyers).

(although such title for a lawyer has been "abolished" in New Jersey. N.J. Ct. R. 1:21-5).

Consistent with Pressler's collection process, when the letter mailed to Bock was not returned within 35 days, an "Approve for Suit Department" was tasked with checking and verifying routine information on the claim (debtor's name, address, date of birth, whether statute of limitations is live). (Felt at ¶¶ 20-23, Appx. 132-134).  According to Pressler, the "dedicated employees" of this department, and not any lawyers, "determine whether [a claim] should proceed through litigation." (Felt at ¶ 21, Appx. 132).

A new claim is then assigned to a "Summons and Complaint Team" containing no attorneys which drafts the summons and complaint by merging electronic data provided by Midland into a template. (Id. at ¶ 25).  That department then generated a daily "feed list" of collection complaints for a "signing attorney" to approve. (Felt at ¶¶ 26, 27, Appx. 135; Deposition of Ralph Gulko ("Gulko Dep.") at p. 93, Appx. 221).

On October 20, 2011, a collection complaint against Bock from Pressler's electronic file appeared on adjacent computer monitors in front of "signing attorney" Ralph X. Gulko. (Amended Affidavit of Tara Russo ("Russo II") at ¶ 4, Appx. 192).  Within seconds, Gulko approved the complaint for filing. (Russo II at

¶ 9, Appx. 193).  Non-attorneys then added Gulko's typewritten signature,[2] filed the complaint and arranged for service of process. (Gulko Dep. at pp. 53-55, Appx. 211).  The collection complaint thus *appeared* to be the product of the attorney who signed it.  In fact, it was not.  Tara Russo, the compliance department manager for Pressler, attested on "personal knowledge and a review of Pressler's books and records" that the file was open on Gulko's screens for exactly four seconds (:04). (Russo I at ¶¶ 1, 9, Appx. 192-93; Slip op. at 6, Appx. 11).

The complaints popping up on Gulko's screen were processed through an "automatic feed process," which means that after the first new claim on the list is either accepted or rejected for filing, the next new claim on the list will automatically be processed onto the computer screen for Mr. Gulko's review. (Felt at ¶ 27, Appx. 135).  Gulko estimated that his "automatic feed" list averaged about 300-400 complaints per day. (Gulko Dep. at p. 93, Appx. 221)  On any given day, a list could have as few as "a hundred or less" complaints, but other days exceeded one thousand complaints to "review." (*Id.*).  Gulko's estimate was consistent with

---

[2]    The collection complaint was filed through JEFIS, the New Jersey court's electronic filing system. Like ECF, signatures of JEFIS filers are typewritten. N.J. Supreme Court, Notice to the Bar dated June 28, 2000, http://www.judiciary.state.nj.us/notices/n000707a.htm.

Pressler's representation that it files about 100,000 collection lawsuits annually. (Transcript 49:15).[3]

Gulko's function was to see that the right screen data matched the left screen data or detect that data had changed. (Gulko Dep. at p. 71, Appx. 215; Gulko I at ¶ 5, Appx. 195). Gulko would approve complaints when the data on both screens appeared to be the same. (Gulko Dep. at pp. 97 to 101, Appx. 222-223). Unless altered after Pressler acquired it, the data on Gulko's two screens should have always been the same because it came from a single source: Midland Funding, Pressler's debt-buyer client. (Gulko Dep. at p. 34, Appx. 206).

Gulko must have confirmed that the data for the claim against Bock was the same on both screens because Gulko approved it by hitting the G, D, and Enter keys. (Gulko Dep. at p. 17, Appx. 202; Slip op. at 5, Appx. 10,). As noted, Gulko "accessed the plaintiff's [Bock's] aforementioned electronic file for 4 seconds" (Russo II at ¶ 9, Appx. 192-93; Slip op. at 6, Appx. 11,). Gulko spent at least a portion of the rest of the day "approving" another 662 lawsuits. (Russo II at ¶ 7, Appx. 193).

Pressler acknowledged that Gulko never reviewed the written terms of the governing credit card agreement upon which Pressler was suing. As a result, Gulko did not know whether a choice-of-law or an arbitration clause applied,

---

[3]    Appellant did not include the transcript of argument in the filed Appendix. The transcript is part of the record on appeal, however.

although Gulko admitted those facts are relevant. (Gulko Dep. at pp. 68 to 69 and 85-8, Appx. 215 and 219).  Gulko never reviewed any agreements assigning the underlying debt to Pressler's client because such assignments were never made available to him. (Gulko Dep. at p. 85, Appx. 219).

At summary judgment, Pressler did not point to any activities by attorneys that specifically evaluated the claim against Mr. Bock.  Instead, Pressler directed the district court to consider Pressler's "in-house proprietary collection software," its "secret sauce" [*sic.*] methodology for collecting debts. (Felt at ¶ 7, Appx. 125; *see also* Slip op. at 7, Appx. 12). Neither the software nor the secret sauce included a lawyer's professional evaluation or judgment regarding the claim against Bock or anyone else.  *Id.*

After Gulko "approved" the complaint, non-attorney employees added Gulko's typed signature, filed the complaint and had it served. (Gulko Dep. at pp. 53-55, Appx. 211).  Once served, Bock filed a *pro se* Answer disputing the amount and Midland Funding's ownership. (Answer, Appx. 82).

By February 24, 2012—the trial date in the state court collection action—Bock had retained counsel. Bock's counsel and a Pressler associate attorney negotiated a settlement in which Midland agreed to accept $3,000 or 36% of its claim. (Settlement, Appx. 98).  There is nothing further in the record about each side's relative "success" in the state court collection proceeding.

## III.    SUMMARY OF ARGUMENT

The FDCPA prohibits the false representation or implication that any individual is an attorney or that any communication is from an attorney.  15 U.S.C. § 1692e(3).  This Court and sister Courts of Appeals have uniformly held that in order for a communication to be said to be "from an attorney" the lawyer must be directly and personally involved in the preparation and sending of the communication.  Such communications include a complaint.  Whatever may be said of the advances in technology or the use of non-lawyer assistants, the desire to contain costs does not justify abandonment of minimum legal requirements through the wholesale exclusion of a licensed attorney from the process leading up to filing of a lawsuit.  When that happens – as it did here – the resultant collection complaint cannot be said to be "from an attorney" in any meaningful sense of the word.  The district court was completely correct to so find.

Contrary to Pressler's assertion, Bock has not sought to make an FDCPA violation out of Pressler's non-compliance with state rules of procedure or ethical rules.  Rather, the ethics breaches provide context and confirm and illustrate the FDCPA violation.

Decisions of the Supreme Court and this Court make clear that Congress is free to regulate the actions of debt collection law firms, before and during the litigation process.  Moreover, a state court lawsuit is, under Third Circuit

precedent, a "communication" with the consumer as well as with the Court. Pressler's other arguments have either not been preserved, or simply seek to recast and misstate Bock's claims.

The district court meticulously reviewed the undisputed facts before it and correctly concluded that an automated process which has as its goal the virtual elimination of professional review and judgment by an attorney does not pass muster under FDCPA §§ 1692e and 1692e(3). The collection complaint filed against Daniel Bock simply was not "from an attorney" in any meaningful sense of the term. The decision appealed from properly applied the law and should be affirmed.

## IV.  LEGAL ARGUMENT

### A.  Background and Purpose of the FDCPA

#### 1.  The FDCPA is Remedial Legislation That Congress Enacted to Redress Systemic Problems

Congress enacted the FDCPA in 1977 after specifically finding "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a); *Lesher v. Law Offices of Mitchell N. Kay,* 650 F.3d 993, 996 (3d Cir. 2011).  Concerned that such practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," *id.*, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); *Evankavitch v. Green Tree Servicing, LLC,* No. 14-1114, --- F.3d ----, 2015 WL 4174441, at *2 (3d Cir. July 13, 2015).  As remedial legislation, the Act is construed broadly to effectuate those purposes. *Id.*; *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 302 (3d Cir. 2014).

The FDCPA broadly prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection

10

of any debt." 15 U.S.C. § 1692e; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006). Without limiting the general application of § 1692e, the Act specifically prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney," 15 U.S.C. § 1692e(3), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10); *Brown*, 464 F.3d at 455. This Court has consistently held that courts must assess collection communications and the implication of attorney involvement from the perspective of the "least sophisticated consumer." *Id.* at 453-54; *Rosenau v. Unifund*, 539 F.3d 218, 221 (3d Cir. 2008); *Lesher*, 650 F.3d at 997.

This Court also has recognized that "[u]nder the [FDCPA], attorney debt collectors warrant closer scrutiny because their abusive collection practices are more egregious than those of lay collectors." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 301 (3d Cir. 2008) (internal quotations omitted). Closer scrutiny is particularly appropriate as lawyers are naturally in a position to use their status as attorneys to pressure or coerce debtors. *Id.*

In *Lesher,* this Court addressed whether collection letters sent *en masse* over the letterhead of the "Law Office of Mitchell N. Kay" violated the Act's ban on deceptive communications where there was no meaningful involvement by a lawyer, and the Kay firm acted only as a debt collector. The Court explained that

Kay's letters which "falsely impl[y] that an attorney, acting as an attorney, is involved in collecting [the] debt," violate FDCPA Section 1692e's prohibition against deceptive, or misleading communications, because "the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action." *Lesher*, 650 F.3d at 1003. The presence of a "completely contradict[ory]" statement on the reverse of the Kay letter that "At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account" did not cure, but arguably compounded the deception. *Id.* *Lesher's* reasoning led the Court below to observe that an attorney letter disclaiming attorney involvement "has a certain surreal quality." (Slip op. at 11, n. 10, Appx. 16).

*Lesher* is built upon this Court's *Brown* and *Rosenau* decisions on deception, and is buttressed by authority from other circuits interpreting FDCPA Sections 1692e, e(3), and e(10), in particular: *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996)*;* and *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002). These "meaningful involvement" cases are each discussed at length in the trial court's comprehensive opinion, and need no further elaboration here. (See Slip op. at 11-12, Appx. 16-18). The district court correctly distilled these cases for the proposition that "When a law firm sends a collection

letter in its name, it represents that an attorney is meaningfully involved in a professional capacity, and such a representation is false or misleading if in fact there has been no attorney involvement, or only superficial, ministerial attorney involvement." (Slip op. at 13, Appx. 18). The district court went on to make the logical, if incremental, extension that "the rationales of the appellate cases discussing collection letters apply equally to a civil complaint". (Slip. op at 14, Appx. at 19). The district court's June 2014 ruling on this point was prescient as this Court's 2015 decision in *Kaymark v. Bank of America*, 783 F.3d 168 (3d Cir. 2015) extended the FDCPA's protections to state court complaints.

### 2. The District Court Correctly Found That Collection Law Firms That File Mass Complaints With Little or No Attorney Involvement Violate the FDCPA's Ban on Deception

The district court then correctly applied the requirement for meaningful attorney involvement to the preparation and filing of a collection lawsuit. In addition to examining this Court's precedent and decisions from the Second and Seventh Circuits, Judge McNulty looked to a closely analogous case, *Miller v. Upton, Cohen & Slamowitz,* 687 F.Supp.2d 86 (E.D.N.Y. 2009). In *Miller*, the district court found a violation of the FDCPA premised on the defendant law firm's minimal pre-filing review of a civil complaint. In *Miller*, two lawyers signed 211 collection letters on the day a letter was sent to the consumer and over 3,000 that same month. *Id.* at 94. "The volume of business at UCS, coupled with practices

followed in the *Miller* matter, supports the conclusion that debt collection letters and litigation documents were regularly mass-produced at UCS by non-lawyers at the push of a button." *Id.* at 100. The court concluded "as both a factual and legal matter, that the superficial level of review undertaken by [attorney] Slamowitz and UCS was insufficient under the FDCPA." *Id.* at 96. The district court properly cited to *Miller*, which in turn relied – as this Court has – on the principles of meaningful involvement set forth in *Clomon*.

The Consumer Financial Protection Bureau ("CFPB"), the federal agency with enforcement authority over the FDPCA, 15 U.S.C. § 1692l(a)-(b), recently brought a civil lawsuit under the FDCPA against a large Georgia collection "litigation-mill" not unlike Pressler. *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Associates, P.C.*, No. 1:14-CV-2211-AT, 2015 WL 4282252, at *1 (N.D. Ga. July 14, 2015). The FDCPA allows for administrative enforcement by the Federal Trade Commission and the CFPB, as well as individual suits by consumers like Mr. Bock "acting as private attorneys general." *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). The CFPB alleged that the Hanna collection firm filed upwards of 350,000 collection suits against consumers from 2009 through 2013. *Id.* at *2. The Hanna firm "employed hundreds of non-attorney staff but only between 8 and 16 attorneys." Non-attorneys were delegated to determine

whether a case was "suit worthy" and then draft complaints. *Id.*[4] CFPB further alleged that the firm's attorneys routinely relied on "an automated system and support-staff research" to determine whether to sue, and that the few attorneys on staff were left to essentially skim and sign the prepared pleadings. The lawyers, according to the CFPB, gave "only cursory review to" the suits the Firm was filing, "checking the pleadings prepared by non-attorney support staff for grammar and spelling errors." *Id.* The CFPB alleged that actual attorney review was less than one minute per complaint. *Id.* In a compelling opinion denying Hanna's motion to dismiss, the district court in *Hanna* held that these allegations amply state a claim under 15 U.S.C. §§1692e and 1692e(3) for misrepresenting attorney involvement. *Id.* at \*20. The *Hanna* Court also rejected the other defenses that Pressler raises here.

Synthesizing the meaningful involvement cases with state and federal pleading rules, the court below articulated the sensible rule of law "that a signed complaint is inherently false and misleading, in violation of 15 U.S.C. 1692e, where, at the time of signing, the attorney signing it has not (1) drafted, or carefully reviewed the complaint; and (2) conducted an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law." (Slip op.

---

[4]     Pressler stated it files about 100,000 lawsuits per year – an even greater automated annual volume than the Hanna firm. (Transcript 49:15).

at 22, Appx. 27). This conclusion is an entirely correct statement of the law, derived from a careful analysis of the leading precedents, and premised on a complete and undisputed factual record.

### 3. Pressler Had No Meaningful Attorney Involvement Whatsoever in the Filing of the Collection Lawsuit Against Bock

Pressler's automated system of file review and complaint preparation, relying exclusively upon computer software and lay support staff is inadequate to comply with the meaningful involvement requirement of §§ 1692e and e(3).  *See Hanna*, 2015 WL 4282252 *2; *cf.*, *Lesher*, 650 F.3d at 1002.   This vast volume of case filings by Pressler (even greater than the volume in *Hanna*) itself corroborates the record evidence that no meaningful attorney review could occur.  Once Pressler admitted that Attorney Gulko's professional review of the case against Bock was but four seconds (:04), Pressler was – and here is – left to argue that the lay staff review and some technology is just as good as an attorney's judgment. (Blue br. at 6).

This is the point more or less advanced by Pressler's *amicus curiae* – a trade organization of collection law firms and various creditor bar associations.  These organizations seek to reduce to virtually zero the level of their own attorney involvement, presumably to enhance the profitability of consumer collection suits.  If successful in arguing that no real attorney involvement is required, those

collection law firms can maintain a significant competitive advantage over lay collection agencies without the burden or expense associated with having "a real lawyer, acting like a lawyer usually acts, directly control [] or supervise [] the process through which" a collection lawsuit is created, and without the costly burden of having a real lawyer "directly and personally involved." *See Campuzano-Burgos*, 550 F.3d at 301 (discussing lawyer involvement in context of letters). In this regard, it is difficult to square the *result* that Pressler's *amici* seek with their stated "interest in [the] case": to see that the Act is interpreted "in a manner that allows collection attorneys to discharge their ethical duty to zealously and lawfully advance their clients' legitimate interests." *Statement of Identity and Interest in Case*, Amicus br. at vi.

"Where an attorney commences suit in so uninformed a manner that he is ignorant even as to what law governs his suit, it cannot be said that he has undertaken a level of review sufficient to satisfy even the most general requirements applicable to attorney conduct, let alone the more focused review requirements established by the FDCPA." *Miller*, 687 F.Supp.2d at 98. Although Pressler seeks to shift the focus to a point in time before "the final four seconds" (Blue br. at 6), Pressler points to no evidence in the record that any Pressler attorney reviewed the lawsuit against Mr. Bock at any earlier point in time. The district court was amply justified in finding that Gulko (and thereby Pressler) did

not undertake a sufficient review. Indeed, a contrary finding would have required the district court to abandon established law to condone the elimination of attorney review and the application of legal judgment by a trained lawyer in the preparation and filing of legal pleadings.

Pressler's backup argument – that the complaint data was ultimately correct – is neither established in the record, nor relevant to this appeal. (Blue br. at 10). The claim here is not one challenging false statements of fact such as misstatement of the amounts due. *Compare Allen ex rel Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) (letter from collection attorney demanding excess fees and charges). Rather, the claim is for effectively misrepresenting attorney involvement under §§ 1692e and 1692e(3). The district court was correct to recognize Pressler's accuracy of facts argument as "a red herring." (Slip op. at 21, Appx. 26). *See also Nielsen,* 307 F.3d at 635-37 (attorney who failed to exercise any independent, professional assessment constituted "no more than a veneer of compliance."). Even if, *arguendo*, the complaint's allegations were later established, that would not retroactively justify the absence of attorney investigation and involvement. "A shot in the dark is a sanctionable event, even if it somehow hits the mark." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994) (rejecting the argument that, to violate Rule 11, the pleading filed

without the prerequisite inquiry must be shown to have errors) (internal quotation marks omitted).

Moreover, the record does not bear out Pressler's assertion that the collection complaint was entirely "truthful" or error free. Bock challenged both the assignment and the amount sought and the parties settled for about 36% of the claim. (Settlement, Appx. 98). The record below does not confirm whether Pressler's complaint was "accurate" or not, and the district court made no finding on this point. But, as noted and as recognized by the district court, this suit asserts the misrepresentation of lawyer involvement, not false averments of fact or amounts due.

Pressler's assembly-line approach to preparing and filing lawsuits is more egregious than the collection-letter scenario because the misrepresentation is made in the context of invoking the judicial process, with the authority and consequences associated with a lawsuit. *See Hanna*, 2015 WL 4282252 *17-18. Pressler's conduct surely would have violated the FDCPA in the sending of a collection letter so "the fact that the debt collection activity at issue here involves a [] complaint, rather than a debt collection letter, does not remove it from the FDCPA's purview." *Kaymark*, 783 F.3d at 179.

## B.    Pressler's Seven Points of Error are Readily Dispatched

Pressler claims seven separate points of error. (Blue br. at 8-11).  Each of these arguments fails.

### 1.  The FDCPA Applies to Debt Collection Attorneys Involved in Litigation

The United States Supreme Court has twice confirmed that the FDCPA applies to the litigation conduct of collection attorneys.  In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court held that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."   *Id.* at 299.  This holding was reaffirmed in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

In Section I of its brief, Pressler tries weakly to distinguish *Heintz* and its progeny, arguing that *Heintz* should be narrowly tailored to its facts, that subsequent legislative amendments to the Act do not support application to litigation conduct, and that the numerous Courts of Appeals decisions in the wake of *Heintz* "erroneously assumed" that the FDCPA applies to litigation activities. (Blue br. at 13-14).  These strained arguments have gained no traction in other Courts of Appeals and were flatly rejected by this Court in the recent decision in *Kaymark,* a decision which, surprisingly, Pressler does not even cite in its brief.[5]

---

[5]     *Kaymark* was issued April 7, 2015, two months before briefing here began.

In *Kaymark*, this Court was faced with the question of whether the inclusion in a foreclosure complaint of fees for legal services not yet performed violates the FDCPA. This Court began its analysis by stating – completely contrary to Pressler's instant argument – "that the FDCPA covers attorneys engaged in debt collection litigation is well-established law in this Circuit." *Id.,* 783 F.3d at 176 (*citing Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005)).

This Court in *Kaymark* rejected the argument raised here by Pressler that the contents of civil complaints cannot be the basis of an FDCPA claim. (Blue br. 13-15; and Amicus br. at 2-6). The Court concluded that "a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint." 783 F.3d at 177. Pressler's arguments to the contrary are all dispatched by *Kaymark* and need no further discussion here. The same rule is also well-established in the other Courts of Appeals. *See e.g. Miljkovic v. Shafritz & Dinkin, P.A.*, No. 14-13715, --- F.3d ----, 2015 WL 3956570, at *6 (11th Cir. June 30, 2015) *Sykes v. Mel Harris & Assocs., LLC*, 780 F.3d 70 (2d Cir. 2015); *Stratton v. Portfolio Recovery Assocs.*, LLC, 770 F.3d 443, 451 (6th Cir. 2014); *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000).

The argument advanced by Pressler and its *amici* seems less grounded in the statute and the prevailing caselaw than it is a rather transparent effort to minimize lawyer involvement and thereby obtain an advantage over lay collection firms.  A law firm that acts solely as a debt collector, and performs no more review than would any lay debt collector, stands to reap a considerable competitive advantage. This reality is reflected in the legislative history, and in the comments of proponents and opponents alike of the 1986 amendment that repealed the attorney exemption originally in the FDCPA.  Congressman Annunzio, a co-sponsor of the amendment, noted the rise of the law firm collection mill which "employs over 700 lay persons, in addition to its 121 attorneys. Most of these lay employees have the job title of account representative and do nothing but collect debts full time."  131 Cong. Rec. H10534-02, 1985 WL 721191 (remarks of Rep. Annunzio).  Rep. Hiler, an opponent of the amendment, recognized that "[u]nfortunately, some lawyers have interpreted their limited exemption under the FDCPA as a blanket exemption for anyone who has passed a bar examination. A few have established what are, for all intents and purposes, traditional debt collection agencies with the intent of exploiting the competitive advantage conferred by their supposed exemption from the law." 131 Cong. Rec. H10534-02, 1985 WL 721191 (remarks of Rep. Hiler).  The very House Report 99-405, cited by Pressler at pp. 12-14 of its brief, recognized how the large collection "law firm" mill places the lay collector

at a disadvantage.  H.R. REP. 99-405, 3-4, 1986 U.S.C.C.A.N. 1752, 1754.  In any

event, the Act was amended to remove the attorney exemption.  Pressler's claim

that the FDCPA "does not apply to attorneys engaged in those activities that are

exclusively the practice of law and unavailable to lay debt collectors" (Blue br. at

16) is both unsupported by Pressler in its brief and contrary to *Heintz*, 514 U.S. at

298 and to *Kaymark*, 783 F.3d at 177-78.

### 2. The FDCPA Applies Concurrently with State Law to Ban "False, Deceptive or Misleading" Representations by Debt Collector Lawyers

The conduct of which Bock complains is not a "matter exclusively for the

states." (Blue br. at 18).  To the contrary, the FDCPA was enacted because

"[e]xisting laws and procedures for redressing [abusive, deceptive and unfair debt

collection practice] injuries are inadequate to protect consumers." 15 U.S.C. §

1692(b).  Thus, the FDCPA seeks "to promote consistent State action to protect

consumers against debt collection abuses." 15 U.S.C. § 1692(e).  State laws which

limit FDCPA rights are expressly preempted.  15 U.S.C. § 1692(n).  As noted, the

Congress and the Supreme Court have already considered and rejected the

argument that existing state law mechanisms for curbing lawyers' misbehavior are

adequate and that application of the FDCPA to litigation would create absurd

results. *See Heintz*, 514 U.S. at 298-99.  There is no absurd result here.  Moreover,

the Supreme Court has counseled that the provisions of the FDCPA "should not be

assumed to compel absurd results when applied to debt collecting attorneys." *Jerman*, 559 U.S. at 600.

In *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1989), this Court applied these principles to a letter which failed to disclose, as mandated by state law, certain foreclosure procedures. The collection lawyer's letter did not inform the debtor, as required under Pennsylvania law, "of her right to cure the default and that a sheriff's sale of her home was some time away and not at all inevitable." *Id.* at 571. Moreover, "the letter implied that nonpayment of the debt would result in the imminent sale of her home." *Id*. The use of that letter violated the FDCPA not because the letter broke state law, but because it was false and misleading under federal law. As here, the state law provided additional context and confirms that the debt collector's communication was false and misleading in violation of the FDCPA. But state law cannot somehow immunize the collection lawyer's misconduct from the reach of the FDCPA.

Once *lawyers* are acting as *debt collectors* as defined in the statute, the consumer protections of the FDCPA also apply to their conduct. This is demonstrated by *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013), by *Kaymark* and by the numerous cases cited in the preceding Section which discussed violations of the FDCPA predicated on a collection law firm's conduct during litigation. These cases belie Pressler's instant argument that "(a) the filing

of suit; (b) in a court of record; (c) by a law firm" should be the province of state courts only and thereby outside the protections of the FDCPA. (Blue br. at 19-22). How good Pressler perceives its client service to be is simply beside the point.

The unpublished decision *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89 (2d Cir. 2012) (Blue br. at 20) does not support Pressler's position. The Court in *Gabriele* affirmed dismissal not because litigating lawyers are excluded from the Act, but because the misstatements alleged were immaterial. *Id.* at 94-95. In fact, *Gabriele* recognized that a misleading statement of lawyer involvement is very different, adhered to *Clomon*, 988 F.2d at 1321–22 and agreed with *Sykes v. Mel Harris & Assocs., LLC*, 757 F.Supp.2d 413, 424 (S.D.N.Y. 2010). *Gabriele,* 503 F. App'x. at 95. Pressler's other cited authorities (Blue br. at 19-20) do not deal with lawyers acting as debt collectors, conduct which brings them under the FDCPA and *Heintz*.

Pressler's repeated efforts to frame this issue of statutory FDCPA compliance *vel non* as one of lawyer duty in tort or lawyer ethical duty is completely misplaced. (Blue br. at 20-22). Notions of state common law duties of care to a lawyer's client or compliance with state ethics rules are inapposite to the issue of whether a lawfirm/collector has complied with a federal statute regulating that law firm's dealings with consumers. *Cohen v. Wolpoff & Abramson, LLP*, 2008 WL 4513569 (D.N.J. Oct. 2, 2008) (Blue br. at 22) stands for the

unremarkable proposition that a violation of a state RPC alone is not a *per se* violation of the FDCPA. *Eddis v. Midland Funding, LLC*, 2012 WL 664812 (D.N.J. Feb. 28, 2012) is in accord on that point.[6] But neither *Cohen* nor *Eddis* stands for the inverse proposition that Pressler seeks to assert, *i.e.*, that lawyer conduct which violates the FDCPA is somehow non-actionable because it also violates a state attorney ethics rule or rule of procedure. Pressler's repeated assertion to this effect is but a classic "straw man" argument. *See Apodaca v. Discover Fin. Serv., Inc.*, 417 F.Supp.2d 1220, 1229 (D.N.M. 2006) (discussing the "fallacy of diversion."). Pressler has a duty to comply with both bodies of law, but seeks remedy only under the Act. The court below quite clearly appreciated the distinction between the state and federal schemes. (Slip op. at 18, Appx. 23).

Pressler claims that Bock may not prevail because Bock offered no expert evidence. (Blue br. at 25). Pressler did not press such an argument below, and has not pointed to preservation of such an issue, so it is foreclosed now. *Cf.,* Third Cir. Loc. R. 28.1(a)(1). Further, the state-law authorities cited do not address the FDCPA and do not hold that proof of a § 1692e claim somehow requires expert testimony. The question of deception, when premised on undisputed facts, in generally for the Court. *See Rosenau*, 539 F.3d at 222.

---

[6]    *Eddis* misreads *Lesher* to the extent *Eddis* asserts that a "no attorney involvement" disclaimer complies with § 1692e(3), so long as it is on the front of a collection dun. *Id.* at *7. For this additional reason, *Eddis* is unhelpful here.

Pressler is obviously confused. "The Supreme Court held that the FDCPA applied [to attorney's litigation activities] despite the availability during [state court collection] litigation of judicial oversight, due-process protections, detailed procedural rules, and remedies to curtail and punish improper actions by creditors' attorneys." *Simon*, 732 F.3d at 277. Thus, "[s]tate law sanctions (the equivalent of Fed. R. Civ. P. 11) apply to defendants in their capacity as lawyers, and do so jointly with the [Fair Debt Collection Practices Act]." *Id.*

### 3. Pressler's Collection Complaint is Unquestionably a Communication Directed to a Consumer

Pressler argues that a collection complaint is a communication with the courts, not the consumer, and is thus not subject to the FDCPA. (Blue br. at 26-27). This argument was also squarely addressed, and rejected, by this Court in *Kaymark*: "Because the Foreclosure Complaint was served on Kaymark (directly or indirectly through his attorney), he [the consumer] was the intended recipient of the communication." *Kaymark*, 783 F.3d at 178; *see also Allen ex rel. Martin,* 629 F.3d at 368 (letter to debtor's attorney, but not to consumer directly, covered under Act). This Court in *Kaymark* went on to distinguish Pressler's leading authority for this argument, *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 941 (7th Cir.2011). Pressler's argument on this point is simply foreclosed by *Kaymark*.

### 4. The Logic of the Meaningful Involvement Cases Applies With Equal or Greater Force to the Context of Filing a Collection Complaint

Pressler would limit the *Lesher, Clomon, Avila, Nielsen* line of cases to collection *letters*. It argues that these cases insist on meaningful attorney involvement because using lawyer letterhead when no attorney is involved creates the false impression that the case has reached a more serious stage and that litigation is imminent. That concern is not involved here, argues Pressler, as suit was "real and legitimate" and there was no "false sense of urgency." (Blue br. at 28-30). This argument is unsupported under circuit law and takes an unreasonably narrow reading of the relevant cases.

The threat of litigation that accompanies introduction of an attorney is one reason for insisting on meaningful involvement, but it is certainly not the only one. The main concern in the "meaningful involvement" cases is more generally that a communication signed by a lawyer, but without meaningful attorney involvement, falsely leads the consumer to believe that an individual trained in the law and specifically licensed by the state to represent parties in court has reviewed the debtor's account and exercised professional judgment when assessing the validity of the creditor's position. *See Lesher*, 650 F.3d at 1003 ("the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action");

*Campuzano-Burgos*, 550 F.3d at 301 ("Debtors react more quickly to an attorney's communication … ."); *Clomon*, 988 F.2d at 1320-21 ("In short, the collection letters would have led many consumers, and certainly the least sophisticated consumer, to believe that an attorney had personally considered the debtor's case before the letters were sent."); *Avila*, 84 F.3d at 229 ("A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent.").

But Pressler mischaracterizes the reasoning of these cases when it suggests that the sole driving force behind the meaningful involvement doctrine is the imminence of a lawsuit. In rejecting this precise argument, the Court in *Hanna* reasoned, "This is too narrow a view of the rationale behind the [doctrine]." *Hanna*, 2015 WL 4282252 *17. The "main concern in these cases is more generally that a communication signed by a lawyer but without meaningful attorney involvement falsely leads the consumer to believe that a lawyer has reviewed the debtor's account and assessed the validity of the creditor's position." *Id.*

"A debt collection letter on an attorney's letterhead conveys authority and credibility." *Crossley,* 868 F.2d at 570. Likewise, a collection lawsuit signed by an attorney conveys authority and credibility. But that is a sham if no attorney review of the facts or the matter is conducted before filing. The Rules of Court

help to define the level of attorney involvement that is impliedly represented by the filing and service of a complaint. (*See* Slip op. at 18, Appx. 23). The concerns animating the meaningful involvement cases are equally, if not more, compelling for consumers who are served with an actual debt collection lawsuit. In *Tourgeman v. Collins Fin. Servs., Inc.,* 755 F.3d 1109, 1123 (9th Cir. 2014), the Court of Appeals observed that:

> a consumer could be harmed by a complaint — as opposed to a dunning letter — in ways distinct yet equally problematic as those we have already discussed. For example, the consumer who engages legal counsel might be unable to accurately apprise the lawyer of the relevant circumstances, potentially leading to lost opportunities to settle the debt. And the stakes are undoubtedly higher when the consumer faces the possibility of a default judgment rather than the mere continuation of collection attempts.

If an attorney "wants to take advantage of the fear that serving a complaint would inspire in a debtor, the lawyer should at the very least ensure that he has become professionally involved in the decision to file the lawsuit." *Hanna* at *18. Judge McNulty was entirely justified in finding, based upon the undisputed evidence, that while non-lawyer staff, aided by collection software were involved in the decision to file a lawsuit, no attorney was meaningfully involved. (*See* Gulko Dep. at p. 71, Appx. 215 and Gulko I at ¶ 5, Appx. 195).

Contrary to Pressler's argument, Gulko did not "sign the pleading," (Blue br. at 30) rather his typed "s/" signature was added to the complaint either

automatically or by a non-attorney. (Collection Complaint, Appx. 80, Gulko Dep. at pp. 53-55, Appx. 211). This is no different than a facsimile signature. The automated process here that eliminated attorney involvement is essentially indistinguishable from that of the collection letter meaningful involvement cases. *See Clomon*, 988 F.2d at 1321 ("there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e."). Pressler has advanced no sound reason in law or logic to create a *lower* bar for attorney involvement in a lawsuit than in a dunning letter, recalling that a letter does not of itself haul the consumer into court. To the contrary, *Tourgeman, Hanna* and the authorities cited therein make the persuasive case for a higher bar for lawsuits.

Pressler's repeated argument that the collection complaint was allegedly "accurate" and that "Bock does not assert that the collection suit was groundless" misses the point. (Blue br. at 16, 30). First, it is not at all clear from the record. Bock's *pro se* Answer in state court did dispute assignment to Midland and the accuracy of the amount claimed to be due. (Answer, Appx. 82). Second, once in federal court, Bock did not need to allege some factual defect in the collection complaint in order to pursue a claim based on the absence of meaningful attorney involvement.

This very "accuracy" argument was rejected in *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ohio 2009). There, Midland had attached an affidavit to its collection complaint which set forth information about the debt based on the affiant's "personal knowledge." No one contended that the debt information in the affidavit was incorrect. The court first recognized that it should evaluate the affidavit, like the collection complaint here, "the same as any other correspondence or communication from a debt collector, and holds those statements to the requirement that they not be false or misleading." *Id.* at 966. The affiant signed 200-400 affidavits each day and the court concluded that it was factually impossible for the affiant to have personal knowledge despite having said so in the affidavit. The court acknowledged that the affiant's statement about the debt might be entirely accurate and the consumer had not shown that "the amount of the debt, the fact that it is unpaid, or other vital account information, is false." *Id.* at 969. Nevertheless, the affidavit was a misleading communication because it misrepresented the affiant's personal knowledge. *Id.*

More recently, in *Sykes,* 780 F.3d 70, the Court of Appeals affirmed class certification of consumer claims under FDCPA Section 1692e against a New York collection law firm labeled a "default judgment mill." There, the collection firm regularly filed "affidavits of merit" prepared by its debt buyer client. The plaintiffs claimed that the affidavits were not based on personal knowledge. The trial court

upheld the FDCPA claims against the collection firm that filed these bogus affidavits, *Sykes,* 757 F. Supp. 2d 413, and the Second Circuit affirmed class certification of the claims. *Sykes*, 780 F.3d at 85-86. The claim of the class was premised on false representation of personal knowledge, regardless of the ultimate accuracy of the information in the filed lawsuits.

### 5. Pressler Confuses its Duties and Obligations to its Clients, with its Statutory Duty Not to Make Deceptive or Misleading Representations

Pressler resists the underlying rule that *all* statutorily defined debt collectors must abide by the FDCPA. Instead, Pressler argues for an Orwellian rule that some debt collectors are more equal than others. The Supreme Court counsels that collectors that are attorneys must also abide state rules of court and the RPC.

> "To the extent the FDCPA imposes some constraints on a lawyer's advocacy on behalf of a client, it is hardly unique in our law. An attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct."

*Jerman*, 559 U.S. at 600.

Pressler argues (incorrectly) at Section V and other points of its brief that requiring meaningful attorney involvement under Section 1692e improperly infringes on an attorney's obligations under state law duties to its clients. Pressler laments the alleged "absurdity" that results from the trial court's decision, claiming that it would allow the debtor to decide whether the collector performed adequately

for the creditor client.  (Blue br. at 17, 20).  Pressler further argues that requiring meaningful involvement would impinge on the ethical duties Pressler owes its clients to be efficient and not expend excessive time on cases (Id. at 21), including delegation of tasks to its subordinates and computer systems.  (Id. at 31-35).

At best Pressler misconstrues Bock's claim; at worst, Pressler attempts to erect another strawman.  Bock's complaint has nothing to do with duties Pressler owes to its debt buyer clients – only Pressler's statutory duty to refrain from deceptive or misleading representations to consumers.  Appellant's goal of efficiency does not trump the requirements of the statute.

Lawyers can certainly rely on supportive assistance, including the use of technology. "In an age of specialization, professionals are not to be criticized for identifying subroutines that paraprofessionals can adequately perform *under a professional's supervision*."  *Avila,* 84 F.3d at 248 (emphasis added).  Collection law firms can comply "with the FDCPA even when they delegate part of the review process to a paralegal or even to a computer program, provided the ultimate professional judgment concerning the existence of a valid debt is reserved to the lawyer." *Boyd v. Wexler*, 275 F.3d 642, 647 (7th Cir. 2001) (emphasis added, citations omitted).  Judge McNulty recognized this point.  (Slip op. at 1-2, Appx. 6-7).  There is nothing in the record, and specifically nothing in the Felt or Gulko affidavits, to indicate that Gulko or another lawyer supervised employees in each

of the various departments, nor in using Pressler's computer system. (Affidavit of Ralph Gulko, Esq. ("Gulko II"), Appx. 69-71; Felt, Appx. 124-139). To the contrary, the decision to sue Mr. Bock was an automated one. (Felt at ¶¶ 26-27, Appx. 135; Gulko Dep. at p. 93, Appx. 221). Certainly, Pressler's brief on appeal does not point to contrary evidence.

What little time (:04) Gulko spent matching basic information (name, address, balance, etc.) from two computer screens cannot be considered an exercise of professional judgment. Pressler criticizes the district court for focusing only on the *final* four seconds of "a lengthy review process that began when Pressler accepted its client's collection claim…" (See Blue br. at 6-7; Amicus br. at 7-10). However, there is no record evidence of the duration of any "lengthy" [*sic.*] review, nor any evidence of any pre-complaint preparation of the case against Bock performed by any lawyer at Pressler, let alone Gulko. *See Miller*, 687 F. Supp. 2d at 101-02. (representation of attorney involvement was false where the collection lawyer sought to rely on the referring law firm's alleged review). Gulko's general reliance on Midland's data, and "familiarity" with Pressler's computer system (Gulko II, Appx. 70-71) is not evidence that any attorney looked at Bock's file more than once or for more than four seconds at any time.

Gulko's duty to personally make a reasonable inquiry and to personally retain the ultimate professional determination as to the merits of the client's claim

was not delegable – to clerical staff or Pressler's computer system – no matter how much more profitable such a process is for Pressler, or for Pressler's clients.  (*Cf.*, Blue br. at 32-33).

### 6.  Pressler has Waived Any Argument on *Noerr-Pennington*; But, the Argument is Without Merit in any Event

Pressler mentioned neither the First Amendment Petition Clause nor the *Noerr-Pennington* doctrine in its summary judgment briefing or anywhere else in the trial court record.   (See Appx. and Transcript at *passim*).   The trial court's opinion does not mention these arguments either.  (Slip op., Appx. 6-30).  In its statement of issues (Blue br. p.3), Pressler does not cite to a specific page in the record where this issue was raised and ruled upon, as called for by Third Cir. Loc. R. 28.1(a)(1).  Indeed, it was not raised or ruled upon.  The argument Pressler makes on pages 35-39 of its brief was thus waived.  *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (noting, in appeal of summary judgment decision, the "well-established proposition that arguments not raised in the district courts are waived on appeal").

Even if somehow raised and preserved, Pressler's *Noerr-Pennington* argument fails on the merits.  Courts have routinely considered and rejected the argument that the *Noerr–Pennington* doctrine extends to FDCPA claims brought against debt-collectors based on litigation activity.  *See Wise v. Zwicker & Assoc., P.C.*, 780 F.3d 710 n. 5 (6th Cir. 2015); *Basile v. Blatt, Hasenmiller, Leibsker &*

*Moore LLC*, 632 F.Supp.2d 842, 845–56 (N.D.Ill. 2009) (collecting cases); *Hanna* at *12. Not a single court in the Third Circuit has applied *Noerr–Pennington* to bar an FDCPA claim.

### 7. Bock Does Not Base His FDCPA Claim Upon a Violation of State Rules, Yet State Rules Provide Context for What is Meaningful Involvement

Pressler argues that Bock cannot transform a violation of N.J. Ct. R. 1:4-8 (equivalent to Fed. R. Civ. P. 11) into a violation of the FDCPA. (See Blue br. at 39-42). Bock did not argue and Judge McNulty did not conclude that a violation of a rule of procedure or Rule of Professional Conduct forms the *basis* for this FDCPA claim. Bock did not seek to bootstrap the state equivalent to Rule 11 into a federal law violation. As such, those cases where courts have rejected a plaintiff's claim that an RPC or court rule violation equates to a violation of the FDCPA are inapposite. (See Blue br. at 44-46). The district court recognized this. (Slip op. at 18, Appx. 23). The district court's distinction of some these cases, including *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006), is thorough and is incorporated here. (Slip op. at 21-22, n. 16, Appx. 26-27).

Defendant's other cases are easily distinguishable and are unpersuasive in light of this Court's holdings in *Simon* and *Kaymark*. In *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007), (Blue br. at 45), the consumer sued under the FDCPA stating that law firm collector's

allegations in a state court collection complaint were confusing and unclear. The consumer, unlike Bock, did not allege deception, nor lack of meaningful involvement. The plaintiff in *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012) argued that the debt collection firm's inability to produce evidence at summary judgment in state court that the consumer owed the debt constituted false and misleading statements under the FDCPA. The Eighth Circuit disagreed, largely on the premise that no one was deceived by the statements. *Id.* at 819. To be clear, the gravamen of Plaintiff's complaint is not that Pressler sued before it had evidence in hand. The "availability of evidence" is a distinct theory, not raised below by Bock. As such, the cases collected at pp. 43-45 of Pressler's brief only rebut another strawman argument.

The level of attorney involvement required to make a representation not misleading or deceptive involves, at a minimum, an attorney drafting or carefully reviewing a complaint and "conduct[ing] an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law." (Slip op. at 22, Appx. 27). Despite Pressler's protests to the contrary (see Blue br. at 40-41) Pressler did not meet that standard here, and the court below correctly so found. (Slip op. at 22-25, Appx. 27-30).

Gulko cannot be said to have "read" the complaint in his four-second glance at the name, address and amount claimed due. Nor could he "have reason to believe" the allegations were "likely to have evidentiary support or that they will be withdrawn or corrected." N.J. Ct. R. 1:4-8(a)(3); (Blue br. at 42). As stated by the district court, this "belief cannot simply be willed into existence, but must be 'formed after an inquiry...'." (Slip op. at 22, Appx. 27). The personal knowledge and involvement requirement for New Jersey attorneys under state law is also high and clear, *See Committee on Unauthorized Practice of Law Joint Opinion* 48, Appx. 118, but Bock does not seek remedy for its violation.

Pressler cites *Jenkins v. Heintz*, 124 F.3d 824 (7th Cir. 1997) for the proposition that attorney debt collectors have no obligation to investigate the viability of the underlying debt. (Blue br. at 47). This proposition is taken out of context. In *Jenkins*, the Seventh Circuit reviewed a district court's decision to grant a debt collector's motion for summary judgment on a bona fide error defense pursuant to 15 U.S.C. § 1692k(c) premised on a mistake of law, and involving inquiry into the debt collector's *intent*. Such a defense is not in play here and indeed is no longer viable after the Supreme Court's decision in *Jerman*, 559 U.S. 573. Regardless, this proposition, taken out of context as it is, conflicts with the Seventh Circuit's own statements on meaningful attorney involvement in the later

case of *Nielsen*, 307 F.3d 623.  As noted, this Court held in *Simon* that FDCPA and state law rules govern collection attorneys concurrently.  732 F. 3d at 277.

The unpublished *per curiam* decision of *Amond v. Brincefield, Hartnett & Associates, P.C.*, 175 F.3d 1013 (Table), 1999 WL 152555 (4th Cir. 1999) (Blue br. at 48) follows *Jenkins*, and involves claims based on error of law and collection of amounts not allowed by law.  Those are issues not involved in this case.  The other cases (Blue br. at 48) cited by Appellant for the "no duty to investigate" issue did not concern attorney debt collectors nor meaningful involvement, and are inapposite.  *Smith v. Transworld Sys, Inc.*, 953 F.2d 1025 (6th Cir. 1992), *Slanina v. United Recovery Sys., LP*, 2011 WL 5008367 (M.D. Pa. Oct. 20, 2011), *Yentin v. Michaels, Louis & Associates, Inc.*, 2011 WL 4104675 (E.D. Pa. Sept. 15, 2011).  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006) discussed a debt collector's obligation to investigate upon receiving a request for verification pursuant to 15 U.S.C. § 1692g, likewise not at issue in this appeal.

## V.    <u>CONCLUSION</u>

The court below correctly found that there was a complete absence of meaningful lawyer involvement in the preparation and filing of the collection complaint against Mr. Bock.  This violates the FDCPA, 15 U.S.C. §§ 1692e,

1692e(3).  For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted:

Date:  8/12/15

/s/Cary L. Flitter
CARY L. FLITTER
ANDREW M. MILZ
FLITTER LORENZ, P.C.
525 Route 73 South, Suite 200
Marlton, NJ  08053-9644
(856) 396-0600

/s/Philip D. Stern
PHILIP D. STERN
STERN THOMASSON LLP
2816 Morris Avenue, Suite 30
Union, NJ 07083-4870
(973) 379-7500

**Attorneys for Appellee**

## CERTIFICATION OF BAR MEMBERSHIP

I, Cary L. Flitter, hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.


Date:  8/12/15                          */s/Cary L. Flitter*_____
                                        CARY L. FLITTER

## CERTIFICATION OF BAR MEMBERSHIP

I, Andrew M. Milz, hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.


Date:  8/12/15                          */s/Andrew M. Milz*_____
                                        ANDREW M. MILZ


## CERTIFICATION OF BAR MEMBERSHIP

I, Philip D. Stern, hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.


Date:  8/12/15                          */s/Philip D. Stern*_____
                                        PHILIP D. STERN

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed.R.App.P. 32(a)(7)(C), the undersigned counsel of record for Plaintiff/Appellees, certifies that the foregoing brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 32(a)(5)-(7) and Third Circuit Local Appellate Rules 32.1, 32.2 and 28.5. Exclusive of those portions exempted pursuant to Fed. R. App. P. 32(a)(7)(B), the foregoing brief contains 9650 words.

Date: 8/12/15                               */s/Cary L. Flitter*
                                            CARY L. FLITTER
                                            Attorney for Appellee

**CERTIFICATE OF SERVICE**

I, Cary L. Flitter, do hereby certify that a true and accurate copy of the foregoing Brief of Appellee was served upon all counsel via the Court's CM/ECF system on August 12, 2015, upon the following counsel as follows:

Mitchell J. Williamson, Esquire
Pressler & Pressler, LLP
7 Entin Road
Parsippany, NJ 07054

Manuel H. Newburger, Esquire
Barron & Newburger, P.C.
1212 Guadalupe, Suite 104
Austin, TX 78701-1837
Attorneys for Appellant, Pressler & Presser, LLP

Jeanne L. Zimmer, Esquire
Tamar Gabriel, Esquire
Carlson & Messer, LLP
5959 West Century Boulevard, Suite 1214
Los Angeles, XA 90045
Attorney for *Amici Curiae*, NARCA

Theodore (Jack) Metzler, Esquire
600 Pennsylvania Avenue, NW
Washington, DC 20580
Attorney for *Amicus Curiae,* FTC

Kristin Bateman
1700 G Street, NW
Washington, DC 20552
Attorney for *Amicus Curiae,* CFPB

Date:  8/12/15                    */s/Cary L. Flitter*
                                  CARY L. FLITTER

## **CERTIFICATE OF BRIEF TEXT**

I, CARY L. FLITTER, hereby certify that the text of the E-Brief and Hard Copies of the foregoing BRIEF OF APPELLEE are identical.


Date:  8/12/15                    */s/Cary L. Flitter*_____
                                 CARY L. FLITTER

**<u>CERTIFICATION OF VIRUS CHECK</u>**

I, CARY L. FLITTER, hereby certify that a virus check was performed on the PDF file of the foregoing BRIEF OF APPELLEE prior to electronic filing using ESET Endpoint AntiVirus.

Date:  8/12/15                                              */s/Cary L. Flitter*        
                                                          CARY L. FLITTER