P&P File # P155967

# 𝕴𝖓 𝕿𝖍𝖊
# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝕺𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
# 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕿𝖍𝖎𝖗𝖉 𝕮𝖎𝖗𝖈𝖚𝖎𝖙
## No. 15-1056

---

**DANIEL BOCK, JR.,**
**Plaintiff-Appellee,**

**v.**

**PRESSLER & PRESSLER, LLP,**
**Defendant-Appellant**

---

# REPLY BRIEF OF DEFENDANT/APPELLANT PRESSLER & PRESSLER, LLP

---

**On Appeal from the Opinion and Order of the District Court dated June 30, 2014, granting Appellee's Motion for Summary Judgment and the Final Judgment entered on December 4, 2014.**

| | |
|---|---|
| **PRESSLER & PRESSLER, LLP** | **BARRON & NEWBURGER, P.C.** |
| **Mitchell L. Williamson, Esq.** | **Manuel H. Newburger** |
| **7 Entin Road** | **1212 Guadalupe, Suite 104** |
| **Parsippany, NJ 07054** | **Austin, Texas 78701-1837** |
| **(973) 753-5100 (telephone)** | **(512) 476-9103** |
| **(973) 753-5353 (facsimile)** | **Fax: (512) 279-0310** |
| **mwilliamson@pressler-pressler.com** | **mnewburger@bn-lawyers.com** |
| | |
| **Attorneys for Defendant/Appellant,** | **Attorneys for Defendant/Appellant,** |
| **Pressler & Pressler, LLP** | **Pressler & Pressler, LLP** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ ii

SUMMARY OF ARGUMENT IN REPLY ............................................... 1

LEGAL ARGUMENT IN REPLY ............................................................ 2

I.    Bock Mischaracterizes the Meaning of an Attorney's Signature on a Pleading ................................................. 2

II.   Bock and his *Amici* Fail to Articulate a Meaningful Involvement Standard ......................................................... 5

III.  *Kaymark* Supports Pressler's Arguments. ........................................ 11

IV.   Bock Relies on Cases that Are Inapposite ........................................ 13

V.    The Court Should Disregard the *Amici* ............................................ 16

VI.   Bock and the *Amici* Run Afoul of the First Amendment ........................................................................ 21

CONCLUSION ............................................................................ 23

CERTIFICATION OF BAR MEMBERSHIP ........................................... 24

CERTIFICATION OF COMPLIANCE WITH RULE 32(a) ..................... 25

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS ............... 25

CERTIFICATION OF VIRUS CHECK .................................................... 26

CERTIFICATE OF SERVICE ................................................................. 27

i

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, ....................................... 15
173 L. Ed. 2d 868 (2009)

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996).................................................. 6

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, ............................... 12
480 F.3d 470 (7th Cir. 2007)

*Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, ......................... 15
167 L. Ed. 2d 929 (2007)

*Berlin v. Renaissance Rental Partners, LLC,* ............................................... 17
*748 F.3d 98 (2d Cir. 2014)*

*Brickwood Contrs., Inc. v. Datanet Eng'g, Inc.*, ........................................ 3,4
369 F.3d 385 (4th Cir. 2004)

*Bus. Guides, Inc. v. Chromatic Communs. Enters.*, .................................... 3,4
498 U.S. 533, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991)

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, ............................. 2,16
467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)

*Christion v. Pressler & Pressler LLP*, 2010 U.S. Dist. ............................. 20
LEXIS 23751 (D.N.J. Mar. 11, 2010)

*Cincinnati v. Discovery Network, Inc.*, 507 U. S. 410,................................ 22
113 S. Ct. 1505, 123 L. Ed. 2d 99 (1993)

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ..................................... 6,15

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna* ................................... 15
*& Associates, P.C.*, No. 1:14-CV-2211-AT,
2015 U.S. Dist. LEXIS 91357, 2015 WL 4282252
(N.D. Ga. July 14, 2015)

*Derricotte v. Pressler*, 2011 U.S. Dist. LEXIS 78921 .............................. 20
(D.N.J. July 19, 2011)

*Edwards v. First Am. Corp.*, 2015 U.S. App. LEXIS 14841....................... 16
(9th Cir. Aug. 24, 2015)

*Felix v. Albert Einstein Healthcare Network*, 2012 U.S. ........................... 4
Dist. LEXIS 20705 (E.D. Pa. Feb. 16, 2012)

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) .......................................... 5

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 ........................ 5
(2d Cir. 2005)

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 ...................................... 20,21
(6th Cir. 2006)

*Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, ..................................... 13,14
131 L. Ed. 2d 395 (1995)

*Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 ........................... 12
(8th Cir. 2012)

*Jackson v. Law Firm of O'Hara*, 875 F.2d 1224 ........................................ 4
(6th Cir 1989)

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich,* ............................... 13,14
559 U.S. 573, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010)

*Jones v. City of Vineland*, 2015 U.S. Dist. LEXIS 95858 .......................... 4
(D.N.J. July 22, 2015)

*Kaymark v. Bank of America*, 783 F.3d 168 (3d Cir. 2015)........................ 1,11-13

*Lesher v. Law Offices of Mitchell N. Kay, PC*, .......................................... 5,15
650 F.3d 993 (3d Cir. 2011)

*Marlin v. Moody Nat'l Bank N.A.*, 533 F.3d 374 ........................................ 4
(5th Cir. 2008)

*Mello v. Great Seneca Fin. Corp.*, 526 F. Supp. 2d 1024 ........................... 20
(C.D. Cal. 2007)

*Mostofi v. Midland Funding, LLC*, 2015 Md. App. LEXIS ........................ 16
88 (Md. Ct. Spec. App. July 2, 2015)

*New Century Financial Services, Inc. v. Oughla*, ...................................... 8
98 A.3d 583, 437 N.J. Super. 299 (N.J.
Super. Ct. App. Div. 2014), *cert. denied by*
*MSW Capital, LLC v. Zaidi*, 95 A.3d 258,
218 N.J. 531 (N.J. 2014)

*O'Rourke v. Palisades Acquisition XVI, LLC*, ........................................... 12
635 F.3d 938 (7th Cir. 2011)

*Reed v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218, ........................... 21,22
 192 L. Ed. 2d 236 (2015)

*Rosenau v. Unifund*, 539 F.3d 218 (3d Cir. 2008) ...................................... 14

*Royalty Network, Inc. v. Harris*, 756 F.3d 1351 ........................................ 4
(11th Cir. 2014)

*SEC v. Smith*, 710 F.3d 87 (2d Cir. 2013) .................................................... 3

*Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997) ....................................... 4

*Toll Brothers, Inc. v. Township of West Windsor*, ..................................... 3,4
     190 N.J. 61, 918 A.2d 595 (N.J. 2007)

*United States v. Mead Corp.,* 533 U.S. 218, ............................................... 16
121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)

## **Constitutions and Statutes**

U.S. Const. amend. I .................................................................................. 2,22

15 U.S.C. § 1692e(3) ................................................................................. 17

## Rules

Fed. R. Civ. P. 11 ........................................................................ 3,4,20

N.J. R. Ct. 1:4-8 ........................................................................ 3,5,7,8,
12,20

N.J. Court Rules, RPC 4.3 ......................................................... 18

ABA Model Rule of Professional Conduct 3.2,  ........................................ 18
Official Comment 2

## Other Authorities

Debt Collection (Regulation F) Advance Notice of  .................................. 16
Proposed Rulemaking, Docket No. CFPB-2013-0033,
Regulatory Identification Number (RIN) 3170-AA41

Daniel JT McKenna, *CFPB Monitor*, August 19, 2013, ............................ 17
 http://www.cfpbmonitor.com/2013/08/19/
the-cfpb-maintains-that-it-is-not-making-law-
through-its-amicus-program/

Pressler, *Current N.J. Court Rules*, comment 1 on  .................................... 3
R. 1:4-8 (2007)

## SUMMARY OF ARGUMENT IN REPLY

Appellant Pressler appeals a summary judgment finding that it violated the FDCPA due to a lack of meaningful attorney involvement at the time it sued Appellee Bock in a state court collection action. Before this Court is the issue of whether the FDCPA's meaningful attorney involvement doctrine applies to pleadings. A national attorney organization and 35 state creditors' bar associations have filed an *amicus* brief in support of Pressler, urging the Court of Appeals to reverse the District Court's decision.

First, Pressler asserts that Bock has mischaracterized the meaning of an attorney's signature on a pleading and that such a signature is, at most, a certification to the Court and not an actionable representation to the debtor under the FDCPA. Bock and his *Amici* argue erroneously that by filing a collection suit a creditor's lawyer is giving legal advice to the debtor, on which the debtor may rely. This is neither law nor fact.

Second, Bock and his *amici* fail to articulate a meaningful involvement standard. Meaningful involvement should not require a review of documents that an attorney is not even required to possess at the time suit is filed.

Third, the *Kaymark* case on which Bock relies actually supports Pressler's arguments. *Kaymark* dealt with an express misrepresentation in a pleading, not with a claim based solely upon an attorney's signature. *Kaymark* did not address

existing appellate cases that support Pressler's position, neither did it reject the appellate cases on which Pressler relies.

Pressler asserts that Bock relies primarily on cases that are inapposite. FDCPA cases that involve mass-mailing of letters on lawyer letterhead have little to do with a "meaningful involvement" claim that involves a real lawsuit signed by a real attorney where the debtor must either answer or face a default judgment.

With regard to the *Amici* CFPB and FTC Pressler asserts that the Court should disregard their brief, in part because it is not entitled to any *Chevron* deference and in part because it argues positions that bear no relation to reality. Bock and his *Amici* argue that attorneys are subject to a standard that would require them to review, prior to filing suit, documents that the law does not require them to have in their possession in order to file suit.

Finally, Bock and the *Amici* ask this Court either to ignore the First Amendment or to hold that it does not apply to collection attorneys. They would indirectly deprive creditors of the benefit of the First Amendment's Petition Clause by depriving the creditors' attorneys the benefit of that clause.

## LEGAL ARGUMENT IN REPLY

### I.    Bock Mischaracterizes the Meaning of an Attorney's Signature on a Pleading

Bock's "meaningful attorney involvement" claim is not based upon alleged misstatements of fact or law. Bock asserts that Pressler violated the FDCPA based

upon alleged implications of Attorney Gulko's signature on the state court complaint; however, he does not assert that the state court suit was groundless in law or fact (nor would the record support such an assertion).  Bock also makes no claim that Pressler set out to injure him maliciously or fraudulently by pursuing a nonexistent or fraudulent claim.  Instead, he would have this Court adopt a rule that the effect of a lawyer's signature on a pleading is to give legal advice to an opposing party.  This is simply not the law.  The effect of a lawyer's signature is what N.J. R. Ct. 1:4-8 says it is – merely a "certificate" as to the matters set forth in Rule 1:4-8(a).

To whom is the lawyer's certification made?  Bock and his *Amici* present the lawyer's signature as a representation to the debtor, but this is simply not the case in New Jersey. A lawyer's signature is a certification as to what is contained in N.J. R. Ct. 1:4-8, but that is a certification to the *Court*.  The current version of N.J. R. Ct. 1:4-8 was patterned on its federal counterpart, Fed. R. Civ. P. 11. *Toll Bros., Inc. v. Township of West Windsor*, 190 N.J. 61, 68, 918 A.2d 595, 599-600 (N.J. 2007), *citing* Pressler, *Current N.J. Court Rules*, comment 1 on R. 1:4-8 (2007).  It is well-established that the Rule 11 certification is "to the court." *See, e.g., Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 542-43,  111 S. Ct. 922, 929, 112 L. Ed. 2d 1140, 1153 (1991).  *See, also, SEC v. Smith*, 710 F.3d 87, 93 (2d Cir. 2013); *Brickwood Contrs., Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385,

406 (4th Cir. 2004); *Marlin v. Moody Nat'l Bank N.A.*, 533 F.3d 374, 377 (5th Cir. 2008); *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1229 (6th Cir 1989); *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997); *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1358 (11th Cir. 2014). *See, also, Jones v. City of Vineland*, 2015 U.S. Dist. LEXIS 95858 (D.N.J. July 22, 2015); *Felix v. Albert Einstein Healthcare Network*, 2012 U.S. Dist. LEXIS 20705 (E.D. Pa. Feb. 16, 2012). Because the New Jersey Supreme Court has held that Rule 1:4-8 was modeled on Rule 11, (*Toll Bros.* at 68) it necessarily follows that the Rule 1:4-8 certification is also "to the court."

The inquiry required under Rule 11 is that which is reasonable "under the circumstances." *Bus. Guides, Inc.,* at 498 U.S. 551, 111 S. Ct. 933, 112 L. Ed. 2d 1159. Pressler did not certify that it had conducted the inquiry that would be reasonable for a complex commercial suit or even a foreclosure. It certified that it had conducted the inquiry reasonable for a suit on a "book account" with the nominal proof requirements that were discussed in Pressler's opening brief.

Bock also tries to argue that the state court complaint was not "from" an attorney. However, the very act of invoking N.J. R. Ct. 1:4-8 was an admission that the state court complaint was from an attorney. That rule applied to Pressler when Gulko signed the state court complaint as an attorney representing a client. N.J. R. Ct. 1:4-8 applies to the "signature of an attorney or *pro se* party." The District

4

Court's analysis of Rule 1:4-8 implicitly recognized that Ralph Gulko was acting as an attorney; otherwise, the rule would be inapplicable.

A state court collection suit might be poorly drafted -- this one was not.  It might be meritless -- this one was not. It might be against the wrong person -- this one was not. It might even result in sanctions -- this one did not. However, under all such circumstances the suit would still be "from" the attorney who signed the complaint.  There was no misrepresentation, and certainly none to Bock.

## II.    Bock and his *Amici* Fail to Articulate a Meaningful Involvement Standard

The phrase "meaningful attorney involvement" is a creation of the courts. The phrase is not defined in the FDCPA (as it is wholly absent from the statute), and the courts that created the doctrine have failed to define it.  Indeed, the Second Circuit Court of Appeals has made it clear that the FDCPA imposes no affirmative duty of meaningful attorney involvement; rather, the Act merely prohibits misrepresenting the existence of attorney involvement. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005) (rejecting Greco's assertion that "an attorney cannot send a collection letter without being meaningfully involved as an attorney within the collection process.").  The decisions of this Court in *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993 (3d Cir. 2011) and of the Fifth Circuit in *Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) support this analysis, as both decisions are consistent with *Greco* and permit an

attorney to disclaim meaningful involvement.

Bock cites case after case involving letters, but letter cases are fundamentally different from the instant case. In a letter case there can be an implication of escalation based upon the use of an attorney's name or letterhead, and in some cases that implication can be false. The use of attorney letterhead may, indeed, "get the debtor's knees knocking." *See Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). However, in the case of the suit against Bock what is at issue is neither a mass-produced letter that the lawyer never saw (*see, e.g.*, *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)), nor is there a false or misleading representation (or even implication) of escalation. The summons and complaint served on Bock informed him that:

- He had been sued.
- The complaint was a copy of that suit.
- He had been served.
- He needed to answer if he wanted to contest the suit.
- If he failed to answer a default judgment could be entered against him

Each of those representations was absolutely true. There was no false representation to him of escalation as prohibited by *Avila*. There was no false sense of urgency or false implication that "the price of poker has gone up." *Cf. Avila*, 84 F.3d at 229.

Despite the passage of over a year since the summary judgment was granted in the Court below, Bock and his *Amici* still have not articulated a standard by

which courts (and collection attorneys) should allegedly assess if the attorneys are "meaningfully involved" in the debtor's case at the time suit was filed. Bock would have this Court create a rule of law that says:

> Attorneys, you must be meaningfully involved. The statute and case law don't tell you what that is, but you must do it anyway and only your adversaries in the consumer bar can define it for you because they know it when they see it.

Such a "standard" makes a mockery of due process as it is no standard at all. A law that provides no meaningful standard endangers the due process to which all litigants, even debt collection attorneys, are entitled.

With no expert testimony, no guiding standards, and no set of rules to allow collection lawyers to know where the lines are drawn Bock asks this Court to let debtors and their attorneys determine when creditors' lawyers are working hard enough. This is contrary to the roles that lawyers play in an adversarial system.

The Court below similarly failed to identify such a standard but came closest in its discussion of N.J. R. Ct. 1:4-8. However, Rule 1:4-8 (like Rule 11) requires a case-specific standard rather than a general, objective one. Both rules refer to "an inquiry ***reasonable under the circumstances***." (Emphasis added.) The test is not generally one of what constitutes a "reasonable inquiry" as that would render superfluous the words "under the circumstances." Clearly, the circumstances of each case will impact what inquiry is reasonable. To prove its client's case on an assigned, charged-off credit card debt Pressler needed to prove only two things: (1)

7

ownership of Bock's charged-off debt; and (2) the amount due the card issuer when it charged off the account. *New Century Financial Services, Inc. v. Oughla*, 98 A.3d 583, 586, 437 N.J. Super. 299, 304 (N.J. Super. Ct. App. Div. 2014), *cert. denied by MSW Capital, LLC v. Zaidi*, 95 A.3d 258, 218 N.J. 531 (N.J. 2014). In this case the record shows that such evidence existed and that Pressler had the ability to obtain it for use at trial. Appx. Vol. II at 166-189.  That is all that Rule 1:4-8 required.

The record in the Court below revealed substantial attorney involvement that led to the filing of the suit against Bock.

- Gulko, an attorney who was licensed in New Jersey since 1978 and had worked for Pressler since August 2005, has been in the legal debt collection field since 1980. Appx. Vol. II at 69.   He was knowledgeable and familiar with Pressler's process for the preparation of a new claim prior to it being presented to him for review and approval for suit. He testified without contradiction that he reviews each proposed complaint in its entirety, making sure that all information contained in the summons and complaint is the same information that was received from the client. Appx. Vol. II at 70.

- Gulko also testified without contradiction that he reviews the file notes on the account to ascertain whether there have been any changes

8

in that information due to post-referral credits and/or address changes. All of that information can be found on the opening screen of an electronic file at Pressler. *Id*.

- Gulko further testified without contradiction that he reviews the account to confirm that all changes are current and that he checks for the existence of other accounts for the debtor. Although his reviews can extend to credit reports he testified that there was nothing on Bock's complaint that would have required him to review a credit report. *Id*.

- Gulko also testified without contradiction that if documents are to be attached to the summons and complaint he reviews those documents to be sure they are the correct ones to use and that all private information has been redacted. *Id*. However, in this case the state court action against Bock pertained to a credit card, so a document review was not necessary (since New Jersey does not require that documents be attached to the complaint). *Id*.

- Gulko testified that his review covers name, address, county of venue, amount, the cause of action alleged in the body of the complaint, the statute of limitations, and anything else that would give him cause or reason to reject summons and complaint. *Id*. He also had knowledge

that Bock's file had been the subject of various computerized "scrubs" and that several other departments at Pressler had handled the electronic file prior to it being presented to him for approval of the summons and complaint. *Id.*

• Gulko testified that Midland Funding, LLC ("Midland"), his client in the state court action, has been a client of Pressler since he began with the firm and that he had eight years of experience with the reliability and sufficiency of Midland's evidence. Appx. Vol. II at 70-71. He testified without contradiction that based on his familiarity with the computer system, his familiarity with the reliability of Midland's records and having reviewed complaints for Pressler for approximately eight years, he was complying with his ethical responsibilities as an attorney in the State of New Jersey. Appx. Vol. II at 61. Bock offered no expert testimony to rebut that assertion.

Gulko's review was an inquiry "reasonable under the circumstances" taking into account the nature of the case, the relatively low burden to prove a book account, Gulko's years of experience, and the compression of a lot of information into a single screen which he examined. The review was therefore meaningful, and this Court should reverse the District Court and rule in Pressler's favor. Bock and his *Amici* would like to characterize this as the "four-second review case," but

pithy slogans are not the same as legal analysis. This is not a case about "4 seconds." This is about how much work an attorney must perform to validate the truthfulness of pleadings. There is no allegation that Gulko made a mistake in his analysis; he just arrived at the right conclusion too efficiently to satisfy Bock. Bock and his *Amici* would hold experienced, knowledgeable collection lawyers liable for being too efficient as opposed to being inaccurate or untruthful.[1]

## III.  *Kaymark* Supports Pressler's Arguments

As previously discussed, Bock relies heavily on cases involving collection letters. However, none of the letter cases cited even remotely implies that a pleading that was approved and filed by an attorney can be anything other than "from" an attorney. None of these letter cases remotely implies that a consumer-debtor can dictate the amount of work that must be done by his creditor's attorney in drafting and filing a lawsuit. He therefore relies heavily on this Court's decision in *Kaymark v. Bank of America*, 783 F.3d 168 (3d Cir. 2015) and criticizes Pressler for not distinguishing it.

---

[1] Alternatively, what Bock and his *Amici* are really attacking is the modernization of legal practice in the 21st Century. They seek to block the use of computer systems that make feasible the daily screening of files for bankruptcy and death and that provide accuracy not achievable with manual input and review. They might as well attack the use of Lexis or Westlaw because they eliminate hours of research in bound books by permitting efficient and accurate research, capturing cases that might otherwise be missed.

*Kaymark* does not need to be distinguished since it supports Pressler's position. The *Kaymark* case involved factually false statements in a complaint. It was not based upon the implications of an attorney's signature. It did not allow a debtor to dictate how hard an attorney must work for his client; rather, it allowed a debtor to complain of an affirmative, material representation in the body of a complaint that was factually untrue. *Kaymark* is entirely consistent with *O'Rourke, infra* and with the position taken by Pressler.

In *Kaymark* this Court distinguished *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011) because *O'Rourke* dealt with a communication to the trial court and not the debtor. However, the same is true here. As is addressed above, the attorney's Rule 1:4-8 certification is to the court.

In *Kaymark* this Court also did not address the holdings in *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012) and *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007) so it neither distinguished nor rejected them. *Beler* negates Bock's claim and supports Pressler's position, as it held that the violation of a state court rule regulating pleadings is not a violation of the FDCPA. *Hemmingsen* also negates Bock's claim and supports Pressler's position as it held that litigation activities fall outside the scope of regulated debt collection under the FDCPA. *Kaymark* is not contrary to *Beler*, *O'Rourke*, or *Hemmingsen*.

12

Bock and his *Amici* attempt to implicate *Kaymark* by referring to alleged "misrepresentations" in pleadings but their argument is the "misrepresentation". There was no "misrepresentation" in the underlying state court collection suit and Bock made no real effort to identify one. Bock does not claim that Gulko did not actually sign or approve the pleading. He does not claim that Gulko was unaware of him or of the suit. He does not claim that Gulko allowed the suit to be filed without his knowledge or authorization, and he certainly does not allege that any material allegation of the complaint was false. Instead, Bock asserts that Gulko did not do enough work to warrant signing the state court complaint. *Kaymark* has nothing to do with such a claim because *Kaymark* deals with outcome, and Bock and the *Amici* are trying to use it to dictate effort.

## IV. Bock Relies on Cases that Are Inapposite

Faced with a lack of case law to support his claims regarding meaningful involvement in pleadings, Bock cobbles together a group of cases that are inapposite. He carefully sidesteps the limitations on the holding in *Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995), declaring: at page 20 of his brief that "the FDCPA applies to debt collection attorneys involved in litigation." That is a true statement, but it is not the issue before this Court. The Supreme Court did not certify in either *Heintz* or *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich,* 559 U.S. 573, 600, 130 S. Ct. 1605, 1622, 176 L. Ed. 2d

519, 539 (2010) the question of whether the initiation or prosecution of litigation was a "debt collection" activity covered by the FDCPA. Furthermore, both *Heintz* and *Jerman* involved letters, not pleadings. The Supreme Court expressly did not reach the issue in *Heintz*:

> We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.

*Heintz*, 514 U.S. at 296-97 (1995).  The Court left open the question of the degree to which the FDCPA regulates litigation conduct and simply rejected the notion of a blanket exemption. Pressler does not contend that there is a blanket exemption. In the limited cases where lawyers and agencies compete in debt collection the legislative history of the Act cited in the opening brief indicates that the Act would apply to such activities.  However, that is not the situation here.  The conduct at issue in this case did not place Pressler in competition with collection agencies.  As was addressed in Pressler's opening brief the FDCPA's original attorney exemption was deleted to ensure a level, competitive playing field between law firms and collection agencies.

Bock cites case after case that involves collection letters and not accurate, truthful pleadings.  One of his cases, *Rosenau v. Unifund*, 539 F.3d 218, 221 (3d Cir. 2008), did not even involve a law firm.  In *Rosenau* the practice at issue was a

14

communication from the in-house "Legal Department" of a debt-buyer and not a pleading or even a letter from a law firm. *Lesher, supra*, involved a letter from a New York law firm to a Pennsylvania debtor, even though the firm had no Pennsylvania-licensed lawyers. *Clomon* involved an escalating series of threatening letters seeking to collect a $9.42 magazine subscription debt. The attorney in whose name the letters were sent had not seen the letters and he knew nothing of the debtor's case, even though the letters impliedly threatened suit. Bock's claim is not supported by the cases he cites.

The desperate nature of Bock's efforts is reflected in his attempted use of *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Associates, P.C.*, No. 1:14-CV-2211-AT, 2015 U.S. Dist. LEXIS 91357, 2015 WL 4282252 (N.D. Ga. July 14, 2015), a decision that has little (if any) relevance. *Hanna* is a non-precedential decision of a single district court in another circuit in which the only issue before the court was whether the CFPB's complaint had satisfied the minimal pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It was an order issued with no record, no evidence, and most certainly not on the merits. In contrast, the decision of the District Court in this case has been explicitly rejected by the Maryland Court of Appeals in affirming a

decision on the merits. *See Mostofi v. Midland Funding, LLC*, 2015 Md. App.

LEXIS 88 (Md. Ct. Spec. App. July 2, 2015).

## V.    The Court Should Disregard the *Amici*

The Court should disregard the arguments of the *Amici* Consumer Financial

Protection Bureau (CFPB) and Federal Trade Commission (FTC) as *Amici*.  The

CFPB is not entitled to deference under *Chevron, U.S.A., Inc. v. Nat'l Res. Def.*

*Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

> Here, CFPB is interpreting the statute, not the regulation. An agency's
> interpretation of the statute—when presented in an *amicus* brief—is
> not promulgated in the exercise of its formal rule-making authority, so
> no *Chevron* deference is warranted.

*Edwards v. First Am. Corp.*, 2015 U.S. App. LEXIS 14841 at *13 (9th Cir. Aug.

24, 2015), *citing United States v. Mead Corp.,* 533 U.S. 218, 226-27, 121 S. Ct.

2164, 150 L. Ed. 2d 292 (2001).

Furthermore, the CFPB is attempting to regulate by *amicus* brief and should

not be permitted to do so.  As the CFPB notes, it was charged with regulating debt

collection; however, it has wholly failed to promulgate debt collection rules,

notwithstanding ample opportunity to do so and its issuance in *2013* of an Advance

Notice of Proposed Rulemaking. *See* Debt Collection (Regulation F) Advance

Notice of Proposed Rulemaking, Docket No. CFPB-2013-0033, Regulatory

Identification Number (RIN) 3170-AA41.  Instead, the Bureau is using its "Amicus

Program" to evade its obligations of public comment and rulemaking, attempting

instead to regulate by *amicus* brief.  See Daniel JT McKenna, *CFPB Monitor*, August 19, 2013, http://www.cfpbmonitor.com/2013/08/19/the-cfpb-maintains-that-it-is-not-making-law-through-its-amicus-program/.  The Court should not permit the Bureau to regulate without following the proper regulatory process. "Some measure of discipline is needed to keep an agency from commanding any level of deference when the agency creates the very jurisdiction it claims to occupy.  An agency is not like the busy spider, which can stand upon its own spun web." *Berlin v. Renaissance Rental Partners, LLC*, 748 F.3d 98, 99-100 (2d Cir. 2014) (Jacobs and Wesley dissent).

Nevertheless, Bock's *Amici* concede that "a complaint signed by a real attorney may be "'from' attorneys in the literal sense of that word . . .'" *Amici* Brief at 20. That statement should bring an end to the discussion. 15 U.S.C. § 1692e(3) forbids representing that a communication is from an attorney when it is not.  Conceding that the state court pleading was from an attorney negates the alleged violation.

The *Amici* argue: "Misrepresentations about an attorney's involvement also 'falsely lead[] the consumer to believe that a lawyer has reviewed the debtor's account and assessed the validity of the creditor's position.'" *Amici* brief at 21. That argument thoroughly turns on its ear the role of the Pressler firm, creating a world of magical thinking in which lawyers give legal advice to unrepresented

opposing parties.[2]   Pressler represented Midland and not Bock. Bock was not a
client, and he had no right to look to Pressler for advice. In fact, pursuant to N.J.
RPC 4.3, Pressler was ethically forbidden to give Bock advice, so the *Amici* have
essentially argued that Bock was harmed because he relied upon advice that did not
exist and could not ethically be given.   The Court should reject any position
regarding attorneys that purports to require Pressler and other collection lawyers to
violate RPC 4.3.

The *Amici* argue at Page 21 of their brief: "A consumer misled into believing
that the complaint against him reflects an attorney's professional judgment is apt to
be more intimidated—and thus less likely to defend against the suit and more
likely to accede to the demand for   payment. By contrast, absent that
misrepresentation, the consumer will be more likely to question the debt and to
identify and raise the full range of his defenses in court." Setting aside the fact that
there is no evidence to support this argument (and the only evidence is that Bock
answered the collection suit), this suggests that consumers should be free to ignore
the summons from the state court.   It is the summons that commands an answer
and not the fact that an attorney filed the claim.  Bock and the *Amici* all gloss over

_____

[2] Official Comment 2 to the ABA's Model Rule of Professional Conduct 4.3 states
that "the possibility that the lawyer will compromise the unrepresented person's
interests is so great that the Rule prohibits the giving of **any** advice, apart from the
advice to obtain counsel." (Emphasis added.)

that point. No evidence in the record in this or any other reported FDCPA case suggests that consumer-debtors rely on the judgment of their creditors' attorneys in deciding whether to answer suits.

On the other hand, this Court can take judicial notice that collection suits are served with summonses. A summons is a command from a court to appear. The *Amici* relegate the command from the state court to a status of unimportance, placing all of the importance on the signature of the attorney. This is neither law nor fact; it is fantasy that strikes at the heart of the power of the judiciary.

Worse, the *Amici* argue at Page 22 of their brief that the sense of urgency created by a lawsuit is not "legitimate." They are essentially telling this Court that a consumer who is told by a state court to answer or face a judgment by default is not facing a serious or urgent situation. There is no basis in fact or law for such a contention. Even a meritless lawsuit (and the state court action was not meritless) must be responded to or the defendant would face significant negative consequences.[3]

---

[3] The *Amici* also discuss voluntary dismissals in their brief. This is an inappropriate argument since this case does not involve a dismissal. However, what is truly mystifying is the complaint by consumer protection agencies that collection law firms sometimes dismiss suits when the consumer responds. First, there is no evidence in the record that this assertion applies to Pressler or to the facts of this case. Second, it fails to recognize that clients, not lawyers, decide whether to dismiss suits, and sometimes that is because the creditor does not want to spend the money to fight a contested case over a small amount, and sometimes the creditor accepts the consumer's dispute and does not want to force the

The argument of the *Amici* at Page 28 of their brief provides true insight into their real agenda of trying to impose excessive burdens on debt collection litigation. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) holds that at the time a collection suit is filed Pressler need not have in its possession the evidence necessary to win at trial.[4] The *Amici* argue that this does not impair the meaningful involvement standard that they want to impose on pleadings. The heart of their argument is that Pressler should be required, prior to filing suit, to review documents that state law does not require it to have or use and that federal law says need not be in the firm's possession at the time of filing suit.

Their position is that under *Harvey* Pressler did not need to have the trial documents to file suit, but Gulko could not sign the suit without first reading the documents he was not required to have. Such a pronouncement might be amusing

---

consumer to continue to incur the cost of defense. The Amici should appreciate the willingness of creditors and their attorneys to take consumer disputes seriously.

[4] "[A] debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006); *see also Mello v. Great Seneca Fin. Corp.*, 526 F. Supp. 2d 1024, 1030 (C.D. Cal. 2007); *Derricotte v. Pressler*, 2011 U.S. Dist. LEXIS 78921 (D.N.J. July 19, 2011). Under the standards of both Fed. R. Civ. P. 11 and N.J. R. Ct. 1:4-8 Pressler was only required to have a good faith basis for the state court suit, which it had. *Harvey*, 453 F.3d at 333; *Christion v. Pressler & Pressler LLP*, 2010 U.S. Dist. LEXIS 23751 (D.N.J. Mar. 11, 2010).

if uttered by Lewis Carroll's Red Queen[5] or his Queen of Hearts.[6] It presents a

terrifying lack of logic when uttered by powerful federal regulators.

## VI.   Bock and the *Amici* Run Afoul of the First Amendment

Compounding the illogic of their arguments the *Amici* argue that the First

Amendment does not apply to collection attorneys. In their world the Petition

Clause would apply to creditors who seek relief from courts but not to the

attorneys who must file the pleadings seeking such relief. As with their approach to

*Harvey* discussed above they would have this Court impose barriers to the filing of

suit that are incompatible with state and federal law.

The burdens that the *Amici* seek to impose are based upon the subject matter

of Pressler's communications with courts. The content pertains to debt collection;

therefore, the *Amici* assert a right to restrict and impair those communications.

However, on June 18 of this year the Supreme Court issued its opinion in *Reed v.

Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015) in which

it stated:

> Content-based laws—those that target speech based on its
> communicative content—are presumptively unconstitutional and may
> be justified only if the government proves that they are narrowly
> tailored to serve compelling state interests.

---

[5] "It takes all the running you can do, to keep in the same place. If you want to get
somewhere else, you must run at least twice as fast as that!" L. Carroll, *Through
the Looking Glass.*

[6] "'No, no!' said the Queen. Sentence first - verdict afterwards." L. Carroll, *Alice's
Adventures in Wonderland.*

*Id.*, 135 S. Ct. 2226, 192 L. Ed. 2d 245. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.*, 135 S. Ct. 2227, 192 L. Ed. 2d 245.

Bock and his *Amici* seek to hold Pressler liable under a federal statute for the subject matter of its speech (debt collection) and the message expressed ("you have been sued"). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.*, 135 S. Ct. 2228, 192 L. Ed. 2d 246, *citing Cincinnati v. Discovery Network, Inc.*, 507 U. S. 410, 429, 113 S. Ct. 1505, 123 L. Ed. 2d 99 (1993). Bock and the *Amici* wholly fail to address these principles. Instead, they make half-hearted attempts to explain why the First Amendment's Petition Clause should not protect Pressler, even though ***nothing*** in the record even remotely suggests that the suit against Bock was groundless, a sham, or brought to perpetuate a fraud.

In the world of Bock and the *Amici* the First Amendment should protect only attorneys who do as much work as consumers and their advocates think is appropriate and not attorneys who do as much work as the attorneys or their clients believe to be appropriate. Respectfully, in a world where the government decides whether the First Amendment applies the First Amendment ceases to exist.

22

## CONCLUSION

For the foregoing reasons, the decision of the District Court should be reversed and this case should be remanded with instructions to enter summary judgment in favor of Appellant or, in the alternative, to try the case on the merits.

Respectfully submitted,
PRESSLER & PRESSLER, LLP

Dated: September 9, 2015        By:    /s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
7 Entin Road
Parsippany, NJ 07054
(973) 753-5100 (telephone)
(973) 753-5353 (facsimile)
mwilliamson@pressler-pressler.com
Attorney for Defendant/Appellant,
**On the brief:**                Pressler & Pressler, LLP
Manuel H. Newburger, Esq.
Mitchell L. Williamson, Esq.

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I hereby certify that both Mitchell L. Williamson and Manuel H. Newburger, the attorneys whose names appear on the brief, are members of the bar of this Court in good standing.

Dated:  September 9, 2015

<u>/s/ Mitchell L. Williamson, Esq.</u>
Mitchell L. Williamson, Esq.
PRESSLER & PRESSLER, LLP
7 Entin Road
Parsippany, NJ 07054
(973) 753-5100 (telephone)
(973) 753-5353 (facsimile)
mwilliamson@pressler-pressler.com
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

The instant brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,269 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  The instant brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Date: September 9, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP


## <u>CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS</u>

I hereby certify that the text of the E-Brief and Hard Copies of the foregoing Brief of Appellant are identical.

Date: September 9, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP

## **CERTIFICATION OF VIRUS CHECK**

I hereby certify that a virus check was performed on the PDF file of the foregoing Brief of Appellant prior to electronic filing using Norton Security Suite anti-virus and that no viruses were detected in the files.

Date: September 9, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
Attorney for Defendant/Appellant,
Pressler & Pressler, LLP

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and accurate copy of the foregoing Brief of Appellant was served upon all counsel via the Court's CM/ECF system and via federal express on this 9th day of September, 2015:

Philip D. Stern, Esq.
Philip D. Stern, Attorney at Law, LLC
2816 Morris Avenue, Suite 30
Union, NJ 07083-4870

Cary L. Flitter, Esq.
Flitter Lorenz, P.C.
450 N. Narbeth Avenue, Suite 101
Narbeth, PA 19072

Manuel H. Newburger, Esq.
Barron & Newburger, P.C.
1212 Guadalupe, Suite 104
Austin, TX 78701-1837

Theodore (Jack) Metzler, Esq.
Federal Trade Commission
600 Pennsylvania Ave. NW
Washington, DC 20580

Kristin Bateman, Esq.
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

Jeanne L. Zimmer, Esq.
Carlson & Messer, LLP
5959 W. Century Blvd., Ste. 1214
Los Angeles, CA 90045

I further certify that the foregoing Brief of Appellant was filed with the Court's CM/ECF system and seven copies of same were served via Federal Express to the Clerk of the of the United States Court of Appeals for the Third Circuit on this 9th day of September, 2015, at the following address:

> Office of the Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, PA 19106-1790

Dated:  September 9, 2015

/s/ Mitchell L. Williamson, Esq.
Mitchell L. Williamson, Esq.
PRESSLER & PRESSLER, LLP
7 Entin Road
Parsippany, NJ 07054
(973) 753-5100 (telephone)
(973) 753-5353 (facsimile)
mwilliamson@pressler-pressler.com

Attorneys for Defendant/Appellant,
Pressler & Pressler, LLP