

1700 G Street NW, Washington, DC 20552

June 3, 2016

**VIA CM/ECF**

Marcia M. Waldron
Clerk
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

**Re:** *Bock v. Pressler & Pressler, LLP*, **No. 15-1056**

Dear Ms. Waldron:

  The Consumer Financial Protection Bureau (CFPB or Bureau) respectfully submits this supplemental *amicus* brief in response to the Court's order of May 20, 2016, which requested that the parties file supplemental letter briefs addressing the applicability of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to this case, including the question whether Bock has established concrete harm sufficient to give him standing or whether he has established only a bare procedural violation. For the reasons set forth below, the Bureau urges the Court to conclude that Bock has suffered a concrete harm sufficient to establish Article III standing.

**I.  Interest of the Bureau**

  The Bureau has a substantial interest in plaintiffs' standing under Article III to bring suit in federal court to assert their rights under the Fair Debt Collection Practices Act (FDCPA or Act). Although the Bureau and various other federal agencies have authority to enforce the Act, 15 U.S.C. § 1692*l*, Congress intended the Act to be "primarily self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S. Rep. No. 95-382, at 5 (1977). An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement

to the Bureau's own enforcement efforts. The Bureau therefore has a substantial interest in the standing issue presented in this case.

## II. Bock Has Article III Standing.

1. In *Spokeo*, the Supreme Court reaffirmed the well-established principle that a plaintiff invoking the jurisdiction of an Article III court must establish "injury in fact." *Spokeo*, Slip op. at 6. In particular, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 7 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *Spokeo* also reaffirms the longstanding principle that the required "legally protected interest" may be an interest that Congress has granted legal protection by creating a statutory right. *See id.* at 9 (reaffirming that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law'" (quoting *Lujan*, 504 U.S. at 578) (alteration omitted)); *accord Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing" (quotations omitted)). Nonetheless, the invasion of such a statutory right will not "automatically" satisfy the "injury-in-fact requirement"; the fact that Congress "grants a person a statutory right and purports to authorize that person to sue to vindicate that right" is not necessarily enough. *Spokeo*, Slip op. at 9. For example, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 9-10. Rather, the invasion of a statutory right must itself be "concrete and particularized" and "actual or imminent." *Id.* at 7.

A particularized injury is one that "affect[s] the plaintiff in a personal and individual way," *id.* at 7 (quotations omitted), while a "concrete" injury is one that is "*de facto*," *id.* at 8. That is, to be "concrete," the injury must "actually exist"; it must be "real," not "abstract." *Id.* A concrete injury need not be tangible, however. *Id.* at 8-9. An intangible injury can also be concrete. *Id.* at 9. In assessing whether an intangible injury is sufficiently "concrete," the Court recognized that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and, thus, that "its judgment is . . . instructive and important." *Id.*

2. Bock has alleged, and the district court found based on the undisputed facts, that Pressler & Pressler violated the FDCPA by misrepresenting that an attorney was meaningfully involved in the debt-collection suit that the firm filed against him. Appx. 30. Bock has therefore suffered the "invasion of a legally protected interest." The FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means" to collect a debt, 15 U.S.C. § 1692e, and it authorizes a consumer to recover actual and statutory damages from "any debt

collector who fails to comply with" that provision "with respect to" the consumer, *id.* § 1692k(a). Together, these provisions grant consumers like Bock a legally protected interest in not being subjected to misleading debt-collection communications—an interest that Pressler & Pressler invaded.

There is no serious question that the invasion of this interest is both actual and particularized: The events described in the record demonstrate "actual" injury because the invasion of Bock's legally protected interest in fact occurred. And that invasion "affect[ed] [Bock] in a personal and individual way," *Spokeo*, Slip op. at 7, because Pressler & Pressler misrepresented *to Bock* that an attorney had been meaningfully involved in the lawsuit filed *against him*. The injury that Bock suffered is personal to him and is not a "nonjusticiable generalized grievance." *See id.* at 8 n.7.

3. The misrepresentation directed at Bock also constitutes a "concrete" injury. In *Havens Realty Corp. v. Coleman*, the Supreme Court held that the deprivation of a right not to be "the object of a misrepresentation made unlawful under" the Fair Housing Act (FHA) satisfied Article III's "injury in fact" requirement. 455 U.S. 363, 373-74 (1982). In that case, a housing-discrimination "tester"—*i.e.*, a person who, "without an intent to rent or purchase a home or apartment, pose[d] as [a] renter[] or purchaser[] for the purpose of collecting evidence of unlawful steering practices"— brought suit against a realty company that had falsely informed her that no housing was available. *Id.* at 373-74. The FHA barred misrepresentations about available housing, thus creating a "legal right to truthful information about available housing." *Id.* at 373 (citing 42 U.S.C. § 3604(d)). The Court concluded that "the Art. III requirement of injury in fact is satisfied" because the tester "allege[d] injury to her statutorily created right to truthful housing information." *Id.* at 374.

*Havens Realty* remains good law. *Spokeo* did not mention—much less limit— *Havens Realty*'s holding that a violation of a statutory right not to be the target of a misrepresentation satisfies "the Art. III requirement of injury in fact," *Havens Realty*, 455 U.S. at 374. *See also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."). On the contrary, *Spokeo* confirms that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, Slip op. at 9 (quoting *Lujan*, 504 U.S. at 578) (alteration omitted).

As applied to this case, *Havens Realty* compels the conclusion that a person who has been subjected to a misrepresentation made unlawful by 15 U.S.C. § 1692e suffers a concrete injury that satisfies Article III. Just as the statute in *Havens Realty* created a "legal right to truthful information about available housing," *Havens Realty*, 455 U.S. at 373, the FDCPA grants consumers a legal right to truthful information in their

dealings with debt collectors. *Havens Realty* teaches that the invasion of such a right—a right not to be "the object of a misrepresentation made unlawful under [the statute]," *id.*—suffices to support standing. And just like the invasion of that right sufficed to support standing in *Havens Realty*, so too does the invasion of the analogous right here support Bock's standing to sue.

Congress's judgment further confirms that the deprivation of Bock's right not to be subject to misrepresentations constitutes concrete harm. As the Court in *Spokeo* acknowledged, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and its judgment about what harms meet those requirements is accordingly "instructive and important." Slip op. at 9. Here, Congress enacted the FDCPA to ensure that "every individual, whether or not he owes the debt," would have the "right to be treated in a reasonable and civil manner." 123 Cong. Rec. 10241 (Apr. 4, 1977) (statement of Rep. Annunzio). To that end, the Act gives consumers various rights to be treated appropriately, including the right not to be subjected to "any false, deceptive, or misleading representation or means" in the debt-collection process. 15 U.S.C. § 1692e. This is one of the various ways in which Congress protected consumers from the "abuse by third party debt collectors" that Congress found to be "a widespread and serious national problem." S. Rep. No. 95-382, at 2 (1977). As in *Havens Realty*, "[t]his congressional intention cannot be overlooked in determining whether [Bock has] standing to sue." 455 U.S. at 373.

Moreover, under *Havens Realty*, Bock's injury is "concrete" even if he has not alleged that the misrepresentation caused additional consequential harm. No such harm was alleged in *Havens Realty*. Rather, the Supreme Court upheld the tester's Article III standing even though she "may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home." *Havens Realty*, 455 U.S. at 374. In this case, the Bureau's prior *amicus* brief explained how consumers generally may be affected by misrepresentations of attorney involvement. CFPB/FTC Amicus Br. 21-22 (Aug. 13, 2015). But that does not mean that an FDCPA plaintiff must allege or prove that the misrepresentation had consequential effects in his particular circumstances. As *Spokeo* recognized, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure," Slip op. at 10, and "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before," *id.* at 9 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)). As in *Havens Realty*, Pressler & Pressler's deprivation of Bock's statutory right not to be subject to misrepresentations in the context of debt collection is sufficiently concrete by itself to confer Article III standing on Bock.

Finally, this Court's order requested briefing on whether Bock had "established only a bare procedural violation" under *Spokeo*, which states that "a bare procedural violation, divorced from any concrete harm," does not satisfy Article III's injury-in-fact requirement. *Id.* at 9-10 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). The statutory right to be free from misleading debt-collection practices—part of the overarching "right to be treated in a reasonable and civil manner," 123 Cong. Rec. 10241—is not a *procedural* right for which a separate "concrete harm" must be identified. Rather, as in *Havens Realty*, an infringement of that right is itself a "specific injury" that satisfies "the Art. III requirement of injury in fact." 455 U.S. at 374.

### III. Conclusion

For these reasons, the Court should hold that Bock has Article III standing to pursue his FDCPA claims.

Sincerely,

/s/ Kristin Bateman

Mary McLeod
   *General Counsel*
John R. Coleman
   *Assistant General Counsel*
Nandan M. Joshi
Kristin Bateman
   *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7821 (telephone)
(202) 435-7024 (facsimile)
kristin.bateman@cfpb.gov
*Counsel for* Amicus Curiae
*Consumer Financial Protection Bureau*

No. 15-1056

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on June 3, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 3, 2016         /s/ Kristin Bateman

Kristin Bateman
   *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7821 (telephone)
(202) 435-7024 (facsimile)
kristin.bateman@cfpb.gov
*Counsel for* Amicus Curiae
*Consumer Financial Protection Bureau*