*Issues & Appeals*

June 3, 2016

Marcia M. Waldron
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re: Supplemental briefing on Article III standing in *Bock v. Pressler & Pressler,* No. 15-1056

Dear Ms. Waldron:

This Court requested briefing, in light of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), on whether Daniel Bock has established concrete injury sufficient for Article III standing.

Pressler engages lay staff to file mass lawsuits (as many as 1,000 in a day) and Mr. Bock was sued after no more than four seconds of attorney review. Mr. Bock suffered a concrete injury in the form of Pressler's misrepresentation that there was an attorney meaningfully involved in its suit against him. Mr. Bock alleged (and the district court found) that Pressler thereby violated his right to truthful information under the FDCPA. *Spokeo* specifically recognized that denial of information is "a sufficient injury in fact to satisfy Article III." 136 S. Ct. at 1549 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998)). Because Mr. Bock was the "object of a misrepresentation made unlawful" by the FDCPA, he "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982).

"[B]oth history and the judgment of Congress," *Spokeo*, 136 S. Ct. at 1549, confirm that Mr. Bock's injury is sufficiently concrete. It is closely related to the injury arising from attorney deceit, regardless of effect, that was cognizable under colonial-era American law and that descends from the Statute of Westminster of 1275, *Amalfitano v. Rosenberg*, 903 N.E.2d 265, 267–68 (N.Y. 2009)—a harm, in other words, "that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo*, 136 S. Ct. at 1549.

In addition, as a result of Pressler's misrepresentation, consumers like Mr. Bock face the risk of tangible harms—harms that Congress, with its "well positioned . . . judgment," meant to "elevat[e] to the status of legally cognizable injuries," *id.*, when it enacted the FDCPA, *see* 15 U.S.C. § 1692(a). This case is illustrative: By misrepresenting the involvement of attorneys like Ralph Gulko in its collection suits, Pressler created a substantial risk that consumers like Mr. Bock would suffer the real-world costs of facing collection litigation brought by attorneys—costs like the $15 fee Mr. Bock had to pay to file his answer, Appx. 82, or the $1,000 he spent to hire an attorney. For this reason too, Mr. Bock has standing.

**Gupta Wessler PLLC**
1735 20th Street, NW, Washington, DC 20009
P 202 888 1741 F 202 888 7792
guptawessler.com

 **A. Whether an injury is sufficiently concrete is distinct from the merits, and is guided by historical understanding and congressional purpose.**

To have standing to bring a claim in federal court, the plaintiff must first have suffered an injury in fact. Critically, a court's determination concerning the "merits of the case is a separate inquiry from the threshold issue of Article III standing." *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

"The standing requirement is analytically distinct from the merits of the underlying dispute"; although the two "may involve overlapping facts, standing is generally an inquiry about the plaintiff: is this the right person to bring this claim." *Davis v. Wells Fargo*, __ F.3d __, 2016 WL 3033938, at *10 (3d Cir. May 27, 2016). When "a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action, 'the proper procedure . . . is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits.'" *Id.*

Turning to the injury-in-fact requirement, a plaintiff must establish that her injury is *both* particularized *and* concrete.[1] In *Spokeo*, the Court reiterated core principles underlying the "concreteness" inquiry, which asks simply whether an injury "actually exist[s]." *Spokeo*, 136 S. Ct. at 1548. The Court explained that although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549–50. And "[i]n determining whether an intangible harm constitutes injury in fact," the Court continued, "both history and the judgment of Congress play important roles." *Id.* at 1549.

Thus, where the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," the plaintiff will have suffered a concrete injury. *Id.* But such a common law analogue is not required, since Congress also has the power (and is especially "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Id*. Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Spokeo*, 136 S. Ct. at 1549. But where a plaintiff's allegations are aligned with the harm that Congress

[1] There is no question that Mr. Bock's injury here is "particularized"—that it "affect[s] [him] in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted). Like the plaintiff in *Spokeo*, Mr. Bock has alleged that Pressler "violated *his* statutory rights" by falsely implying—in a complaint filed against *him*—that Mr. Gulko was meaningfully involved in the prosecution of its debt-collection case. *Id.*

Gupta Wessler PLLC
1735 20th Street, NW, Washington, DC 20009
P 202 888 1741 F 202 888 7792
guptawessler.com



"sought to curb," that plaintiff "need not allege any *additional* harm beyond the one Congress identified." *Id.* at 1549–50.

**B. Pressler's misrepresentation denied Mr. Bock access to truthful information—a concrete form of informational injury.**

Applying these principles here leads to one conclusion: Mr. Bock has sufficiently established concreteness. The informational injury that Pressler inflicted—and the risk of harm it created—is (1) recognized as concrete by Supreme Court precedent, (2) closely related to traditionally actionable harms, and (3) among the evils that Congress targeted when it enacted the FDCPA. Each reason, independently, is a basis for standing here.

**1. Supreme Court precedent—including *Spokeo* itself—recognizes informational injury as a concrete injury.**

Mr. Bock claims that, by having Mr. Gulko sign the complaint, Pressler violated the FDCPA by implicitly representing that an attorney was involved and familiar with his case—even though the undisputed record shows that Mr. Gulko scanned the complaint for at most four seconds. Appx. 192–93. Putting aside the question whether this conduct makes out an FDCPA violation under section 1692e(3) (as the district court concluded), there is no doubt under *Spokeo* and longstanding precedent that Mr. Bock has sufficiently alleged a cognizable informational injury—the denial of his right to truthful information—for standing purposes.

In *Spokeo*, the Court confirmed that informational injury—being denied access to information to which an individual is entitled by statute—is a concrete injury under Article III. *See* 136 S. Ct. at 1549–50. And, the Court made clear, the denial of that information is *on its own* sufficiently concrete; "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.

In support of this principle, the Court reaffirmed its past precedent, citing *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989), which held that the plaintiff had standing to challenge the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act. The inability to obtain such information, the Court explained there, "constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449. Similarly, the *Spokeo* Court invoked *Federal Election Commission v. Akins* for a similar point, "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549–50 (citing *Akins*, 524 U.S. 11, 20–25 (1998)).

Mr. Bock has suffered that very injury. Under the FDCPA, consumers like Mr. Bock have a statutory right to truthful information concerning the debt-collection process. For

Gupta Wessler PLLC
1735 20th Street, NW, Washington, DC 20009
P 202 888 1741 F 202 888 7792
guptawessler.com

instance, a debt collector may not "false[ly] . . . impl[y] that . . . any communication is from an attorney," 15 U.S.C. § 1692e(3), or "create[] a false impression as to [a communication's] source, authorization, or approval," *id.* § 1692e(9). The harm that Mr. Bock has alleged is exactly the harm Congress targeted by enacting the FDCPA: false information relating to an attorney's role in debt-collection communications. Thus, Mr. Bock "need not allege any *additional* harm" to satisfy Article III's concreteness requirement. *Spokeo*, 136 S. Ct. at 1549.

The Supreme Court has recognized this form of injury for more than three decades. In *Akins*, the Court held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." 524 U.S. at 21. *Akins* in turn cited *Havens Realty Corp. v. Coleman*, in which the Court held that a housing-discrimination "tester" had standing based on a violation of "[his] statutorily created right to truthful housing information." 455 U.S. 363, 374 (1982); *see also Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009). A "tester who has been the object of a misrepresentation made unlawful under [the statute]," the Court explained, "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Havens*, 455 U.S. at 373–74.

So too here. Mr. Bock has shown that he was "the object of a misrepresentation made unlawful under" section 1692e of the FDCPA. *Id.* Indeed, the case for standing is stronger here than in *Havens*; whereas the tester in *Havens* "fully expect[ed] that he would receive false information," *id.*, Mr. Bock had every reason to believe Pressler's misrepresentation that an attorney was meaningfully involved in the case. Accordingly, Mr. Bock "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.*

### 2. Attorney deceit, regardless of consequential harm, has long been actionable in the Anglo-American tradition.

Although a plaintiff's claim need not have a historical pedigree to establish standing, here the harm suffered by Mr. Bock has "as a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. Private claims for deception by opposing party's counsel, regardless of whether that deception has caused any additional injury, have a rich history. As far back as the first Statute of Westminster of 1275 (3 Edw. I, Ch. 29), Anglo-American law has prohibited attorneys from "do[ing] any manner of Deceit or Collusion . . . to beguile the Court, or [a] Party." *Amalfitano*, 903 N.E.2d at 267. In 1787, the New York Legislature "adopted a law with strikingly similar language," adding an award of "treble damages, and costs of suit"—a provision clarified in 1830 to provide for such damages "to be recovered in a civil action." *Id.* at 267–68 (quoting N.Y. L. 1787, ch. 35, § 5; 2 Rev. Stat. N.Y., part III, ch. III, tit. II, art. 3, § 69, at 215–16 (2d ed. 1836)). This "unique statute of ancient origin"—which lives on "virtually (and remarkably) unchanged" today as section 487 of New York's Judiciary Law—"focuses on the attorney's intent to deceive, not the deceit's success." *Id.* at

Gupta Wessler PLLC
1735 20th Street, NW, Washington, DC 20009
P 202 888 1741 F 202 888 7792
guptawessler.com



268. The injury addressed by the FDCPA here thus has a "clear analog[] in our common-law tradition," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring).

From the sixteenth century onwards, meanwhile, Anglo-American law has explicitly recognized that the dangers of misrepresentation are especially acute in the context of an attorney's pleadings. "At least since Sir Thomas More . . . , bills in equity have required the signature of counsel," and "[c]ounsel could be required to pay the costs of an aggrieved party if a bill contained" inappropriate matter; these rules were imposed "to secure regularity, relevancy and decency in the allegations of the Bill, and the responsibility and guaranty of counsel, that . . . there is good ground for the suit in the manner in which it is framed." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 556–57 (1991) (quoting JOSEPH STORY, EQUITY PLEADINGS § 47, at 41–42 (1838)); *see also Looff v. Lawton*, 14 Hun. 588, 590 (N.Y. 2d Dept. 1878) (justifying enhanced liability for attorney deceit on grounds that the law expects "the utmost good faith in the conduct and management of the business intrusted to them"). Our Anglo-American tradition thus affords more than ample "instructive" evidence, *Spokeo*, 136 S. Ct. at 1549, that Mr. Bock has standing.

### 3. Misrepresentations by debt-collection attorneys are among the real-world harms that Congress targeted in the FDCPA.

*Spokeo* observed that, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements," its "judgment" is both "instructive and important." 136 S. Ct. at 1549. In enacting the FDCPA, Congress "elevat[ed]" these "concrete, *de facto*" informational injuries "to the status of legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. Its aim was "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Section 1692e(3), in particular, seeks to protect consumers from informational harms posed by collectors misrepresenting attorney involvement. *See Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 301 (3d Cir. 2008).

The legislative history is instructive. When Congress repealed a pre-existing FDCPA attorney exemption, *see* Pub. L. No. 99-361, 100 Stat. 768, it explained that other controls had not "adequately police[d] attorney violations" in the debt-collection process and that the attorney exemption had "harmed" consumers, *see* H.R. Rep. No. 99-405, at *4, *6 (1985). The Supreme Court relied on this history in concluding that the Act broadly "applies to the litigating activities of lawyers." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

This Court should respect Congress's considered judgment. *See Spokeo*, 136 S. Ct. at 1549. Any other conclusion would threaten the FDCPA's private-enforcement scheme and destabilize this Court's own precedent. This Court has held that sending a collection letter on attorney letterhead violates the FDCPA if no attorney was meaningfully involved, because it "falsely impl[ies] that an attorney, acting as an attorney, is involved in collecting [the



plaintiff's] debt." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 1003 (2011); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 224 (3d Cir. 2008) (holding that a debt-collection letter signed by an attorney that was not involved "can be deceptive under the FDCPA even if it only implies that it is from an attorney").

In our (and the federal government's) view, that Pressler's misrepresentation was contained in a complaint, rather than a letter, should not affect whether it violated the FDCPA. Either way, that's a merits question. But whether Mr. Bock has standing is no different from whether the plaintiffs in the collection-letter cases had standing: Both contend that the misrepresentations denied them information required by statute. Thus, holding that Mr. Bock lacks standing here would require this Court to also hold that a differently situated plaintiff—one, for instance, who receives a letter from a non-lawyer collector who blatantly misrepresents himself as an attorney—also lacks standing to challenge that obvious misrepresentation. Such an outcome would thwart Congress's purposes, and erect a barrier to Article III standing that is out of step with controlling precedent.

**C.　This case also illustrates the risk of tangible harm from debt-collector misrepresentations—harm that itself supports standing here.**

While a concrete but intangible injury like the denial of truthful information is sufficient to establish Mr. Bock's standing, his informational injury does not stand alone. Pressler's misrepresentation about Mr. Gulko's involvement in the case led to other concrete harms—for example, Mr. Bock paid $15 to answer Pressler's complaint (Appx. 82), and spent $1,000 to hire his own lawyer to defend against a collection suit that appeared far more serious to the reasonable observer than Mr. Gulko's four-second involvement warranted. *See* Oral Arg. Recording at 16:26. Thus, Pressler's FDCPA violation caused Mr. Bock to suffer a classic form of concrete, "tangible injur[y]": economic harm. *Spokeo*, 136 S. Ct. at 1549.

Congress was expressly concerned with these consequential harms when it enacted the FDCPA. It was aware that debt-collection communications bearing an attorney's imprimatur are more likely to intimidate consumers—"that consumers are under far more duress from an attorney improperly threatening legal action than from a debt collection agency committing the same practice." H.R. Rep. 99-405, at *4. As the Seventh Circuit explained:

> An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking. . . . Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency.



*Avila v. Rubin*, 84 F.3d at 229. That is essentially what happened here. Because Mr. Bock was misled to believe that an attorney had exercised his professional judgment in bringing the debt-collection lawsuit, he responded more quickly and spent more money than he otherwise would have. Those concrete and tangible harms also demonstrate that Mr. Bock has standing. And as Mr. Bock's case further illustrates, misrepresenting attorney involvement carries the constant "risk of [such] real harm[s]," not just for Mr. Bock, but for all consumers so deceived—another category of harm that *Spokeo* explicitly recognizes can suffice to "satisfy the requirement of concreteness." 136 S. Ct. at 1549; *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013) ("In some instances, we have found standing based on a 'substantial risk' that the harm will occur.").

The record firmly establishes Mr. Bock's standing. True, it does not catalogue the full range of the tangible harms that Mr. Bock suffered. But that is not his fault: Neither Pressler nor the district court ever questioned whether Mr. Bock had Article III standing to bring his FDCPA claims. Standing was raised for the first time by this Court in advance of oral argument. And even at oral argument, Pressler's counsel said that under "the current state of the law, [this Court has] jurisdiction." Oral Arg. Recording at 2:25. *Spokeo*, however, did not change the law of standing; it merely reiterated certain fundamental principles and then remanded the case to the Ninth Circuit, whose previous analysis was "incomplete" because it had "overlooked" concreteness. 136 S. Ct. at 1545. If this Court has any lingering doubt concerning Mr. Bock's standing, it can always remand the case to the district court, to develop the factual record and to undertake the concreteness inquiry in the first instance. But it need not do so because, for all the reasons described above, Mr. Bock has already established that he has Article III standing.

Respectfully submitted,

*<u>/s/ Deepak Gupta</u>*
Deepak Gupta
Neil K. Sawhney
GUPTA WESSLER PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741

Cary L. Flitter
Andrew M. Milz
FLITTER MILZ, P.C.
525 Route 73 South, Suite 200
Marlton, NJ 08053-9644
(856) 396-0600

 Issues & Appeals

Philip D. Stern
Andrew T. Thomasson
STERN THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
(973) 379-7500

*Counsel for Plaintiffs-Appellees*

cc: Manuel H. Newburger
Mitchell L. Williamson
Kristin Bateman

**Gupta Wessler PLLC**
1735 20th Street, NW, Washington, DC 20009
P 202 888 1741 F 202 888 7792
guptawessler.com